**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JONATHAN MALONE,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| | § | |
| **v.** | § | **C.A. No. _____** |
| | § | |
| **BIG LOTS STORES, INC.** and | § | |
| **DESMOND PIIHL,** | § | |
| | § | |
| **DEFENDANT.** | § | |

**EXHIBIT A**
**INDEX OF MATTERS BEING FILED**

Pursuant to Local Rule 81.1, the following are attached in connection with this Notice of

Removal:

1.    A list of counsel of record, including addresses, telephone numbers, and parties represented.

2.    State Court Docket Sheet

3.    State Court Pleadings and Court Notices:

-    Plaintiff's Original Petition and Discovery Requests, filed on June 29, 2020.
-    Civil Process Request, filed on June 29, 2020.
-    Plaintiff's Amended Petition and Discovery Requests, filed on July 2, 2020.
-    Request for Issuance – E-Filing or Pro Se Citations, Precepts, Notices, Writs, TRO's [sic], filed on July 2, 2020.

4.    Executed Process on Big Lots Stores, Inc.

## LIST OF COUNSEL

Attorneys for Plaintiff:
Jennifer J. Spencer [TBN 10474900]
jspencer@jacksonspencerlaw.com
James E. Hunnicutt [TBN 24054252]
jhunnicutt@jacksonspencerlaw.com
Dimple A Baca [TBN 24060049]
dbaca@jacksonspencerlaw.com
Jackson Spencer Law PLLC
Three Forest Plaza
12221 Merit Drive, Suite 160
Dallas, Texas 75251


Attorneys for Defendant:
Akilah F. Craig [TBN 24076194]
afcraig@vorys.com
Vorys, Sater, Seymour and Pease LLP
909 Fannin Street, Suite 2700
Houston, Texas 77010
(713) 588-7000 Telephone
(713) 588-7050 Facsimile

Daniel J. Clark [Ohio Bar No. 0075125]*
djclark@vorys.com
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, OH 43215
(614) 464-6400
(614) 719-4650

*To be admitted Pro Hac Vice

https://research.txcourts.gov/CourtRecordsSearch/ViewCasePrint/017bd10eaa635338b4d320734be837fb

Case Information

# MALONE, JONATHAN -VS- BIG LOTS STORES, INC. PIIHL, DESMOND

103662

| Location | Case Category | Case Type | Case Filed Date |
|---|---|---|---|
| Ellis County - District Clerk | Civil - Employment | Retaliation | 6/29/2020 |

## Parties [3]

| Type | Name | Attorneys |
|---|---|---|
| Plaintiff | MALONE, JONATHAN | SPENCER , JENNIFER J |
| Defendant | BIG LOTS STORES, INC. | |
| Defendant | PIIHL, DESMOND | |

## Filings [7]

| Date | Filing Type | Filing Description | Documents |
|---|---|---|---|
| 6/29/2020 | Petition | Plaintiff's Original Petition and Discovery Requests | 2020 0629 Malone Petition.pdf |
| 6/29/2020 | Request | Request for Issuance of Citation | 2020 0629 REQ-FOR-ISSUANCE-OF-PROCESS.pdf |
| 7/1/2020 | E-filed Attorney | RTN CIT TO ATTY FOR SERVICE | 103662CIT.PDF |
| 7/2/2020 | Amended Petition Change Style To Add Additional Parties | Plaintiff's Amended Petition and Discovery Requests | 2020 0702 Malone Amended Petition.pdf |
| 7/2/2020 | Request | FOR ISSUANCE | 2020 0702 REQ-FOR-ISSUANCE-OF-PROCESS.pdf |
| 7/6/2020 | E-filed Attorney | RTN CITS TO ATTY FOR SERVICE | 103662CITS.PDF |
| 7/16/2020 | No Fee Documents | Executed Return of Service for Defendant Big Lots | 2020 0716 Return of Service Big Lots Citation.pdf |

© 2020 Tyler Technologies, Inc. | All Rights Reserved
Version: 2020.0.3.3105





Filed 6/29/2020 12:04 PM
Melanie Reed
District Clerk
Ellis County, Texas

103662

Cause No. _____

| | | |
|---|---|---|
| **JONATHAN MALONE,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | Ellis County - 40th District Court |
| | § | |
| **v.** | § | **_____ JUDICIAL DISTRICT** |
| | § | |
| **BIG LOTS STORES, INC.,** | § | |
| | § | |
| **Defendant.** | § | **ELLIS COUNTY, TEXAS** |

**PLAINTIFF'S ORIGINAL PETITION
AND DISCOVERY REQUESTS**

Plaintiff Jonathan Malone files this Original Petition and Discovery Requests against Big

Lots Stores, Inc.  Plaintiff requests damages, interest, attorneys' fees, and costs for Defendant's

unlawful acts.

**I.      DISCOVERY CONTROL PLAN**

1.      Plaintiff intends that discovery be conducted under Level 2 of Texas Rule of Civil

Procedure 190.3.

2.      Pursuant to Texas Rule of Civil Procedure 47, Plaintiff seeks monetary relief over

$200,000 but not more than $1,000,000.

**II.     PARTIES AND SERVICE**

3.      Plaintiff Jonathan Malone is a resident of Ellis County, Texas. At all times

relevant, he was a resident of Ellis County, Texas.

4.      Big Lots Stores, Inc. ("Defendant" or "Big Lots") is an Ohio corporation doing

business nationwide, including owning and operating over 100 retail stores in Texas. Process

may be served on Defendant via its registered agent, Corporation Service Company d/b/a CSC-

Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, TX 78701-3218,

or wherever it may be found.

**PLAINTIFF'S ORIGINAL PETITION AND DISCOVERY REQUESTS**                    **PAGE 1**

### III.   VENUE & JURISDICTION

5.   Venue in Ellis County is proper under Tex. Civ. Prac. & Rem. Code § 15.002(a)(1) because all or a substantial part of the events or omissions that gave rise to this action occurred in Ellis County.

6.   Plaintiff filed a "Charge of Discrimination" on May 7, 2019, alleging disability discrimination and retaliation with the Texas Workforce Commission ("TWC"), which was dual-filed with the U.S. Equal Employment Opportunity Commission ("EEOC"). On May 22, 2020, the TWC issued its Notice of Dismissal and Right to File Civil Action (the "Right to Sue Letter") to Plaintiff. This lawsuit is being filed within sixty (60) days of Plaintiff's receipt of the Right to Sue Letter. Thus, all administrative prerequisites have been met or have expired.

7.   This controversy is within the jurisdictional limits of this Court.

### IV.   FACTUAL SUMMARY

8.   Defendant employed Plaintiff at its place of business at 507 North Highway 77, Suite 300, Waxahachie, Texas, 75165, beginning in August 2015.

9.   Plaintiff lives with the disability of multiple sclerosis ("MS"), which substantially limits Plaintiff's major life activities, including walking, standing, and performing some manual tasks such as lifting. Despite his disability, Plaintiff functioned well in his job and never called in sick due to complications from MS.

10.   Plaintiff's District Managers were aware of his disability upon his hiring, and early in his tenure, Plaintiff provided Defendant with a note from his doctor stating that Plaintiff could not work more than 45 hours, five days per week because of his disability.

11.   In 2017, Defendant hired Laura Pacheco as Loss Prevention Manager, and in March 2018, Desmond Piihl took over as Plaintiff's District Manager. When Plaintiff informed

Pacheco and Piihl about his disability and doctor's restrictions, Pacheco and Piihl began questioning Malone on almost a daily basis about his MS and how it affected his walking and overall performance.

12.     Piihl frequently criticized Plaintiff's walking after noticing Plaintiff walked with a limp, and Piihl solicited feedback on Plaintiff's disability from Plaintiff's store associates.

13.     On June 22, 2018, Plaintiff took leave to have surgery on his back due to complications with his MS after Plaintiff's doctor, Dr. Darin Okuda, noticed an issue on Plaintiff's MRIs, which Dr. Okuda traced back to Plaintiff's frequent heavy lifting above his head while at work. Plaintiff told Dr. Okuda that Defendant had no electric equipment available to lift heavy items off pallets or off trucks as his store.

14.     Dr. Okuda sent an accommodation request to Defendant on Plaintiff's behalf, stating that Plaintiff was not to lift items above his head. Plaintiff subsequently underwent back surgery and was out on FMLA leave until August 19, 2018.

15.     When Plaintiff returned from FMLA leave, Piihl presented Plaintiff with a write-up for three failed LP audits. One of the failed audits occurred during Plaintiff's FMLA leave. When Plaintiff reminded Piihl that he had been out on FMLA during the audit, Piihl stated he "meant to write up" Plaintiff before Plaintiff's leave. Piihl also agreed with Plaintiff that several of the point deductions were incorrect, but Piihl refused to change the audit scores.

16.     When Plaintiff returned from back surgery, Defendant made no accommodation to help Plaintiff lift heavy items, including those requiring two people to life, despite Plaintiff's reasonable accommodation request and despite Defendant's policy that all items marked with a team lift sticker required two people to handle the items.

**PLAINTIFF'S ORIGINAL PETITION AND DISCOVERY REQUESTS**                              **PAGE 3**

17.    Plaintiff asked Pacheco what he was supposed to do with team lift items if there was no one available to help him. Pacheco stated to Plaintiff that a "ladder counts as the second person."

18.    On or about September 8, 2018, Plaintiff submitted a complaint to Defendant's HR department because Piihl had issued a write-up to Plaintiff while Plaintiff was on medical leave.

19.    In mid-September 2018, the air conditioning failed in Plaintiff's store, causing the temperature to remain around 79 degrees, even after the issue had been fixed. The heat exacerbated Plaintiff's symptoms of his MS-related disabilities.

20.    On or about September 21, 2018, Plaintiff submitted a request to Piihl to fix the air conditioner. After Defendant made no attempts to honor Plaintiff's request, Plaintiff submitted an official request to have the air conditioning fixed from Dr. Okuda to Piihl and Defendant's corporate office on or about September 28, 2018.

21.    On or about September 30, 2018, Piihl visited Plaintiff's store and stated there was nothing he could do about the store feeling hot. Piihl stated to Plaintiff that Plaintiff should not expect the air conditioning to be fixed. Piihl then stated that the heat must not be affecting Plaintiff based on Plaintiff's gait. Defendant made no attempts to honor Plaintiff's accommodation request, and the air conditioning was never fixed.

22.    In October 2018, Piihl requested Plaintiff terminate two of his store associates because Piihl believed their own disabilities – diabetes and autism – would not allow them to perform their jobs.  Plaintiff refused to do so because the associates excelled at their jobs.

23.    Later in October 2018, Piihl and Pacheco issued a failed audit on Plaintiff store after specifically conspiring on how to falsely deduct points to make sure the audit failed.

**PLAINTIFF'S ORIGINAL PETITION AND DISCOVERY REQUESTS**                    **PAGE 4**

24.     Plaintiff subsequently sent a complaint to HR detailing the misleading scoring on the audit and demonstrating how Pacheco had given incorrect deductions.

25.     Piihl subsequently presented Plaintiff with a write-up for another failed audit. When Plaintiff refused to sign the audit and stated that the grading was incorrect, Piihl told Plaintiff not to worry, because Piihl himself had "hundreds" of write-ups in his file, then commanded Plaintiff to sign the write-up.

26.     In December 2018, Plaintiff participated in a conference call with Pacheco, Piihl, and HR Manager Anthony Brock. Plaintiff complained about Pacheco's discriminatory scoring and provided detailed rebuttals to the discriminatory grading of the audits, then explained he had been away on medical leave during one of the audits. Brock dismissed Plaintiff's complaints and stated that the write-up would stand despite Plaintiff's complaints.

27.     In February 2019, Piihl informed Plaintiff that Defendant released plans to begin remodeling all locations in March 2019. Piihl stated to Plaintiff that Defendant would expect store managers to work 60 – 70 hours per week with a minimum of five-day work weeks. No discussion occurred regarding how Plaintiff's accommodation of working no more than 45 hours per week would continue to be honored.

28.     On March 7, 2019, Piihl and District Manager Pete Latimer terminated Plaintiff. Plaintiff's termination letter included a reference to a failed LP Audit from June 30, 2019 during Plaintiff's FMLA leave.

29.     The reasons stated to Plaintiff as the cause for his termination were false and mere pretext for terminating him for illegal reasons.

30.     Plaintiff was able to complete all of the essential functions of his job with or without accommodations.

**PLAINTIFF'S ORIGINAL PETITION AND DISCOVERY REQUESTS**                          **PAGE 5**

31.     Moving heavy objects marked with two-person lift stickers was not an essential function of his job, but could have been performed with the reasonable accommodation of allowing another employee to assist Plaintiff when these tasks were needed. Defendant would not have suffered an undue hardship to provide accommodations to Plaintiff on the rare occasions that he was needed to move an item with a two-person lift sticker.

32.     Defendant failed to accommodate Plaintiff's reasonable accommodations of having a team member assist Plaintiff with heavy items and working in an environment with a temperature below 79 degrees.

33.     Defendant terminated Plaintiff due to his disability, in retaliation for complaining about being discriminated against on the basis of disability, and in retaliation for exercising his rights under the FMLA.

34.     All conditions precedent have been met or have expired.

## V.     CAUSES OF ACTION

**COUNT ONE:     DISCRIMINATORY DISCHARGE IN VIOLATION OF THE THCRA AND THE ADA**

35.     Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

36.     Plaintiff has satisfied all jurisdictional prerequisites in connection with his claim under the Texas Commission on Human Rights Act, Tex. Lab. Code §§ 21.001 *et seq.* ("TCHRA") and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA").

37.     At all times relevant, Defendant was an "employer" as defined by the TCHRA and the ADA.

38.     When Plaintiff worked for Defendant, he was an "employee" as defined by the TCHRA and the ADA.

39.    Plaintiff was able to perform his essential duties with reasonable accommodations, but the reasonable accommodations were denied by Defendant.

40.    Plaintiff's termination was on the basis of his disability in violation of the TCHRA and the ADA.

41.    Plaintiff's discharge was motivated by his disability in violation of the TCHRA, including by failing to reasonably accommodate Plaintiff's disability, having a record of disability, and/or being regarded as disabled such that Defendant claimed Plaintiff was unable to perform the essential functions of his job with or without a reasonable accommodation.

42.    Plaintiff's termination was malicious or made with reckless indifference to his state-protected rights.

43.    As a direct and proximate consequence of Defendant's violation, Plaintiff has suffered damages.

44.    Plaintiff's damages include lost wages, past and future mental anguish, inconvenience, and loss of enjoyment of life.

45.    Plaintiff seeks equitable relief, compensatory and exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs.

**COUNT TWO:    RETALIATORY DISCHARGE IN VIOLATION OF THE TCHRA AND THE ADA**

46.    Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

47.    Plaintiff has satisfied all jurisdictional prerequisites in connection with this claim under the TCHRA and ADA.

48.    Plaintiff complained to Defendant that he was being discriminated against on the basis of his disabilities due to write-ups based on loss prevention audits that were purposefully lowered in order to issue a failing grade due to his disabilities and need for accommodations.

**PLAINTIFF'S ORIGINAL PETITION AND DISCOVERY REQUESTS**                    **PAGE 7**

49.     Plaintiff was terminated because of his complaints of disability discrimination.

50.     Plaintiff's termination was malicious or made with reckless indifference to his state-protected rights.

51.     As a direct and proximate consequence of Defendant's violation, Plaintiff has suffered damages.

52.     Plaintiff's damages include lost wages, past and future mental anguish, inconvenience, and loss of enjoyment of life.

53.     Plaintiff seeks equitable relief, compensatory and exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs.

**COUNT THREE:     FAILURE TO ACCOMMODATE IN VIOLATION OF THE TCHRA AND THE ADA**

54.     Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

55.     Plaintiff had a disability, within the meaning of the ADA and the TCHRA, at the time that Defendant denied Plaintiff's reasonable accommodations of having another person help lift heavy objects and work in an air-conditioned environment cooler than 79 degrees.

56.     Plaintiff had a disability, within the meaning of the ADA and the TCHRA, at the time that Defendant terminated Plaintiff in order to avoid fulfilling Plaintiff's reasonable accommodation request to work less than 45 hours per week.

57.     Plaintiff was able to perform the essential duties of his position within the reasonable accommodation of working 45 hours per week, having a team member help lift heavy objects, and work in an environment less than 79 degrees.

58.     Defendant denied Plaintiff's requests for reasonable accommodations without engaging in an interactive process with him.

59.     Defendant's actions as described above were malicious or made with reckless indifference to Plaintiff's protected rights.

60.     As a direct and proximate consequence of Defendant's violation, Plaintiff has suffered damages.

61.     Plaintiff's damages include past and future lost wages, past and future lost medical healthcare benefits, past and future mental anguish, inconvenience, and loss of enjoyment of life.

62.     Plaintiff seeks damages, exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs.

**COUNT FOUR:     VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**

63.     Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

64.     At all times relevant, Defendant was an "employer" of Plaintiff as defined by the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* (the "FMLA").

65.     When Plaintiff worked for Defendant, he was an "eligible employee" as defined by the FMLA because Plaintiff was employed by Defendant for over twelve months, he worked at least 1,250 hours over the twelve month period preceding his termination, and Defendant employed fifty or more employees at or within seventy-five miles of its location in Waxahachie, Texas, where Plaintiff worked and from which Plaintiff's work was assigned and to which he reported.

66.     In June 2018, Plaintiff requested up to ten (10) weeks of leave protected by the FMLA following Plaintiff's surgery to alleviate the symptoms of his Multiple Sclerosis.

67.     After Plaintiff returned from leave in August 2018, Defendant presented discriminatory write-ups for failed audits, one of which took place during Plaintiff's medical leave. Defendant used these failed audits as pretextual reasons for Plaintiff's termination.

**PLAINTIFF'S ORIGINAL PETITION AND DISCOVERY REQUESTS**                    **PAGE 9**

68. Defendant's actions were in order to interfere with, restrain, deny, or retaliate against the exercise or the attempt to exercise Plaintiff's rights under the FMLA, and/or to discharge or discriminate against Plaintiff for opposing Defendant's retaliatory write-ups.

69. As a direct and proximate consequence of Defendant's violation, Plaintiff has suffered damages.

70. Plaintiff's damages include lost wages, salary, employment benefits, and other compensation.

71. Plaintiff seeks damages, liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), pre- and post-judgment interest, such equitable relief as may be appropriate, attorneys' fees, expert witness fees, if any, and costs of court.

## VI.   DISCOVERY

72. Pursuant to Tex. R. Civ. P. 194, Defendant is requested to disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

73. Attached as Exhibit A is Plaintiff's First Request for Production of Documents to Defendant.

74. Attached as Exhibit B is Plaintiff's First Set of Interrogatories to Defendant.

75. Attached as Exhibit C is Plaintiff's First Request for Admissions to Defendant.

## VII.   JURY DEMAND

76. Plaintiff demands a jury trial and has tendered the appropriate fee.

## VIII.   PRAYER

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Issue citation for Defendant to appear and answer;

B. Award to Plaintiff a judgment against Defendant for:

1.  Lost wages and benefits (both past and future), the sum to be determined at time of trial;

2.  Equitable relief as may be necessary and appropriate;

3.  Compensatory, liquidated, and exemplary damages in the maximum amount allowed by law;

4.  Pre- and post-judgment interest;

5.  Attorneys' fees; and

6.  Costs.

Plaintiff also requests that the Court award all other relief to which Plaintiff is entitled in equity and at law.

Respectfully Submitted,

*/s/ Jennifer J. Spencer*
Jennifer J. Spencer
Texas Bar No. 10474900
jspencer@jacksonspencerlaw.com
James E. Hunnicutt
Texas Bar No. 24054252
jhunnicutt@jacksonspencerlaw.com
Dimple A. Baca
Texas Bar No. 24060049
dbaca@jacksonspencerlaw.com
JACKSON SPENCER LAW PLLC
Three Forest Plaza
12221 Merit Drive, Suite 160
Dallas, Texas 75251
(972) 458-5301 (Telephone)
(972) 770-2156 (Fax)

**ATTORNEYS FOR PLAINTIFF**
**JONATHAN MALONE**

# EXHIBIT A

Cause No. _____

| JONATHAN MALONE, | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | _____ **JUDICIAL DISTRICT** |
| | § | |
| BIG LOTS STORES, INC., | § | |
| | § | |
| **Defendant.** | § | **ELLIS COUNTY, TEXAS** |

### PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT

TO:     Big Lots Stores, Inc. by and through its Registered Agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, TX 78701-3218.

Pursuant to the Texas Rules of Civil Procedure, Plaintiff Jonathan Malone propounds his First Request for Production to Defendant Big Lots Stores, Inc.. Your responses to the Requests are to be made in writing and are to be served, along with all responsive documents, upon counsel for Plaintiff within fifty (50) days of their service. Please refer to the Texas Rules of Civil Procedure for your duty to supplement your answers and the sanctions available should you fail to comply.

# EXHIBIT A

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT**                    **PAGE 1**

Respectfully Submitted,

*/s/ Jennifer J. Spencer*
Jennifer J. Spencer
Texas Bar No. 10474900
jspencer@jacksonspencerlaw.com
James E. Hunnicutt
Texas Bar No. 24054252
jhunnicutt@jacksonspencerlaw.com
Dimple A. Baca
Texas Bar No. 24060049
dbaca@jacksonspencerlaw.com
JACKSON SPENCER LAW PLLC
Three Forest Plaza
12221 Merit Drive, Suite 160
Dallas, Texas 75251
(972) 458-5301 (Telephone)
(972) 770-2156 (Fax)

**ATTORNEYS FOR PLAINTIFF**
**JONATHAN MALONE**

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was served by process server along with Plaintiff's Original Petition and Citation on the date identified by the process server in the return of service.

*/s/ Jennifer J. Spencer*
Jennifer J. Spencer

## DEFINITIONS

1.      The word "Plaintiff" or "Malone" shall refer to Plaintiff Jonathan Malone.

2.      The words "Defendant," "Big Lots," "you," and "your" shall refer to Big Lots Stores, Inc. and its agents, employees, representatives, members, managers, officers, directors, partners, subsidiaries, affiliates, predecessors, and any other persons acting or purporting to act on their behalf, including any attorney or other representative, whether authorized or not.

3.      "Document," "documents," and "documentation" as used herein, shall mean all writings - including ESI (as defined below) - of every kind, source, and authorship, both originals and all non-identical copies thereof, in your possession, custody or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity (inclusive of an entity's shareholders, owners, members, officers, agents, employees or representatives, or anyone acting for it or on its behalf), including without limitation any government agency, department, administrative, or private entity or person. The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information, storage, or retrieval systems, together with the codes and/or programming, instructions and other materials necessary to understand and use such systems. For purposes of illustration and not limitation, the terms shall include: affidavits; agendas; agreements; analyses; announcements; bill; statements; and other records of obligations and expenditures; books, brochures; bulletins; calendars; canceled checks, vouchers, receipts and other records of payments; charts, drawings; circulars; collateral files and contents; agreements; correspondence; diaries; drafts; files; instructions; invoices; ledgers; journals; balance sheets;

profit and loss statements; and other sources of financial data; letters, logs, notes, or memoranda of telephonic or face-to-face conversations; manuals; memoranda of all kinds, to and from any persons, agencies, or entities; minutes; minute books; notes; notices; parts lists; papers; press releases; printed matter (including published books, articles, speeches, and newspaper clippings); purchase orders; records; records of administrative, technical, and financial actions taken or recommended; reports, safety deposit boxes and contents and records of entry; schedules; security agreements; specifications; statements of bank accounts; statements, interviews; technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results, and conclusions; summaries, notes, and other records and recordings of any conference, meetings, visits, statements, interviews or telephone conversations; telegrams; teletypes and other communications sent or received; transcripts of testimony; Deed instruments; work papers; and all other writings, the contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested. Any written, printed, typed, recorded, or other graphic matter of any kind or nature, and all mechanical and electrical sound recordings and any transcripts, or formatted collection of data for business transaction purposes in the possession, custody, and/or control of your officers, directors, employees, servants, and agents, and counsel, or known by you to exist. All copies of documents by whatever means made, whether or not prepared by you, as well as all copies of documents by whatever means made, whether or not prepared by you.

    4.     As used herein, the term Electronically Stored Information ("ESI") means potentially relevant information electronically, magnetically, or optically stored as:

- Digital communication (e.g., email, voicemail, text (including SMS, MMS, and iMessage), instant messaging, and social media posts and direct messaging, including drafts of digital communications and deleted digital communications);

- Word processed documents (e.g., Word or WordPerfect documents and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application data (e.g., QuickBooks, Juris, Money data files);

- Image and Facsimile files (e.g., pdf, .tiff, .jpg, .gif images);

- Sound recordings (e.g., wav and .mp3 files);

- Video and animation (e.g., avi and .mov files);

- Databases (e.g., Access, Oracle SQL Server, SAP);

- Contact and relationship management data (e.g. Outlook, ACT!);

- Calendar and diary application data (e.g. Outlook PST, Yahoo, blog tools);

- Online access data (e.g., temporary internet files, history, cookies);

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network access and server activity logs;

- Project management application data;

- Computer aided design/drawing files; and

- Back-up and archival files (e.g., Zip, .gho)

- USB Flash drives

- Laptops

- Smart Phones

- Voicemails

- Web Based Emails (e.g., Yahoo, MSN, Mac, Gmail)

5.    The word "communication" shall include all forms of written documents, including emails, texts, deleted emails, and deleted texts, and shall also mean communication by any oral means, including by meeting, conversation, discussion, message or other occurrence transmitted between two or more persons orally.

6.    The word "identify" or "identity," when used with respect to an individual, means information sufficient to identify and locate the individual, including the full name, title, present residence and business address (if the present home and/or business address is not available, the last known home and/or business address should be provided), all business and/or personal email addresses personal utilized in the last two years, the name of the individual's present employer, and the individual's last known home, cell, and/or business telephone numbers, including the phone company providers.

7.    The word "identify" or "identity," when used with respect to a legal entity, means its name, type of organization (for example, corporation, partnership, joint venture, municipality or other entity), laws under which organized, address, telephone number of principal place of business, principal line of business, and website address.

8.    The word "identify" or "identity," when used with respect to a document, means to give, to the extent known, (i) the type of document, including whether it is an email or a text message, (ii) the general subject matter of the document, (iii) the date of the document, and (iv) the name and last known addresses and telephone numbers of the author(s), addressee(s), recipient(s), and last known custodian thereof. In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Tex. R. Civ. P. 196.

9.     The word "identify" or "identity," when used with respect to a communication, statement of material fact, representation or misrepresentation (hereinafter collectively referred to as "communications") means (a) with respect to oral communications, to state (1) the date of the communication, (2) the substance of the communication, (3) the person making the communication, (4) all persons present or who heard the communication, and (5) to identify all documents that relate to the communication; and (b) with respect to written communications, (1) to identify the communication in accordance with the Definition above for identifying documents, and (2) to identify all documents that relate to the communication.

10.     As used herein, the term "describe," when used in reference to an action, event or deed, means to state the date the event took place, the place the event occurred, the nature of the event, and to identify all persons involved in or witnessing the event.

11.     The term "person" is defined as any individual or legal entity, including, without limitation, any natural person, governmental entity, corporation, sole proprietorship, partnership, joint venture, firm, association, agency, board, authority, commission, trust, or other such entity.

12.     "Regarding" or "relating to" shall mean constituting in whole or in part, concerning, discussing, communicating about, pertaining to, connected with, containing or contained within, referring to, mentioning, supporting, evidencing, embodying, proving, indicating, or probative of the existence or nature thereof.

13.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

14.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

15.     The use of the singular form of any word includes the plural and vice versa.

## GENERAL INSTRUCTIONS

1.      The Requests for Production are intended to cover all documents or things that are in your possession, custody, or control. In accordance with Tex. R. Civ. P. 192.7, a document or thing is deemed to be in your possession, custody, or control if:

    a.   it is in your physical control; or

    b.   it is in the physical control of any other person or entity, and you, individually or otherwise:

       i.   own the document or thing in whole or in part;

      ii.   have a right by contract, statute, or otherwise, to use, inspect, examine, or copy that document or thing on any terms; or

     iii.   have, as a practical matter, been able to use, inspect, examine, or copy that document or thing when you have sought to do so.

2.      Without limiting your obligations to search, identify, or produce documents or information responsive to the below requests, you are hereby instructed to include in your search for responsive documents and information, all documents for all persons employed or engaged or formerly employed or engaged by you who may likely have knowledge of relevant facts, including without limitation, the following custodians: Desmond Piihl, Laura Pacheco, Anthony Brock, Pete Latimer, and any other person who participated in any decision made to terminate Plaintiff.

3.      In accordance with Tex. R. Civ. P. 196.3, you are requested to produce documents as they are kept and organized in the usual course of business, or organize and label them to correspond with the categories in the Request. You are further requested to identify the Bates numbers of documents that are responsive to the individual Requests.

4.      To the extent that you believe any of the following requests to be objectionable, enter so much of each and each part thereof that is not, in your view, objectionable.

5.      To the extent that you believe any of the following requests call for information or documents subject to a claim of privilege, enter so much of each request and each part thereof that did not request, in your view, allegedly privileged information that you refuse to give.

6.      If any documents or information sought herein is withheld on the basis of privilege or work product, or otherwise, you are requested to submit in lieu of any such information a written statement pursuant to Rule 193.3(b) of the Texas Rules of Civil Procedure no later than the day that these documents are produced that: (a) describes the documents or information withheld that, without revealing the privileged information itself or otherwise waiving the privilege, enables other parties to assess the applicability of the privilege; and (b) asserts a specific privilege for each item or group of items withheld.

7.      If any document or information is withheld on the basis of any claimed confidentiality or privacy right, you are requested to provide (1) a copy of any written agreement containing such confidentiality right, if applicable; (2) in your response to the Request, citation to the statutory or other legal authority under which the confidentiality or privacy right is asserted, if applicable; and (3) pursuant to Tex. R. Civ. P. 192.6, a proposed agreed protective order to govern the confidentiality of the documents or information withheld.

8.      These requests are continuing. If you learn that your response to a request was incomplete or incorrect when made or that, although it was complete and correct when made, it is no longer complete and correct, you must amend or supplement the response (1) to the extent that the request seeks the identification of persons with knowledge of relevant facts, trial witnesses, or expert witnesses, and (2) to the extent that the request seeks other information,

unless the additional or corrective information has been made known to the other parties in writing, on the record at a deposition, or through other discovery responses. If, after producing documents and ESI, you obtain or become aware of any further documents and ESI responsive to these requests, you are required to produce such additional documents and ESI.

9.      You must make amended or supplemental responses reasonably promptly after you discover the necessity for such an amendment or supplementation.

10.     The relevant time period is from January 1, 2017, to the present.

### PRODUCTION OF ELECTRONICALLY STORED INFORMATION

1.      Plaintiff hereby specifically requests production of ESI responsive to these requests according to the following protocol.

2.      ESI items shall be processed in a manner that preserves their existing time, date, and time-zone metadata (e.g., the email of a Document Custodian located in Texas will be processed as Central Time, while a custodian located in California will be processed as Pacific Time). If GMT time zone is used instead, you will provide the original time zone in which the custodian of the document received or authored the document, or if not available, the usual time zone of the custodian.

3.      ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, to the extent reasonably available, not the date of collection or processing.

4.      For all ESI produced, the following metadata fields shall be provided, to the extent such metadata exists:

| Field Name | Data Example | Field Description |
|---|---|---|
| BEGDOC | XYZ 00000178 | Bates number of first page. |
| ENDDOC | XYZ 00000178 | Bates number of last page. |

| Field Name | Data Example | Field Description |
|---|---|---|
| BEGATT | XYZ 00000177 | Bates number of first page of attachment range. Blank if no attachments. |
| ENDATT | XYZ 00000179 | Bates number of last page of attachment range. Blank if no attachments. |
| ATTACHMENT | XYZ 00000178; XYZ 00000179 | Semicolon separated list of Bates number of first page of each attachment. |
| PARENTID | XYZ 00000177 | It refers to the main email body that the attachments belong to. Bates number of first page of parent. Only populated for attachments. |
| RECORDTYPE | Email | Possible values include Email (Email body), Attachment (Email Attachment), eDoc (Native file). |
| DATESENT | 04/15/2012 | Date email was sent in the format MM/DD/YYYY using local time zone provided. If no local time is provided, Universal Time (formerly GMT) is used. |
| TIMESENT | 02:45:22 PM | Time email was sent in the format HH:MM:SS XM using local time zone provided. If no local time is provided, Universal Time (formerly GMT) is used. |
| DATERECEIVED | 04/15/2012 | Date email was received in the format MM/DD/YYYY using local time zone provided. If no local time is provided, Universal Time (formerly GMT) is used. |
| TIMERECEIVED | 02:45:22 PM | Time email was received in the format HH:MM:SS XM using local time zone provided. If no local time is provided, Universal Time (formerly GMT) is used. |
| DATECREATED | 04/15/2012 | It will show the date that the native file is stored in the properties of the file, when it was first created. |
| TIMECREATED | 02:45:22 PM | Time native file was created in the format HH:MM:SS XM using local time zone provided. If no local time is provided, Universal Time (formerly GMT) is used. |
| DATEMODIFIED | 04/15/2012 | Date Last Modified for native files in the format MM/DD/YYYY using local time zone provided. If no local time is provided, Universal Time (formerly GMT) is used. |
| TIMEMODIFIED | 02:45:22 PM | Time native file was modified in the format HH:MM:SS XM using local time zone provided. If no local time is provided, Universal Time (formerly GMT) is used. |

| Field Name | Data Example | Field Description |
|---|---|---|
| LASTMODIFIEDBY | Alex Murphy | The name of the author who was the last person to make changes to the native file(s). |
| AUTHOR | Jacob Brown | Author for Native files. |
| FROM | Adam Brooks | Author for Native files. Sender for Emails. |
| TO | John Doe (jdoe@domain.com) | Semicolon separated list of Recipients for Email. The exact value depends on multiple factors including the email client address book. This includes name, email address, and/or Moniker. |
| CC | John Junior (jjunior@domain.com) | Semicolon separated list of Carbon Copy Recipients for Email. The exact value depends on multiple factors including the email client address book. This includes name, email address, and/or Moniker. |
| BCC | Sarah Smith (ssmith@domain.com) | Semicolon separated list of Blank Carbon Copy Recipients for Email. The exact value depends on multiple factors including the email client address book. This includes name, email address, and/or Moniker. |
| SUBJECT | Meeting time changed | Subject of the email. |
| FILENAME | Proposed Retainer - clean copy | Filename without extension of the native file. |
| FILEEXTENSION | .doc | File extension of native file. |
| VOLUME | PROD_IMG001 | Fixed. |
| ORIGINALSPATH | \ORIGINALS\001\XYZ 00000177.xlsx | Relative file path of Native files. |
| PAGES | 20 | Number of pages if file was converted to PDF or TIFF. |
| SOURCEFILEPATH | ORIGINALS\001\XYZ 00000177.xlsx | Relative file path of Native files. It refers to the Folder Path within Microsoft Outlook and keeping folders and subfolders information. |
| TEXTPATH | \TEXT\001\XYZ 00000177.TXT | Relative file path of Extracted / OCR text. |
| PDFPATH | \PDF\0001\TEST 0000001.pdf | Relative file path of PDF files. |
| CUSTODIAN | Malta | Custodian associated with Original (native) file. |
| MD5 | C8054025235FBRA26E 4BC242AEF543B6 | Incoming MD5 of Original (native) file. |

5.      You are only required to produce a single copy of a responsive document per custodian. You may de-duplicate stand-alone documents or entire document families using hash value matching (such as MD5 or SHA-1 values). ESI that is not an exact duplicate may not be removed. Partial email families may not be removed. Paper documents shall not be eliminated as duplicates of responsive ESI. If you elect to de-duplicate horizontally, all custodians who were in possession of a de-duplicated document must be identified in a metadata field as part of the loadfile or a subsequent overlay file.

6.      All documents to be produced will be converted to a paginated version as a PDF and/or TIFF images, as provided in this section:

     a.  Produced PDFs will be in the form of one PDF file per document, multi-page as applicable. A PDF produced will not be encrypted or otherwise include settings to impair searchability, copying or print. Embedded images will not be reduced or below 300 dpi.

     b.  TIFF images produced will be in the form of single-page Tagged Image File Format images and shall be saved and produced in the Group 4 compression single-page TIFF format. Each of the produced TIFF files will be accompanied with a corresponding text file containing extracted or OCR text.

     c.  All produced PDFs and TIFFs generated from hard copy documents shall be scanned as 300 dpi resolution.

     d.  All produced PDFs and TIFFs shall reflect to the extent practicable, without visual degradation, the full and complete information contained on the original document.

e.  A PDF or TIFF placeholder will be generated for any file that cannot be converted into a PDF or TIFF. In each case, a corresponding native document will be produced.

f.  Documents that contain color in a manner material to the meaning or understanding of the document, shall be produced in color. If a party is producing PDFs, then the produced PDF conversion settings will include settings that preserve color to the extent practicable. If a party is producing TIFFs, then the producing party shall also produce color PDFs for such TIFFs, or substitute color PNG or JPG images for TIFF images.

7.  Parent-child relationships (e.g., the association between emails and attachments) will be preserved. Email attachments will be consecutively produced with the parent email, and families associated using attachment range metadata as specified in section 3 above. If a scanned document is more than one page, the unitization of the document and any attachments shall be maintained as it existed in the original. For documents that contain affixed notes, the pages will be scanned both with and without the notes, and those pages will be treated as part of the same document. The relationship of documents in a document collection (e.g., cover letter and enclosures, email and attachments, binder containing multiple documents or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process. If more than one level of parent-child relationship exists, documents will be kept in order, but all will be treated as children of the initial parent document.

8.  All produced documents will include a legible, unique page identifier ("Bates Number") electronically embossed onto each page at a location that is reasonably intended to not obliterate, conceal or interfere with any information from the document. No other legend or

stamp will be placed on the document other than a confidentiality legend (where applicable), redactions (consistent with any other protective orders or applicable law), any applicable protective orders and, if desired by a party, a document control number separate from the Bates Number. With respect to the identification of files produced in their native format, the parties shall identify each file produced using the Bates Number as the name, and link in the applicable loadfile. Bates Numbers must be unique across the entire document production, maintain a constant length (0-padded) across the entire production, contain no special characters or embedded spaces, and (4) be sequential within a given document. A Bates Number must not obscure any part of an underlying document. If the placement in the lower right-hand corner will result in obscuring the underlying document, the Bates Number should be placed as near to that position as possible while preserving the underlying document.

9.      Each produced PDF file will be named with the beginning Bates Number. Each produced TIFF image and corresponding text file shall be named with the unique Bates Number of the page of document. In the event the Bates Number contains a symbol and/or character that cannot be included in a file name, the symbol and/or character will be omitted from the file name.

10.     Your production of documents shall include load files that are compatible with commercially acceptable standards, including a 'Concordance DAT/OPT' load file and a 'Summation DII' load file, to accompany the produced documents. Each load file shall include metadata and other information about the documents through a document management or litigation support database system, including the fields in section 3 above.

16.     Your production of documents shall include corresponding extracted text (for native files and/or optical character recognition ("OCR") text for TIFF or other images) files for

all hard-copy documents and any electronic documents produced. For produced TIFFs, the OCR and extracted text files shall be produced in ASCII text format, and shall be included with the load files. These text files will be named with the unique Bates Number of the first page of the corresponding document followed by the extension ".txt." For produced PDFs, extracted or OCRed text shall be embedded in the PDF file in an accessible text layer. The OCR and extracted text files shall be produced in a manner suitable for importing the information into commercially available document management or litigation support software.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**       All documents supporting or concerning statements or allegations made in Defendant's disclosures pursuant to Rule 194.2.

      **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 2:**       All organizational charts for Defendant from January 1, 2017, to the present showing the district in which Plaintiff worked for Defendant and/or showing any of Laura Pacheco, Desmond Piihl, or Plaintiff.

      **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 3:**       The complete personnel file and, regardless of whether such documents are located elsewhere than an official personnel file, the job application, offer letter, resume or CV, performance evaluations, write-ups, warnings, complaints, reprimands, and loss prevention audits of the following persons:
   a.  Plaintiff
   b.  Desmond Piihl
   c.  Laura Pacheco
   d.  Anthony Brock
   e.  Pete Latimer
   f.  Wes Campbell
   g.  Ben Buchanan
   h.  All store managers reporting to Desmond Piihl
   i.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

      **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 4:**       All job applications submitted to Defendant by the following persons:
   a.  Plaintiff
   b.  Desmond Piihl
   c.  Laura Pacheco
   d.  Anthony Brock
   e.  Pete Latimer
   f.  Wes Campbell
   g.  Ben Buchanan
   h.  All store managers reporting to Desmond Piihl
   i.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.


**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT**        **PAGE 17**

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5:**    All job descriptions for the following persons while employed by Defendant:
       a.  Plaintiff
       b.  Desmond Piihl
       c.  Laura Pacheco
       d.  Anthony Brock
       e.  Pete Latimer
       f.  Wes Campbell
       g.  Ben Buchanan
       h.  All store managers reporting to Desmond Piihl
       i.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6:**    All performance reviews for the following persons:
       a.  Plaintiff
       b.  Desmond Piihl
       c.  Laura Pacheco
       d.  Anthony Brock
       e.  Pete Latimer
       f.  Wes Campbell
       g.  Ben Buchanan
       h.  All store managers reporting to Desmond Piihl
       i.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7:**    All    write-ups,    warnings,    complaints, reprimands, and loss prevention audits provided to the following persons during employment with Defendant:
       a.  Plaintiff
       b.  Desmond Piihl
       c.  Laura Pacheco
       d.  Anthony Brock
       e.  Pete Latimer
       f.  Wes Campbell

    g.  Ben Buchanan
    h.  All store managers reporting to Desmond Piihl
    i.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 8:**    All documents evidencing the following persons' compensation and benefits as an employee of Defendant:
    a.  Plaintiff
    b.  Desmond Piihl
    c.  Laura Pacheco
    d.  Anthony Brock
    e.  Pete Latimer
    f.  Wes Campbell
    g.  Ben Buchanan
    h.  All store managers reporting to Desmond Piihl
    i.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 9:**    All documents evidencing the 401k, medical, dental, vision, pension, and retirement benefits of Plaintiff.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 10:**    All documents evidencing internal and external communications discussing or referring to job duties or compensation of each the following persons:
    a.  Plaintiff
    b.  Desmond Piihl
    c.  Laura Pacheco
    d.  Anthony Brock
    e.  Pete Latimer
    f.  Wes Campbell
    g.  Ben Buchanan
    h.  All store managers reporting to Desmond Piihl
    i.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**


PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT        **PAGE 19**

**REQUEST FOR PRODUCTION NO. 11:**     All documents from January 1, 2017, to December 31, 2019, evidencing any training (either internal or external) taken by, offered to, or certifications, licenses, or degrees held by, Plaintiff, in each case relevant to Plaintiff's job responsibilities.

     **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 12:**     All documents concerning any complaints, formal or informal, made to Defendant, including any made by any employee or agent of Defendant, about Plaintiff, including any investigation notes or decision and the party to whom the complaint was made.

     **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 13:**     Documents sufficient to identify the names and contact information of all persons with personal knowledge of any complaints, formal or informal, made to Defendant, including any made by any employee or agent of Defendant, about Plaintiff.

     **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 14:**     All documents concerning any complaints, formal or informal, made by Plaintiff, both before and after his termination, to Defendant, including any investigation notes or decision and the party to whom the complaint was made.

     **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 15:**     Documents sufficient to identify the names and contact information of all persons with personal knowledge of any complaints, formal or informal, made by Plaintiff, both before and after his termination, to Defendant.

     **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 16:**     All documents referring to, reflecting, or mentioning complaints, formal or informal, including but not limited to disability discrimination, failure to accommodate an employee's disability, or FMLA retaliation made to Defendant by any

employee or agent of Defendant concerning the following persons, including any investigation notes or decision and the party to whom the complaint was made:

    a.  Desmond Piihl
    b.  Laura Pacheco
    c.  Anthony Brock
    d.  Pete Latimer
    e.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17:**   Documents sufficient to identify names and contact information of all persons with personal knowledge of the complaints, formal or informal, including but not limited to disability discrimination, failure to accommodate an employee's disability, or FMLA retaliation made to Defendant by any employee or agent of Defendant concerning the following persons:

    a.  Desmond Piihl
    b.  Laura Pacheco
    c.  Anthony Brock
    d.  Pete Latimer
    e.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 18:**   All documents referring to, reflecting, or mentioning the decision to write-up or otherwise discipline Plaintiff.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19:**   All documents referring to, reflecting, or mentioning the decision to terminate Plaintiff.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 20:**   All documents referring to, reflecting, or mentioning the decision to not fix Plaintiff's store's air conditioning in September or October 2018.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 21:**     Defendant's     employment     policies     and procedures that applied to Plaintiff's employment with Defendant, including without limitation, employment manuals and progressive discipline.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 22:**     Defendant's     employment     policies     and procedures that applied to Plaintiff's employment with Defendant including without limitation those mentioning:
      a.  disability discrimination
      b.  accommodating an employee's disability
      c.  FMLA retaliation.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 23:**     All     documents     evidencing     communications between any of the following persons discussing, evidencing, or mentioning Plaintiff from January 1, 2017, to the present:
      a.  Desmond Piihl
      b.  Laura Pacheco
      c.  Anthony Brock
      d.  Pete Latimer
      e.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 24:**     All     documents     evidencing     communications between any of the following persons and any other employee or agent of Defendant discussing, evidencing, or mentioning Plaintiff from January 1, 2017, to the present:
      a.  Desmond Piihl
      b.  Laura Pacheco
      c.  Anthony Brock
      d.  Pete Latimer
      e.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 25:**    All documents evidencing communications between any of the following persons and any third party discussing, evidencing, or mentioning Plaintiff from January 1, 2017, to the present:

    a.  Desmond Piihl
    b.  Laura Pacheco
    c.  Anthony Brock
    d.  Pete Latimer
    e.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 26:**    All documents evidencing communications between any of the following persons and Plaintiff from January 1, 2017, to the present:

    a.  Desmond Piihl
    b.  Laura Pacheco
    c.  Anthony Brock
    d.  Pete Latimer
    e.  Wes Campbell
    f.  Ben Buchanan
    g.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 27:**    All documents evidencing communications between any of the following persons and any person, including any person listed below, discussing, evidencing, or mentioning Plaintiff from the time of Plaintiff's termination to the present.

    a.  Desmond Piihl
    b.  Laura Pacheco
    c.  Anthony Brock
    d.  Pete Latimer
    e.  Wes Campbell
    f.  Ben Buchanan
    g.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 28:**    Documents evidencing communications, both internal and external, discussing, evidencing, or mentioning employment with Defendant of the following persons, including each person's job duties and changes to those job duties:

    a. Plaintiff
    b. Desmond Piihl
    c. Laura Pacheco
    d. Anthony Brock
    e. Pete Latimer
    f. Wes Campbell
    g. Ben Buchanan
    h. Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 29:**   All documents discussing, evidencing, or mentioning the following persons' terminations, resignations, and end(s) of employment with Defendant:
    a. Desmond Piihl
    b. Laura Pacheco
    c. Anthony Brock
    d. Pete Latimer
    e. Wes Campbell
    f. Ben Buchanan
    g. Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 30:**   All documents discussing, evidencing, or mentioning the following persons, their workloads, their ability to work, and remodeling of the Store at which Plaintiff worked:
    a. Plaintiff
    b. Wes Campbell
    c. Ben Buchanan.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 31:**   All documents concerning any complaints, formal or informal, made by the following persons against Defendant, both during and after their employment with Defendant, including any investigation notes or decision and the party to whom the complaint was made:
    a. Wes Campbell
    b. Ben Buchanan.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 32:**   Documents sufficient to identify the names and contact information of all persons with personal knowledge any complaints, formal or informal, made by the following persons against Defendant, both during and after their employment with Defendant, including any investigation notes or decision and the party to whom the complaint was made:

      a.  Wes Campbell
      b.  Ben Buchanan.


**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 33:**   For any person hired to perform the job responsibilities that formerly belonged to Plaintiff, produce:

      a.  any job description that applied to that person immediately before Plaintiff's termination
      b.  any new job description that applied to that person after Plaintiff's termination
      c.  any information discussing, evidencing, or mentioning compensation of that person
      d.  any information or documents referring to, reflecting, or mentioning compensation of that person after Plaintiff's termination
      e.  the qualifications of that person to perform the job responsibilities that formerly belonged to Plaintiff.


**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 34:**   For any person to whom the job responsibilities that formerly belonged to Plaintiff were transferred or given, produce:

      a.  any job description that applied to that person immediately before Plaintiff's termination
      b.  any new job description that applied to that person after Plaintiff's termination
      c.  any information discussing, evidencing, or mentioning compensation of that person
      d.  any information or documents referring to, reflecting, or mentioning compensation of that person after Plaintiff's termination
      e.  the qualifications of that person to perform the job responsibilities that formerly belonged to Plaintiff.


**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 35:**     All   diaries,   journals,   notes,   calendars, appointment books, compilations, summaries, or chronologies of events kept by any of the following persons referring to, reflecting, or mentioning Plaintiff:

        a.   Desmond Piihl
        b.   Laura Pacheco
        c.   Anthony Brock
        d.   Pete Latimer
        e.   Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 36:**     Documents  sufficient  to  identify  all  persons hired by the persons listed below from January 1, 2017 through the present, including documents sufficient to determine (a) their date of hire, (b) their disability status, (c) their job title, (d) their job duties, (e) the last date of their employment, and (f) any and all stated reasons for their termination:

        a.   Desmond Piihl
        b.   Laura Pacheco
        c.   Anthony Brock
        d.   Pete Latimer
        e.   Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 37:**     Documents  sufficient  to  identify  all  persons terminated by the persons listed below from January 1, 2017 through the present, including documents sufficient to determine (a) their date of hire, (b) their disability status, (c) their job title, (d) their job duties, (e) the last date of their employment, and (f) any and all stated reasons for their termination:

        a.   Desmond Piihl
        b.   Laura Pacheco
        c.   Anthony Brock
        d.   Pete Latimer
        e.   Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 38:**     Documents  sufficient  to  identify  all  persons supervised by the persons listed below from January 1, 2017 to the present, including documents sufficient to determine (a) their date of hire, (b) their disability status, (c) their job title, (d) their

job duties, (e) the last date of their employment, and (f) any and all stated reasons for their termination:

      a.  Desmond Piihl

      b.  Laura Pacheco

      c.  Anthony Brock

      d.  Pete Latimer

      e.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 39:**    All documents from January 1, 2017, to December 31, 2019, discussing, evidencing, or mentioning the disability status of Plaintiff, Plaintiff's accommodation requests, Plaintiff's medical leave, Plaintiff's Multiple Sclerosis, Plaintiff's doctor, and/or Plaintiff's medical condition.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 40:**    All documents supporting, refuting, or concerning the allegations that Plaintiff failed three loss prevention audits in Paragraph 15 of Plaintiff's Original Petition.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 41:**    Documents sufficient to identify the names and contact information of all persons with personal knowledge of the allegations that Plaintiff failed three loss prevention audits in Paragraph 15 of Plaintiff's Original Petition.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 42:**    All documents mentioning, evidencing, or concerning all loss prevention audits conducted at Plaintiff's store from January 1, 2017, through the present, including drafts of every audit and any changes made to said audits.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 43:**    Documents sufficient to identify the names and contact information of all persons with personal knowledge of the loss prevention audits conducted at Plaintiff's store from January 1, 2017, to through the present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 44:**    All documents concerning any communication identified or referenced in your answers to any and all interrogatories propounded by Plaintiff to Defendant.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 45:**    All documents referring to, reflecting, or mentioning any communication identified in response to Plaintiff's Interrogatory Nos. 1, 2, 3, 4, 5, 6, and 7.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 46:**    All correspondence to and/or from the Department of Labor concerning Plaintiff.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 47:**    All policies and procedures that applied to Plaintiff's employment with Defendant discussing, evidencing, or mentioning employee leave for a medical reason or related to a disability or medical condition.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 48:**    All documents discussing, evidencing, or mentioning Plaintiff's leave bank, including deductions made from Plaintiff's leave bank, the authorizing party who made the deductions, and any communications and/or documents sent to or received from Plaintiff discussing, evidencing, or mentioning Plaintiff's leave bank.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 49:**    Documents evidencing a complete record of changes made to Plaintiff's hours worked, including a record of the person that made the change and any communications and/or documents sent to or received from Plaintiff mentioning, discussing, or evidencing the changes in Plaintiff's hours worked.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 50:**   Documents evidencing a complete record of changes made to Plaintiff's scheduled hours, including a record of the person that made the change and any communications and/or documents sent to or received from Plaintiff mentioning, discussing, or evidencing the changes in Plaintiff's scheduled hours.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 51:**   All documents sent to or received from Plaintiff or his doctors discussing, evidencing, or mentioning Plaintiff's Multiple Sclerosis, disabilities, medical condition, medical treatment, ability to return to work, and/or restrictions on Plaintiff's return to work.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 52:**   All documents sent to or received from Plaintiff or his doctors discussing, evidencing, or mentioning any request by Plaintiff for leave for any reason.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 53:**   All documents sent to or received from Plaintiff or his doctors discussing, evidencing, or mentioning any request by Plaintiff for leave for a medical reason or related to a disability, medical condition, or medical treatment.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 54:**   All documents evidencing communications between or among any officers, employees, agents, or representatives of Defendant discussing, evidencing, or mentioning Plaintiff's Multiple Sclerosis, disabilities, medical condition, medical treatment, ability to return to work, or restrictions on his return to work.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 55:**   All documents evidencing communications between or among any officers, employees, agents, or representatives of Defendant discussing, evidencing, or mentioning any request by Plaintiff for leave for a medical reason or related to Plaintiff's Multiple Sclerosis, disability, medical condition, or medical treatment.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 56:**   All documents evidencing communications between or among any officers, employees, agents, or representatives of Defendant and any third parties discussing, evidencing, or mentioning Plaintiff's Multiple Sclerosis, disabilities, medical condition, medical treatment, ability to return to work, or restrictions on Plaintiff's return to work.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 57:**   All documents evidencing communications between any officers, employees, agents, or representatives of Defendant and any third parties referring to, reflecting, or mentioning any request by Plaintiff for leave for his Multiple Sclerosis, disabilities, medical condition, and/or medical treatment.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 58:**   All documents discussing, evidencing, or mentioning Plaintiff's schedule, time off, workload, and/or FMLA time.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 59:**   All contracts between Defendant and any third party that has a role in disability- or medical-related leave requests and administration for Defendant with respect to Plaintiff's employment with Defendant.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 60:**   All policies and procedures that applied to Plaintiff's employment with Defendant discussing, evidencing, or mentioning leave for employees for a medical reason or related to a disability or medical condition.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 61:**    All documents evidencing, discussing, or mentioning releases or notices received from Plaintiff's doctor, surgeon, or other healthcare professional.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 62:**    All documents referring to, reflecting, or mentioning any requests for reasonable accommodations, formal or informal, made by Plaintiff from January 1, 2017, to the present, including any related notes or decisions by Defendant.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 63:**    All documents referring to, reflecting, or mentioning any requests for accommodations, formal or informal, made by Plaintiff from January 1, 2017 to the present, including any related notes or decisions by Defendant.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 64:**    Documents sufficient to identify the names and contact information of all persons with personal knowledge of any requests for reasonable accommodations, formal or informal, made by Plaintiff from January 1, 2017, to the present.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 65:**    Documents sufficient to identify the names and contact information of all persons with personal knowledge of any requests for accommodations, formal or informal, made by Plaintiff from January 1, 2017, to the present.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 66:**    All documents discussing, evidencing, or mentioning Plaintiff's reasonable accommodation requests.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 67:**     All    documents    discussing,    evidencing,    or mentioning Plaintiff's accommodation requests.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 68:**     All    documents    discussing,    evidencing,    or mentioning Plaintiff and team lift items.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 69:**     All    documents    discussing,    evidencing,    or mentioning Plaintiff and air conditioning.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 70:**     All documents evidencing communications sent to or received from Plaintiff discussing, evidencing, or mentioning Plaintiff, his disability, Multiple Sclerosis, medical condition, medical leave, FMLA leave, disability leave, ability to return to work, fitness for duty, and restrictions on his return to work.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 71:**     All    policies    and    procedures    discussing, evidencing, or mentioning accommodations for Multiple Sclerosis, disability, injury/injuries, or any other medical condition(s) that applied to Plaintiff's employment.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 72:**     All    policies    and    procedures    discussing, evidencing, or mentioning accommodations discussed with or made available to Plaintiff with respect to Plaintiff's Multiple Sclerosis, disability, injury/injuries, or medical condition(s).

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 73:**     All    policies    and    procedures    discussing, evidencing, or mentioning accommodations available to employees with a disability, injury, or medical condition.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 74:**   All   policies   and   procedures   discussing, evidencing, or mentioning employees and medical leave.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 75:**   All notices provided to Plaintiff from Defendant as required by the Family and Medical Leave Act with respect to medical leave taken by Plaintiff in 2018.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 76:**   All   documents   discussing,   referring   to,   or evidencing any application for leave under the Family and Medical Leave Act submitted by Plaintiff, the approval or denial of the same, and the reasons for any denial of the same.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 77:**   All   documents   utilized   to   provide   answers   to any and all interrogatories propounded by Plaintiff to Defendant.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 78:**   All documents obtained from any third-parties, either informally, by subpoena and/or via depositions, upon written questions and related to this lawsuit.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 79:**   All   documents   that   you   believe   constitute evidence of any admission or statement against interest of Plaintiff.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 80:**     All documents supporting, refuting, discussing, or evidencing any after-acquired evidence of wrongdoing by Plaintiff that would have resulted in the termination of Plaintiff's employment.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 81:**     All documents supporting, refuting, discussing, or evidencing Plaintiff having failed to mitigate Plaintiff's damages.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 82:**     All documents supporting, refuting, discussing, or evidencing Plaintiff having failed to exhaust applicable administrative remedies.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 83:**     All documents and materials prepared by or for an expert used for consultation when that person's opinions or impressions have been reviewed, either in whole or in part, by an expert who may be called to testify in this case.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 84:**     The current resume and bibliography of any expert used for consultation when that person's opinions or impressions have been reviewed, either in whole or in part, by an expert who may be called to testify in this case.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 85:**     All bills, invoices, statements, or other requests for payment, together with all attachments and supporting documentation, reflecting charges for the time or service of any expert who you expect to call to testify at any trial of this matter.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 86:**     All contracts or other written agreements entered into by and between you and any expert who you expect to call to testify at any trial of this matter.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 87:**   All documents that Defendant expects to use at trial or at any hearing in this matter.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 88:**   All documents Defendant obtained from third parties by subpoena or informal request in connection with Plaintiff's claims in this lawsuit.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 89:**   All communications between Defendant and any governmental entity, including without limitation, the Texas Workforce Commission and the Equal Employment Opportunity Commission discussing or mentioning Plaintiff.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 90:**   Defendant's document preservation and ESI retention policies, if any.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 91:**   Documents sufficient to show Defendant's net worth.

    **RESPONSE:**

# EXHIBIT B

Cause No. _____

| | | |
|---|---|---|
| JONATHAN MALONE, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | _____ JUDICIAL DISTRICT |
| | § | |
| BIG LOTS STORES, INC., | § | |
| | § | |
| Defendant. | § | ELLIS COUNTY, TEXAS |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT

TO:   Defendant Big Lots Stores, Inc., by and through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, TX 78701-3218.

Pursuant to the Texas Rules of Civil Procedure, Plaintiff Jonathan Malone propounds his First Request for Production to Defendant Big Lots Stores, Inc. Your responses to the Requests are to be made in writing and are to be served, along with all responsive documents, upon counsel for Plaintiff within fifty (50) days of their service.  Please refer to the Texas Rules of Civil Procedure for your duty to supplement your answers and the sanctions available should you fail to comply.

# EXHIBIT B

**PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT**                                   **PAGE 1**

Respectfully Submitted,

/s/ Jennifer J. Spencer
Jennifer J. Spencer
Texas Bar No. 10474900
jspencer@jacksonspencerlaw.com
James E. Hunnicutt
Texas Bar No. 24054252
jhunnicutt@jacksonspencerlaw.com
Dimple A. Baca
Texas Bar No. 24060049
dbaca@jacksonspencerlaw.com
JACKSON SPENCER LAW PLLC
Three Forest Plaza
12221 Merit Dr., Suite 160
Dallas, Texas 75251
(972) 458-5301 (Telephone)
(972) 770-2156 (Fax)

**ATTORNEYS FOR PLAINTIFF
JONATHAN MALONE**

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was served by process server along with Plaintiff's Original Petition and Citation on the date identified by the process server in the return of service.

/s/ Jennifer J. Spencer
Jennifer J. Spencer

## DEFINITIONS AND INSTRUCTIONS

1.       The word "Plaintiff" or "Malone" shall refer to Plaintiff Jonathan Malone.

2.       The words "Defendant," "Big Lots," "you," and "your" shall refer to Defendant Big Lots Stores, Inc., and its agents, employees, representatives, members, managers, officers, directors, partners, subsidiaries, affiliates, predecessors, and any other persons acting or purporting to act on their behalf, including any attorney or other representative, whether authorized or not.

3.       "Document," "documents," and "documentation" as used herein, shall mean all writings - including ESI (as defined below) - of every kind, source, and authorship, both originals and all non-identical copies thereof, in your possession, custody or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity (inclusive of an entity's shareholders, owners, members, officers, agents, employees or representatives, or anyone acting for it or on its behalf), including without limitation any government agency, department, administrative, or private entity or person. The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information, storage, or retrieval systems, together with the codes and/or programming, instructions and other materials necessary to understand and use such systems. For purposes of illustration and not limitation, the terms shall include: affidavits; agendas; agreements; analyses; announcements; bill; statements; and other records of obligations and expenditures; books, brochures; bulletins; calendars; canceled checks, vouchers, receipts and other records of payments; charts, drawings; circulars; collateral files and contents; agreements; correspondence; diaries; drafts; files; instructions; invoices; ledgers; journals; balance sheets;

profit and loss statements; and other sources of financial data; letters, logs, notes, or memoranda of telephonic or face-to-face conversations; manuals; memoranda of all kinds, to and from any persons, agencies, or entities; minutes; minute books; notes; notices; parts lists; papers; press releases; printed matter (including published books, articles, speeches, and newspaper clippings); purchase orders; records; records of administrative, technical, and financial actions taken or recommended; reports, safety deposit boxes and contents and records of entry; schedules; security agreements; specifications; statements of bank accounts; statements, interviews; technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results, and conclusions; summaries, notes, and other records and recordings of any conference, meetings, visits, statements, interviews or telephone conversations; telegrams; teletypes and other communications sent or received; transcripts of testimony; Deed instruments; work papers; and all other writings, the contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested. Any written, printed, typed, recorded, or other graphic matter of any kind or nature, and all mechanical and electrical sound recordings and any transcripts, or formatted collection of data for business transaction purposes in the possession, custody, and/or control of your officers, directors, employees, servants, and agents, and counsel, or known by you to exist. All copies of documents by whatever means made, whether or not prepared by you, as well as all copies of documents by whatever means made, whether or not prepared by you.

      4.     As used herein, the term Electronically stored information ("ESI") means potentially relevant information electronically, magnetically, or optically stored as:

- Digital communication (e.g., email, voicemail, text (including SMS, MMS, and iMessage), instant messaging, and social media posts and direct messaging, including drafts of digital communications and deleted digital communications);

- Word processed documents (e.g., Word or WordPerfect documents and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application data (e.g., QuickBooks, Juris, Money data files);

- Image and Facsimile files (e.g., pdf, .tiff, .jpg, .gif images);

- Sound recordings (e.g., wav and .mp3 files);

- Video and animation (e.g., avi and .mov files);

- Databases (e.g., Access, Oracle SQL Server, SAP);

- Contact and relationship management data (e.g. Outlook, ACT!);

- Calendar and diary application data (e.g. Outlook PST, Yahoo, blog tools);

- Online access data (e.g., temporary internet files, history, cookies);

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network access and server activity logs;

- Project management application data;

- Computer aided design/drawing files; and

- Back-up and archival files (e.g., Zip, .gho)

- USB Flash drives

- Laptops

- Smart Phones

- Voicemails

- Web Based Emails (e.g., Yahoo, MSN, Mac, Gmail)

5.      The word "communication" shall include all forms of written documents, including emails, texts, deleted emails, and deleted texts, and shall also mean communication by any oral means, including by meeting, conversation, discussion, message or other occurrence transmitted between two or more persons orally.

6.      The word "identify" or "identity," when used with respect to an individual, means information sufficient to identify and locate the individual, including the full name, title, present residence and business address (if the present home and/or business address is not available, the last known home and/or business address should be provided), all business and/or personal email addresses personal utilized in the last two years, the name of the individual's present employer, and the individual's last known home, cell, and/or business telephone numbers, including the phone company providers.

7.      The word "identify" or "identity," when used with respect to a legal entity, means its name, type of organization (for example, corporation, partnership, joint venture, municipality or other entity), laws under which organized, address, telephone number of principal place of business, principal line of business, and website address.

8.      The word "identify" or "identity," when used with respect to a document, means to give, to the extent known, (i) the type of document, including whether it is an email or a text message, (ii) the general subject matter of the document, (iii) the date of the document, and (iv) the name and last known addresses and telephone numbers of the author(s), addressee(s), recipient(s), and last known custodian thereof.  In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Tex. R. Civ. P. 196.

9.      The word "identify" or "identity," when used with respect to a communication, statement of material fact, representation or misrepresentation (hereinafter collectively referred to as "communications") means to state whether the communication was oral or written and (a) with respect to oral communications, (1) to provide the date of the communication, (2) to state the substance of the communication, (3) to state whether the communication was made by telephone, other audiovisual means of transmission (e.g., Face Time or Skype), or in person, (3) to identify the person making the communication, (4) to identify each person party to or who heard the communication, and (5) to identify all documents that relate to the communication; and (b) with respect to written communications, (1) to identify the communication in accordance with the Definition above for identifying documents, and (2) to identify all documents that relate to the communication.

10.     As used herein, the term "describe," when used in reference to an action, event or deed, means to state the date the event took place, the place the event occurred, the nature of the event, and to identify all persons involved in or witnessing the event.

11.     The term "person" is defined as any individual or legal entity, including, without limitation, any natural person, governmental entity, corporation, sole proprietorship, partnership, joint venture, firm, association, agency, board, authority, commission, trust, or other such entity.

12.     "Regarding" or "relating to" shall mean constituting in whole or in part, concerning, discussing, communicating about, pertaining to, connected with, containing or contained within, referring to, mentioning, supporting, evidencing, embodying, proving, indicating, or probative of the existence or nature thereof.

13.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

14.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

15.    The use of the singular form of any word includes the plural and vice versa.

## GENERAL INSTRUCTIONS

1.    Where an Interrogatory requests that you identify documents, the request is intended to cover all documents or things that are in your possession, custody, or control.  In accordance with Tex. R. Civ. P. 192.7, a document or thing is deemed to be in your possession, custody, or control if:

    a.   it is in your physical control; or

    b.   it is in the physical control of any other person or entity, and you, individually or otherwise:

        i.   own the document or thing in whole or in part;

        ii.   have a right by contract, statute, or otherwise, to use, inspect, examine, or copy that document or thing on any terms; or

        iii.   have, as a practical matter, been able to use, inspect, examine, or copy that document or thing when you have sought to do so.

2.    Without limiting your obligations to search, identify, or produce documents or information responsive to the below requests, you are hereby instructed to include in your search for responsive documents and information, all documents for all persons employed or formerly employed by you who may likely have knowledge of relevant facts, including without limitation,

the following custodians: Desmond Piihl, Laura Pacheco, Anthony Brock, Pete Latimer, and any other person who participated in any decision made to terminate Plaintiff.

3.      If you opt to answer an Interrogatory by referring to documents or ESI pursuant to Tex. R. Civ. P. 197.2(c), then you are requested to produce the documents or ESI in accordance with Tex. R. Civ. P. 196.3, by producing them as they are kept and organized in the usual course of business, or organize and label them to correspond with the categories in the Interrogatory. You are further requested to identify the Bates numbers of documents that are responsive to the individual Interrogatories.   You are further requested to produce the documents and ESI according to the protocol described in the "Production of Documents and Electronically Stored Information" contained in Plaintiff's First Request for Production to Defendant.

4.      To the extent that you believe any of the following requests to be objectionable, enter so much of each and each part thereof that is not, in your view, objectionable.

5.      To the extent that you believe any of the following requests call for information or documents subject to a claim of privilege, enter so much of each request and each part thereof that did not request, in your view, allegedly privileged information that you refuse to give.

6.      If any documents or information sought herein is withheld on the basis of privilege or work product, or otherwise, you are requested to submit in lieu of any such information a written statement pursuant to Rule 193.3(b) of the Texas Rules of Civil Procedure no later than the day that these documents are produced that:  (a) describes the documents or information withheld that, without revealing the privileged information itself or otherwise waiving the privilege, enables other parties to assess the applicability of the privilege; and (b) asserts a specific privilege for each item or group of items withheld.

7.      If any document or information is withheld on the basis of any claimed confidentiality or privacy right, you are requested to provide (1) a copy of any written agreement containing such confidentiality right, if applicable; (2) in your response to the Request, citation to the statutory or other legal authority under which the confidentiality or privacy right is asserted, if applicable; and (3) pursuant to Tex. R. Civ. P. 192.6, a proposed agreed protective order to govern the confidentiality of the documents or information withheld.

8.      These requests are continuing.  If you learn that your answer to an Interrogatory was incomplete or incorrect when made or that, although it was complete and correct when made, it is no longer complete and correct, you must amend or supplement the answer (1) to the extent that the Interrogatory seeks the identification of persons with knowledge of relevant facts, trial witnesses, or expert witnesses, and (2) to the extent that the Interrogatory seeks other information, unless the additional or corrective information has been made known to the other parties in writing, on the record at a deposition, or through other discovery responses.  If, after answering any Interrogatory, you obtain or become aware of any further information, documents, or ESI responsive to these requests, you are required to amend or supplement your answer and produce such additional documents and ESI.

9.      You must make amended or supplemental answers reasonably promptly after you discover the necessity for such an amendment or supplementation.

10.     The relevant time period is from January 1, 2017, to the present.

## FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1:**      Identify each person who participated in any way in Defendant's decision to terminate Plaintiff and describe the person's involvement therein, the person's titles and job responsibilities during their employment with Defendant and the dates the person held each job title.

      **ANSWER:**


**INTERROGATORY NO. 2:**      Describe the process and procedures Defendant undertook to determine whether Plaintiff should be terminated and state the dates on which each activity occurred.

      **ANSWER:**


**INTERROGATORY NO. 3:**      State with specificity all reasons communicated to Plaintiff that Plaintiff's employment was terminated, including by identifying, for each reason communicated to Plaintiff, (a) the date the reason was provided to Plaintiff, (b) the person who communicated the reason to Plaintiff, and (c) all persons who witnessed or who were party to or copied on the communication.

      **ANSWER:**


**INTERROGATORY NO. 4:**      Identify each person who participated in any way in any investigation into complaints of disability discrimination, failure to accommodate an employee's disability, or FMLA retaliation made by Plaintiff to any employee of Defendant and describe the person's involvement therein, including by stating the person's titles during their employment with Defendant and whether or not the person is a current employee of Defendant.

      **ANSWER:**


**INTERROGATORY NO. 5:**      Identify each person who participated in any way in Defendant's decision to not provide accommodations to Plaintiff and describe the person's involvement therein, the person's disability status, and the person's titles and job responsibilities during their employment with Defendant and the dates the person held each job title.

      **ANSWER:**


**INTERROGATORY NO. 6:**      Describe the process and procedures Defendant undertook to determine whether to provide accommodations to Plaintiff and state the dates on which each activity occurred.

**ANSWER:**

**INTERROGATORY NO. 7:**       State with specificity all reasons communicated to Plaintiff that Plaintiff's accommodations were not provided, including by identifying, for each reason communicated to Plaintiff, (a) the date the reason was provided to Plaintiff, (b) the person who communicated the reason to Plaintiff, and (c) all persons who witnessed or who were party to or copied on the communication.

**ANSWER:**

**INTERROGATORY NO. 8:**       Identify all employees hired, placed, or reassigned by Defendant, since Plaintiff's termination, in the position last held by Plaintiff or who is doing any of the job-related activities previously performed by Plaintiff, including by stating the person's disability status, and the person's titles and job responsibilities during their employment with Defendant, the dates during which the person held each job title or job responsibility and whether the person is a current employee of Defendant.

**ANSWER:**

**INTERROGATORY NO. 9:**       Identify all employees of Defendant, from January 1, 2017, to the present, at the same level as Plaintiff who reported to the same District Managers as Plaintiff, and above the position last held by Plaintiff in the chain of command within Defendant, up to Defendant's chief executive(s), including by stating the person's disability status, and the person's titles during their employment with Defendant and the dates the person had each job title.

**ANSWER:**

**INTERROGATORY NO. 10:**       Identify all employees of Defendant, from January 1, 2017, to the present, at the same level as Plaintiff who reported to the same District Managers as Plaintiff who are disabled, including by stating the person's disability status, and the person's titles during their employment with Defendant, the dates during which the person held each job title and whether each such person is currently employed by Defendant.

**ANSWER:**

**INTERROGATORY NO. 11:**       Identify all lawsuits and administrative proceedings, including by stating the case or cause number and stating the jurisdiction or tribunal in which it was filed, that have been filed against Defendant from 2013 to the present in which an allegation was made of disability discrimination, failure to accommodate an employee's disability, or

FMLA retaliation against Desmond Piihl, Laura Pacheco, Anthony Brock, Pete Latimer, or any person identified in response to Interrogatory No. 1 and Interrogatory No. 5.

**ANSWER:**

**INTERROGATORY NO. 12:**    Identify all complaints, accusations, or allegations of disability discrimination, failure to accommodate an employee's disability, or FMLA retaliation against Desmond Piihl, Laura Pacheco, Anthony Brock, Pete Latimer, or any person identified in response to Interrogatory No. 1 and Interrogatory No. 5 from 2013 to the present, including by identifying all persons involved in each complaint, accusation, or allegation.

**ANSWER:**

**INTERROGATORY NO. 13:**    State all certifications, licenses, or degrees required by Defendant for the position held by Plaintiff at the time of his termination, including by stating which such certification, license, or degree You contend Plaintiff did not possess at the time of his termination.

**ANSWER:**

**INTERROGATORY NO. 14:**  State all shareholders, owners, members, officers, agents, employees, or representatives of Defendant, or anyone acting for it or on its behalf, who communicated with any of Plaintiff's doctor(s), surgeon(s), or other medical and healthcare professional(s) regarding Plaintiff.

**ANSWER:**

**INTERROGATORY NO. 15:**    Identify each person with whom you have consulted in this case on expert or specialized matters, and whom you do not expect to be called as a witness at trial (a "consulting expert") if the consulting expert's opinions or impressions have been reviewed by or discussed with any testifying expert.  For each such consulting expert identified, state in detail the subject matter of his or her consultation, the mental impressions and opinions held by the consulting expert, and the facts known to the consulting expert (regardless of when the factual information was acquired) which relate to or form the basis of the mental impressions and opinions held by the consulting expert.

**ANSWER:**

**INTERROGATORY NO. 16:**  Identify each person whom you expect to call as an expert witness at trial and, for each such expert identified, state in detail the subject on which the expert

will testify, the general substance of the expert's mental impressions and opinions, a brief summary of the basis therefor, the expert's qualifications to testify, and the identity of persons whose opinions or impressions have been reviewed by or discussed with the expert.

**ANSWER:**


**INTERROGATORY NO. 17:**     State the last known address, telephone number(s) and personal or forwarding email address for each of the following who is no longer a current employee of Defendant: Desmond Piihl, Laura Pacheco, Anthony Brock, Pete Latimer, Ben Buchanan, Wes Campbell, Scot West, Bernard Lacy, and any other person identified in Interrogatory Nos. 1 or 5.

**ANSWER:**


**INTERROGATORY NO. 18:**     If any document concerning Plaintiffs' claims and/or your defenses in this lawsuit is no longer in your possession, custody, or control, or has been lost, misplaced, or destroyed, identify each such document and briefly describe why each document is no longer in your possession, custody, or control and/or how, when, and by whom it was lost, misplaced, or destroyed.

**ANSWER:**

# EXHIBIT C

Cause No. _____

| | | |
|---|---|---|
| **JONATHAN MALONE,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **_____ JUDICIAL DISTRICT** |
| | § | |
| **BIG LOTS STORES, INC.,** | § | |
| | § | |
| **Defendant.** | § | **ELLIS COUNTY, TEXAS** |

### PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS TO DEFENDANT

TO:    Defendant Big Lots Stores, Inc. by and through its Registered Agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, TX 78701-3218.

Pursuant to the Texas Rules of Civil Procedure, Plaintiff Jonathan Malone propounds his First Request for Admissions to Defendant Big Lots Stores, Inc. Your responses to the Requests are to be made in writing and are to be served upon counsel for Plaintiff within fifty (50) days of their service. Please refer to the Texas Rules of Civil Procedure for your duty to supplement your responses and the sanctions available should you fail to comply.

# EXHIBIT C

**PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS TO DEFENDANT**                                    **PAGE 1**

Respectfully Submitted,

*/s/ Jennifer J. Spencer*
Jennifer J. Spencer
Texas Bar No. 10474900
jspencer@jacksonspencerlaw.com
James E. Hunnicutt
Texas Bar No. 24054252
jhunnicutt@jacksonspencerlaw.com
Dimple A. Baca
Texas Bar No. 24060049
dbaca@jacksonspencerlaw.com
JACKSON SPENCER LAW PLLC
Three Forest Plaza
12221 Merit Drive, Suite 160
Dallas, Texas 75251
(972) 458-5301 (Telephone)
(972) 770-2156 (Fax)

**ATTORNEYS FOR PLAINTIFF
JONATHAN MALONE**

**<u>CERTIFICATE OF SERVICE</u>**

A true and correct copy of the foregoing document was served by process server along with Plaintiff's Original Petition and Citation on the date identified by the process server in the return of service.

*/s/  Jennifer J. Spencer*
Jennifer J. Spencer

## DEFINITIONS

1.     The words "Plaintiff" or "Malone" shall refer to Plaintiff Jonathan Malone.

2.     The words "Defendant," "Big Lots," "you," and "your" shall refer to Defendant Big Lots Stores, Inc. and its agents, employees, representatives, members, managers, officers, directors, partners, subsidiaries, affiliates, predecessors, and any other persons acting or purporting to act on their behalf, including any attorney or other representative, whether authorized or not.

3.     The term "person" is defined as any individual or legal entity, including, without limitation, any natural person, governmental entity, corporation, sole proprietorship, partnership, joint venture, firm, association, agency, board, authority, commission, trust, or other such entity.

4.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

5.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

6.     The use of the singular form of any word includes the plural and vice versa.

## GENERAL INSTRUCTIONS

1.     Pursuant to Tex. R. Civ. P. 198.2(b), lack of information or knowledge is not a proper response to a Request for Admission unless you state that a reasonable inquiry was made but that the information known or easily obtainable is insufficient to enable you to admit or deny the Request.

2.     The Requests for Admission are intended to cover all information obtainable from documents or things that are in your possession, custody, or control.  In accordance with Tex. R. Civ. P. 192.7, a document or thing is deemed to be in your possession, custody, or control if:

    a.  it is in your physical control; or

    b.  it is in the physical control of any other person or entity, and you, individually or otherwise:

        i.  own the document or thing in whole or in part;

        ii.  have a right by contract, statute, or otherwise, to use, inspect, examine, or copy that document or thing on any terms; or

        iii.  have, as a practical matter, been able to use, inspect, examine, or copy that document or thing when you have sought to do so.

3.     Without limiting your obligations to reasonably inquire for knowledge or information sufficient to admit or deny each Request, you are hereby instructed to include in your inquiry all persons employed or formerly employed by you who may likely have knowledge of relevant facts, including without limitation, the following persons: Desmond Piihl, Laura Pacheco, Anthony Brock, Pete Latimer, and any other person who participated in any decision made to terminate Plaintiff.

4.     To the extent that you believe any of the following requests to be objectionable, enter so much of each and each part thereof that is not, in your view, objectionable.

5.     To the extent that you believe any of the following requests call for information or documents subject to a claim of privilege, enter so much of each request and each part thereof that did not request, in your view, allegedly privileged information that you refuse to give.

6.     If any documents or information sought herein is withheld on the basis of privilege or work product, or otherwise, you are requested to submit in lieu of any such information a written statement pursuant to Rule 193.3(b) of the Texas Rules of Civil Procedure no later than the day that these documents are produced that: (a) describes the documents or

information withheld that, without revealing the privileged information itself or otherwise waiving the privilege, enables other parties to assess the applicability of the privilege; and (b) asserts a specific privilege for each item or group of items withheld.

7.     If any document or information is withheld on the basis of any claimed confidentiality or privacy right, you are requested to provide (1) a copy of any written agreement containing such confidentiality right, if applicable; (2) in your response to the Request, citation to the statutory or other legal authority under which the confidentiality or privacy right is asserted, if applicable; and (3) pursuant to Tex. R. Civ. P. 192.6, a proposed agreed protective order to govern the confidentiality of the documents or information withheld.

8.     These requests are continuing. If you learn that your response to a request was incomplete or incorrect when made or that, although it was complete and correct when made, it is no longer complete and correct, you must amend or supplement the response (1) to the extent that the request seeks the identification of persons with knowledge of relevant facts, trial witnesses, or expert witnesses, and (2) to the extent that the request seeks other information, unless the additional or corrective information has been made known to the other parties in writing, on the record at a deposition, or through other discovery responses.

9.     You must make amended or supplemental responses reasonably promptly after you discover the necessity for such an amendment or supplementation.

10.     The relevant time period is from January 1, 2017, to the present.

## REQUESTS FOR ADMISSIONS

**REQUEST FOR ADMISSION NO. 1:**     Admit that Defendant had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in 2017.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 2:**     Admit that Defendant had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in 2018.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 3:**     Admit that Defendant had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in 2019.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 4:**     Admit that Defendant had twenty (20) or more employees for each working day in each of twenty (20) or more calendar weeks in 2017.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 5:**     Admit that Defendant had twenty (20) or more employees for each working day in each of twenty (20) or more calendar weeks in 2018.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 6:**     Admit that Defendant had twenty (20) or more employees for each working day in each of twenty (20) or more calendar weeks in 2019.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 7:**     Admit that Defendant had more than 100 employees for each working day in each of twenty (20) or more calendar weeks in 2017.

    **RESPONSE:**

\

**REQUEST FOR ADMISSION NO. 8:**     Admit that Defendant had more than 100 employees for each working day in each of twenty (20) or more calendar weeks in 2018.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 9:**     Admit that Defendant had more than 100 employees for each working day in each of twenty (20) or more calendar weeks in 2019.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 10:**     Admit that Defendant had more than 200 employees for each working day in each of twenty (20) or more calendar weeks in 2017.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 11:**     Admit that Defendant had more than 200 employees for each working day in each of twenty (20) or more calendar weeks in 2018.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 12:**     Admit that Defendant had more than 200 employees for each working day in each of twenty (20) or more calendar weeks in 2019.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 13:**     Admit that Defendant had more than 500 employees for each working day in each of twenty (20) or more calendar weeks in 2017.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 14:**     Admit that Defendant had more than 500 employees for each working day in each of twenty (20) or more calendar weeks in 2018.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 15:**    Admit that Defendant had more than 500 employees for each working day in each of twenty (20) or more calendar weeks in 2019.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 16:**    Admit that Defendant had fifty (50) or more employees for each working day in each of twenty (20) or more calendar weeks in 2017.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 17:**    Admit that Defendant had fifty (50) or more employees for each working day in each of twenty (20) or more calendar weeks in 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 18:**    Admit that Defendant had fifty (50) or more employees for each working day in each of twenty (20) or more calendar weeks in 2019.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 19:**    Admit that Defendant had fifty (50) or more employees within seventy-five (75) miles of Plaintiff's worksite for each working day in each of twenty (20) or more calendar weeks in 2017.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 20:**    Admit that Defendant had fifty (50) or more employees within seventy-five (75) miles of Plaintiff's worksite for each working day in each of twenty (20) or more calendar weeks in 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 21:**    Admit that Defendant had fifty (50) or more employees within seventy-five (75) miles of Plaintiff's worksite for each working day in each of twenty (20) or more calendar weeks in 2019.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 22:**    Admit that, at the time of Plaintiff's termination from Defendant, Plaintiff was an "employee" of Defendant, as that term is used in the Texas Commission on Human Rights Act, Texas Labor Code § 21.002(7).

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 23:**    Admit that, at the time of Plaintiff's termination from Defendant, Defendant was an "employer," as that term is used in the Texas Commission on Human Rights Act, Texas Labor Code § 21.002(8).

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 24:**    Admit that, at the time of Plaintiff's termination from Defendant, Defendant was an "employer," as that term is used in the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA").

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 25:**    Admit that, at the time of Plaintiff's termination from Defendant, Plaintiff was an "employee" of Defendant, as that term is used in the ADA.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 26:**    Admit that, at the time of Plaintiff's termination from Defendant, Plaintiff was a "qualified individual," as that term is used in the ADA.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 27:**    Admit that Defendant was an "employer" with respect to Plaintiff as that term is used in the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA").

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 28:**    Admit that, during Plaintiff's employment with Defendant, Plaintiff was an "eligible employee" of Defendant, as that term is used in the FMLA.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 29:**   Admit that Defendant granted Plaintiff leave protected by the Family and Medical Leave Act ("FMLA") in 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 30:**   Admit that Plaintiff was employed by Defendant.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 31:**   Admit that Plaintiff began working for Defendant in August 2015.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 32:**   Admit that Plaintiff was employed by Defendant as Store Team Leader at the time of Plaintiff's termination.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 33:**   Admit that Plaintiff submitted a complaint to Defendant alleging discriminatory behavior by Desmond Piihl on or about September 28, 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 34:**   Admit that Plaintiff reported Desmond Piihl's failure to accommodate Plaintiff's disability on or about September 28, 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 35:**   Admit that Plaintiff reported Desmond Piihl's failure to accommodate Plaintiff's disability to at least one officer of Defendant on or about September 28, 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 36:**   Admit that Defendant received a complaint from Plaintiff on or about September 8, 2018.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 37:**   Admit that Defendant received a complaint from Plaintiff on or about September 8, 2018, mentioning Piihl.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 38:**   Admit that Defendant received a complaint from Plaintiff on or about September 8, 2018, mentioning Pacheco.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 39:**   Admit that Defendant received a complaint from Plaintiff on or about September 8, 2018, mentioning a write-up.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 40:**   Admit that Defendant received a complaint from Plaintiff on or about September 8, 2018, mentioning an audit.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 41:**   Admit that Defendant received a complaint from Plaintiff on or about September 8, 2018, mentioning an audit conducted while Plaintiff was on medical leave.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 42:**   Admit that Defendant received a complaint from Plaintiff on or about September 8, 2018, mentioning medical leave.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 43:**   Admit that Plaintiff reported Laura Pacheco's discriminatory behavior in September 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 44:**   Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring in September 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 45:**   Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to Anthony Brock in September 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 46:**   Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to Desmond Piihl in September 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 47:**   Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to at least one officer of Defendant in September 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 48:**   Admit that Plaintiff reported Laura Pacheco's discriminatory behavior in October 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 49:**   Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring in October 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 50:**   Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to Anthony Brock in October 2018.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 51:**   Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to Desmond Piihl in October 2018.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 52:**   Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to at least one officer of Defendant in October 2018.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 53:**   Admit that Plaintiff reported Laura Pacheco's discriminatory behavior in December 2018.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 54:**   Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring in December 2018.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 55:**   Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to Anthony Brock in December 2018.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 56:**   Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to Desmond Piihl in December 2018.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 57:**   Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to at least one officer of Defendant in December 2018.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 58:**   Admit that Plaintiff reported Laura Pacheco's discriminatory behavior in February 2019.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 59:**   Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring in February 2019.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 60:**   Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to Anthony Brock in February 2019.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 61:**   Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to Desmond Piihl in February 2019.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 62:**   Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to at least one officer of Defendant in February 2019.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 63:**   Admit that Defendant terminated Plaintiff.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 64:**    Admit that Defendant informed Plaintiff of his termination on March 7, 2019.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 65:**    Admit that, at the time Defendant terminated Plaintiff, he possessed all certifications, degrees, and licenses required for his position.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 66:**    Admit that Desmond Piihl made the decision to terminate Plaintiff's employment with Defendant.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 67:**    Admit that Desmond Piihl was involved in making the decision to terminate Plaintiff's employment with Defendant.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 68:**    Admit that on March 7, 2019, Desmond Piihl informed Plaintiff of his termination in person.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 69:**    Admit that Desmond Piihl told Plaintiff he was being terminated because Plaintiff had unsatisfactory job performance.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 70:**    Admit that Desmond Piihl told Plaintiff no reason for his termination other than Plaintiff had unsatisfactory job performance.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 71:**   Admit that Laura Pacheco made the decision to terminate Plaintiff's employment with Defendant.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 72:**   Admit that Laura Pacheco was involved in making the decision to terminate Plaintiff's employment with Defendant.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 73:**   Admit that Anthony Brock made the decision to terminate Plaintiff's employment with Defendant.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 74:**   Admit that Anthony Brock was involved in making the decision to terminate Plaintiff's employment with Defendant.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 75:**   Admit that Pete Latimer made the decision to terminate Plaintiff's employment with Defendant.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 76:**   Admit that Pete Latimer was involved in making the decision to terminate Plaintiff's employment with Defendant.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 77:**   Admit that on March 7, 2019, Pete Latimer informed Plaintiff of his termination in person.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 78:**    Admit that Pete Latimer told Plaintiff he was being terminated because Plaintiff had unsatisfactory job performance.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 79:**    Admit that Pete Latimer told Plaintiff no reason for his termination other than Plaintiff had unsatisfactory job performance.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 80:**    Admit that no other employee or agent of Defendant told Plaintiff any reason for his termination other than Plaintiff had unsatisfactory job performance.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 81:**    Admit that, at the time of Plaintiff's termination from Defendant, Defendant had a policy that prohibited terminating an employee because of the employee's disability.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 82:**    Admit that, at the time of Plaintiff's termination from Defendant, Defendant had a policy that prohibited retaliating against an employee for making a complaint of discrimination.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 83:**    Admit that Defendant has a policy that states that reports of discrimination will be kept confidential.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 84:**    Admit that Defendant has at least one policy regarding discrimination.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 85:**  Admit that Defendant has at least one policy regarding retaliation.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 86:**  Admit that, at the time of Plaintiff's termination from Defendant, Defendant had at least one policy or procedure concerning medical leave.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 87:**  Admit that, at the time of Plaintiff's termination from Defendant, Defendant had at least one policy or procedure prohibiting interfering with an employee's medical leave.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 88:**  Admit that, at the time of Plaintiff's termination from Defendant, Desmond Piihl was aware of a policy or procedure of Defendant prohibiting interfering with an employee's medical leave.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 89:**  Admit that, at the time of Plaintiff's termination from Defendant, Laura Pacheco was aware of a policy or procedure of Defendant prohibiting interfering with an employee's medical leave.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 90:**  Admit that, at the time of Plaintiff's termination from Defendant, Anthony Brock was aware of a policy or procedure of Defendant prohibiting interfering with an employee's medical leave.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 91:**  Admit that, at the time of Plaintiff's termination from Defendant, Pete Latimer was aware of a policy or procedure of Defendant prohibiting interfering with an employee's medical leave.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 92:**    Admit that, at the time of Plaintiff's termination from Defendant, Defendant had at least one policy or procedure prohibiting retaliating against an employee exercising the right to medical leave.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 93:**    Admit that, at the time of Plaintiff's termination from Defendant, Desmond Piihl was aware of a policy or procedure of Defendant prohibiting retaliating against an employee exercising the right to medical leave.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 94:**    Admit that, at the time of Plaintiff's termination from Defendant, Laura Pacheco was aware of a policy or procedure of Defendant prohibiting retaliating against an employee exercising the right to medical leave.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 95:**    Admit that, at the time of Plaintiff's termination from Defendant, Anthony Brock was aware of a policy or procedure of Defendant prohibiting retaliating against an employee exercising the right to medical leave.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 96:**    Admit that, at the time of Plaintiff's termination from Defendant, Pete Latimer was aware of a policy or procedure of Defendant prohibiting retaliating against an employee exercising the right to medical leave.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 97:**    Admit that, at the time of Plaintiff's termination from Defendant, Desmond Piihl knew that interfering with an employee's medical leave is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 98:**   Admit that, at the time of Plaintiff's termination from Defendant, Desmond Piihl knew that retaliating against an employee for exercising his or her right to medical leave is a violation of federal law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 99:**   Admit that, at the time of Plaintiff's termination from Defendant, Laura Pacheco knew that interfering with an employee's medical leave is a violation of federal law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 100:**   Admit that, at the time of Plaintiff's termination from Defendant, Laura Pacheco knew that retaliating against an employee for exercising his or her right to medical leave is a violation of federal law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 101:**   Admit that, at the time of Plaintiff's termination from Defendant, Anthony Brock knew that interfering with an employee's medical leave is a violation of federal law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 102:**   Admit that, at the time of Plaintiff's termination from Defendant, Anthony Brock knew that retaliating against an employee for exercising his or her right to medical leave is a violation of federal law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 103:**   Admit that, at the time of Plaintiff's termination from Defendant, Pete Latimer knew that interfering with an employee's medical leave is a violation of federal law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 104:**   Admit that, at the time of Plaintiff's termination from Defendant, Pete Latimer knew that retaliating against an employee for exercising his or her right to medical leave is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 105:** Admit that, at the time of Plaintiff's termination from Defendant, at least one person involved in the decision to terminate Plaintiff knew that interfering with an employee's medical leave is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 106:** Admit that, at the time of Plaintiff's termination from Defendant, at least one person involved in the decision to terminate Plaintiff knew that retaliating against an employee for exercising his or her right to medical leave is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 107:** Admit that, at the time of Plaintiff's termination from Defendant, Desmond Piihl was aware of a policy of Defendant that prohibited terminating an employee because of the employee's disability.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 108:** Admit that, at the time of Plaintiff's termination from Defendant, Desmond Piihl knew that terminating an employee because of the employee's disability is a violation of Texas law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 109:** Admit that, at the time of Plaintiff's termination from Defendant, Desmond Piihl knew that terminating an employee because of the employee's disability is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 110:** Admit that, at the time of Plaintiff's termination from Defendant, Laura Pacheco was aware of a policy of Defendant that prohibited terminating an employee because of the employee's disability.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 111:** Admit that, at the time of Plaintiff's termination from Defendant, Laura Pacheco knew that terminating an employee because of the employee's disability is a violation of Texas law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 112:** Admit that, at the time of Plaintiff's termination from Defendant, Laura Pacheco knew that terminating an employee because of the employee's disability is a violation of federal law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 113:** Admit that, at the time of Plaintiff's termination from Defendant, Anthony Brock was aware of a policy of Defendant that prohibited terminating an employee because of the employee's disability.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 114:** Admit that, at the time of Plaintiff's termination from Defendant, Anthony Brock knew that terminating an employee because of the employee's disability is a violation of Texas law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 115:** Admit that, at the time of Plaintiff's termination from Defendant, Anthony Brock knew that terminating an employee because of the employee's disability is a violation of federal law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 116:** Admit that, at the time of Plaintiff's termination from Defendant, Pete Latimer was aware of a policy of Defendant that prohibited terminating an employee because of the employee's disability.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 117:**  Admit that, at the time of Plaintiff's termination from Defendant, Pete Latimer knew that terminating an employee because of the employee's disability is a violation of Texas law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 118:**  Admit that, at the time of Plaintiff's termination from Defendant, Pete Latimer knew that terminating an employee because of the employee's disability is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 119:**  Admit that, at the time of Plaintiff's termination from Defendant, at least one person involved in the decision to terminate Plaintiff was aware of a policy of Defendant that prohibited terminating an employee because of the employee's disability.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 120:**  Admit that, at the time of Plaintiff's termination from Defendant, at least one person involved in the decision to terminate Plaintiff knew that terminating an employee because of the employee's disability is a violation of Texas law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 121:**  Admit that, at the time of Plaintiff's termination from Defendant, at least one person involved in the decision to terminate Plaintiff knew that terminating an employee because of the employee's disability is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 122:**  Admit that the Charge of Discrimination filed by Plaintiff is not the only complaint, inquiry, or charge filed with the Texas Workforce Commission alleging Desmond Piihl discriminated against an individual on the basis of disability while Piihl has been employed by Defendant.

**RESPONSE:**

**PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS TO DEFENDANT**                                    **PAGE 23**

**REQUEST FOR ADMISSION NO. 123:**   Admit that the Charge of Discrimination filed by Plaintiff is not the only complaint, inquiry, or charge filed with the U.S. Equal Employment Opportunity Commission alleging Desmond Piihl discriminated against an individual on the basis of disability while Piihl has been employed by Defendant.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 124:**   Admit that Desmond Piihl is aware of at least one complaint, inquiry, or charge filed with the Texas Workforce Commission prior to Piihl's employment with Defendant alleging Piihl discriminated against an individual on the basis of disability.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 125:**   Admit that Desmond Piihl is aware of at least one complaint, inquiry, or charge filed with the U.S. Equal Employment Opportunity Commission prior to Piihl's employment with Defendant alleging Piihl discriminated against an individual on the basis of disability.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 126:**   Admit that the Charge of Discrimination filed by Plaintiff is not the only complaint, inquiry, or charge filed with the Texas Workforce Commission alleging Laura Pacheco discriminated against an individual on the basis of disability while Pacheco has been employed by Defendant.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 127:**   Admit that the Charge of Discrimination filed by Plaintiff is not the only complaint, inquiry, or charge filed with the U.S. Equal Employment Opportunity Commission alleging Laura Pacheco discriminated against an individual on the basis of disability while Pacheco has been employed by Defendant.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 128:**  Admit that Laura Pacheco is aware of at least one complaint, inquiry, or charge filed with the Texas Workforce Commission prior to Pacheco's employment with Defendant alleging Pacheco discriminated against an individual on the basis of disability.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 129:**  Admit that Laura Pacheco is aware of at least one complaint, inquiry, or charge filed with the U.S. Equal Employment Opportunity Commission prior to Pacheco's employment with Defendant alleging Pacheco discriminated against an individual on the basis of disability.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 130:**  Admit that, at the time of Plaintiff's termination from Defendant, Desmond Piihl was aware of a policy of Defendant that prohibited terminating an employee in retaliation for filing a complaint of discrimination.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 131:**  Admit that, at the time of Plaintiff's termination from Defendant, Defendant had at least one policy or procedure referring to reasonably accommodating an employee's disability.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 132:**  Admit that, at the time of Plaintiff's termination from Defendant, Defendant had at least one policy or procedure requiring Defendant to reasonably accommodate an employee's disability.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 133:**  Admit that, at the time of Plaintiff's termination from Defendant, Desmond Piihl was aware of a policy of Defendant requiring Defendant to reasonably accommodate an employee's disability.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 134:**  Admit that, at the time of Plaintiff's termination from Defendant, Laura Pacheco was aware of a policy of Defendant requiring Defendant to reasonably accommodate an employee's disability.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 135:**  Admit that, at the time of Plaintiff's termination from Defendant, Anthony Brock was aware of a policy of Defendant requiring Defendant to reasonably accommodate an employee's disability.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 136:**  Admit that, at the time of Plaintiff's termination from Defendant, Pete Latimer was aware of a policy of Defendant requiring Defendant to reasonably accommodate an employee's disability.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 137:**  Admit that, at the time of Plaintiff's termination from Defendant, at least one person involved in the decision to terminate Plaintiff was aware of a policy of Defendant requiring Defendant to reasonably accommodate an employee's disability.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 138:**  Admit that, at the time of Plaintiff's termination from Defendant, Desmond Piihl knew that failing to reasonably accommodate an employee's disability is a violation of Texas law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 139:**  Admit that, at the time of Plaintiff's termination from Defendant, Laura Pacheco knew that failing to reasonably accommodate an employee's disability is a violation of Texas law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 140:**  Admit that, at the time of Plaintiff's termination from Defendant, Anthony Brock knew that failing to reasonably accommodate an employee's disability is a violation of Texas law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 141:** Admit that, at the time of Plaintiff's termination from Defendant, Pete Latimer knew that failing to reasonably accommodate an employee's disability is a violation of Texas law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 142:** Admit that, at the time of Plaintiff's termination from Defendant, at least one person involved in the decision to terminate Plaintiff knew that failing to reasonably accommodate an employee's disability is a violation of Texas law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 143:** Admit that, at the time of Plaintiff's termination from Defendant, Desmond Piihl knew that failing to reasonably accommodate an employee's disability is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 144:** Admit that, at the time of Plaintiff's termination from Defendant, Laura Pacheco knew that failing to reasonably accommodate an employee's disability is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 145:** Admit that, at the time of Plaintiff's termination from Defendant, Anthony Brock knew that failing to reasonably accommodate an employee's disability is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 146:** Admit that, at the time of Plaintiff's termination from Defendant, Pete Latimer knew that failing to reasonably accommodate an employee's disability is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 147:**  Admit that, at the time of Plaintiff's termination from Defendant, at least one person involved in the decision to terminate Plaintiff knew that failing to reasonably accommodate an employee's disability is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 148:**  Admit that Defendant would not have suffered an undue burden by fixing the air conditioning in Plaintiff's store.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 149:**  Admit that Defendant refused Plaintiff's reasonable accommodation.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 150:**  Admit that Defendant refused Plaintiff's reasonable accommodation by failing to fix the air conditioning in Plaintiff's store.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 151:**  Admit that the Charge of Discrimination filed by Plaintiff is not the only complaint, inquiry, or charge filed with the Texas Workforce Commission alleging Desmond Piihl failed to accommodate an employee's disability while Piihl has been employed by Defendant.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 152:**  Admit that the Charge of Discrimination filed by Plaintiff is not the only complaint, inquiry, or charge filed with the U.S. Equal Employment Opportunity Commission alleging Desmond Piihl failed to accommodate an employee's disability while Piihl has been employed by Defendant.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 153:**  Admit that Desmond Piihl is aware of at least one complaint, inquiry, or charge filed with the Texas Workforce Commission prior to Piihl's employment with Defendant alleging Piihl failed to accommodate an employee's disability.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 154:** Admit that Desmond Piihl is aware of at least one complaint, inquiry, or charge filed with the U.S. Equal Employment Opportunity Commission prior to Piihl's employment with Defendant alleging Piihl failed to accommodate an employee's disability.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 155:** Admit that, at the time of Plaintiff's termination from Defendant, Desmond Piihl knew that terminating an employee in retaliation for filing a complaint of discrimination is a violation of Texas law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 156:** Admit that, at the time of Plaintiff's termination from Defendant, Desmond Piihl knew that terminating an employee in retaliation for filing a complaint of discrimination is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 157:** Admit that, at the time of Plaintiff's termination from Defendant, Laura Pacheco was aware of a policy of Defendant that prohibited terminating an employee in retaliation for filing a complaint of discrimination.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 158:** Admit that, at the time of Plaintiff's termination from Defendant, Laura Pacheco knew that terminating an employee in retaliation for filing a complaint of discrimination is a violation of Texas law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 159:** Admit that, at the time of Plaintiff's termination from Defendant, Laura Pacheco knew that terminating an employee in retaliation for filing a complaint of discrimination is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 160:** Admit that, at the time of Plaintiff's termination from Defendant, Anthony Brock was aware of a policy of Defendant that prohibited terminating an employee in retaliation for filing a complaint of discrimination.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 161:** Admit that, at the time of Plaintiff's termination from Defendant, Anthony Brock knew that terminating an employee in retaliation for filing a complaint of discrimination is a violation of Texas law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 162:** Admit that, at the time of Plaintiff's termination from Defendant, Anthony Brock knew that terminating an employee in retaliation for filing a complaint of discrimination is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 163:** Admit that, at the time of Plaintiff's termination from Defendant, Pete Latimer was aware of a policy of Defendant that prohibited terminating an employee in retaliation for filing a complaint of discrimination.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 164:** Admit that, at the time of Plaintiff's termination from Defendant, Pete Latimer knew that terminating an employee in retaliation for filing a complaint of discrimination is a violation of Texas law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 165:** Admit that, at the time of Plaintiff's termination from Defendant, Pete Latimer knew that terminating an employee in retaliation for filing a complaint of discrimination is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 166:**  Admit that, at the time of Plaintiff's termination from Defendant, at least one person involved in the decision to terminate Plaintiff was aware of a policy of Defendant that prohibited terminating an employee in retaliation for filing a complaint of discrimination.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 167:**  Admit that, at the time of Plaintiff's termination from Defendant, at least one person involved in the decision to terminate Plaintiff knew that terminating an employee in retaliation for filing a complaint of discrimination is a violation of Texas law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 168:**  Admit that, at the time of Plaintiff's termination from Defendant, at least one person involved in the decision to terminate Plaintiff knew that terminating an employee in retaliation for filing a complaint of discrimination is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 169:**  Admit that the Charge of Discrimination filed by Plaintiff is not the only complaint, inquiry, or charge filed with the Texas Workforce Commission alleging Desmond Piihl retaliated against an individual for making a complaint of discrimination while Piihl has been an employee of Defendant.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 170:**  Admit that the Charge of Discrimination filed by Plaintiff is not the only complaint, inquiry, or charge filed with the U.S. Equal Employment Opportunity Commission alleging Desmond Piihl retaliated against an individual for making a complaint of discrimination while Piihl has been an employee of Defendant.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 171:**  Admit that Desmond Piihl is aware of at least one complaint, inquiry, or charge filed with the Texas Workforce Commission prior to Piihl's employment with Defendant alleging Piihl retaliated against an individual for making a complaint of discrimination.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 172:**  Admit that Desmond Piihl is aware of at least one complaint, inquiry, or charge filed with the U.S. Equal Employment Opportunity Commission prior to Piihl's employment with Defendant alleging Piihl retaliated against an individual for making a complaint of discrimination.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 173:**  Admit that the Charge of Discrimination filed by Plaintiff is not the only complaint, inquiry, or charge filed with the Texas Workforce Commission alleging Laura Pacheco retaliated against an individual for making a complaint of discrimination while Pacheco has been an employee of Defendant.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 174:**  Admit that the Charge of Discrimination filed by Plaintiff is not the only complaint, inquiry, or charge filed with the U.S. Equal Employment Opportunity Commission alleging Laura Pacheco retaliated against an individual for making a complaint of discrimination while Pacheco has been an employee of Defendant.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 175:**  Admit that Laura Pacheco is aware of at least one complaint, inquiry, or charge filed with the Texas Workforce Commission prior to Pacheco's employment with Defendant alleging Pacheco retaliated against an individual for making a complaint of discrimination.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 176:**  Admit that Laura Pacheco is aware of at least one complaint, inquiry, or charge filed with the U.S. Equal Employment Opportunity Commission

prior to Pacheco's employment with Defendant alleging Pacheco retaliated against an individual for making a complaint of discrimination.

     **RESPONSE:**


**REQUEST FOR ADMISSION NO. 177:**  Admit the allegations in Paragraph 12 of Plaintiff's Original Petition that Piihl criticized Plaintiff's walking.

     **RESPONSE:**


**REQUEST FOR ADMISSION NO. 178:**  Admit the allegations in Paragraph 12 of Plaintiff's Original Petition that Piihl criticized Plaintiff's walking at least once.

     **RESPONSE:**


**REQUEST FOR ADMISSION NO. 179:**  Admit the allegations in Paragraph 12 of Plaintiff's Original Petition that Piihl solicited feedback on Plaintiff's disability from Plaintiff's store associates.

     **RESPONSE:**


**REQUEST FOR ADMISSION NO. 180:**  Admit the allegations in Paragraph 12 of Plaintiff's Original Petition that Piihl solicited feedback on Plaintiff's disability from Plaintiff's store associates at least once.

     **RESPONSE:**


**REQUEST FOR ADMISSION NO. 181:**  Admit the allegations in Paragraph 15 of Plaintiff's Original Petition that Piihl agreed that point deductions on Plaintiff's failed audits were incorrect.

     **RESPONSE:**


**REQUEST FOR ADMISSION NO. 182:**  Admit the allegations in Paragraph 16 of Plaintiff's Original Petition that Defendant expected Plaintiff to lift items marked with a team lift sticker on his own.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 183:**   Admit the allegations in Paragraph 17 of Plaintiff's Original Petition that Plaintiff asked Pacheco what he was supposed to do with team lift items if there was no one available to help him.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 184:**   Admit the allegations in Paragraph 17 of Plaintiff's Original Petition that Pacheco told Plaintiff that a ladder counts as a second person.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 185:**   Admit the allegations in Paragraph 20 of Plaintiff's Original Petition that Plaintiff submitted a request to Piihl to fix the store's air conditioner.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 186:**   Admit the allegations in Paragraph 20 of Plaintiff's Original Petition that Plaintiff and Dr. Okuda submitted a request to Defendant's corporate office to fix the store's air conditioner.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 187:**   Admit the allegations in Paragraph 23 of Plaintiff's Original Petition that Piihl suggested Plaintiff terminate Wes Campbell.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 188:**   Admit the allegations in Paragraph 23 of Plaintiff's Original Petition that Piihl suggested Plaintiff terminate Ben Buchanan.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 189:**   Admit that Plaintiff was disabled at the time of his termination.

**PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS TO DEFENDANT**                                      **PAGE 34**

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 190:** Admit that Defendant terminated Plaintiff's employment because of his disability.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 191:** Admit that Plaintiff's disability was a motivating factor for Defendant's termination of Plaintiff's employment.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 192:** Admit that Defendant terminated Plaintiff's employment because he complained about discrimination.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 193:** Admit that Plaintiff's complaint about discrimination was a motivating factor for Defendant's termination of Plaintiff's employment.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 194:** Admit that Defendant terminated Plaintiff's employment because Plaintiff took medical leave.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 195:** Admit that Plaintiff's taking medical leave was a motivating factor for Defendant's termination of Plaintiff's employment.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 196:** Admit that a failed audit conducted on or about June 30, 2018 was a motivating factor for Defendant's termination of Plaintiff's employment.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 197:**  Admit that on June 30, 2018, Plaintiff was not present at his worksite.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 198:**  Admit that on June 30, 2018, Plaintiff was on medical leave.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 199:**  Admit that Plaintiff notified Defendant of his medical condition upon his hiring.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 200:**  Admit that Plaintiff notified Defendant of his disability upon his hiring.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 201:**  Admit that Plaintiff notified Defendant upon his hiring that Plaintiff has Multiple Sclerosis.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 202:**  Admit that Plaintiff notified Defendant upon his hiring that Plaintiff could not work more than 45 hours per week.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 203:**  Admit that Defendant has in its possession correspondence from Dr. Darin Okuda.

**RESPONSE:**

PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS TO DEFENDANT                                    PAGE 36

**REQUEST FOR ADMISSION NO. 204:**  Admit that Defendant has in its possession correspondence from Dr. Darin Okuda mentioning Plaintiff.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 205:**  Admit that Defendant has in its possession correspondence from Dr. Darin Okuda mentioning Plaintiff's accommodation requests.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 206:**  Admit that in the first week of June 2018, Plaintiff notified Defendant of the need for leave.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 207:**  Admit that in the first week of June 2018, Plaintiff notified Defendant of the need for leave due to a medical condition.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 208:**  Admit that in the first week of June 2018, Plaintiff notified Defendant of the need for leave to have surgery to treat symptoms of his disability.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 209:**  Admit that in the first week of June 2018, Plaintiff requested leave due to a medical condition.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 210:**  Admit that in the first week of June 2018, Plaintiff requested leave to have surgery to treat symptoms of his disability.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 211:**  Admit that in June 2018, Defendant approved Plaintiff's request for intermittent medical leave from June 22, 2018 through August 19, 2018.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 212:**  Admit that Plaintiff was on leave due to a medical condition starting on June 22, 2018.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 213:**  Admit that at the time of Plaintiff's termination, Desmond Piihl was not disabled.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 214:**  Admit that at the time of Plaintiff's termination, Laura Pacheco was not disabled.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 215:**  Admit that at the time of Plaintiff's termination, Anthony Brock was not disabled.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 216:**  Admit that at the time of Plaintiff's termination, Pete Latimer was not disabled.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 217:**  Admit that Defendant employed a person by the name of Wes Campbell.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 218:** Admit that on or after March 7, 2019, Defendant terminated Wes Campbell.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 219:** Admit that at the time of his termination from Defendant, Wes Campbell was disabled.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 220:** Admit that at the time of Wes Campbell's termination, Desmond Piihl was not disabled.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 221:** Admit that at the time of Wes Campbell's termination, Laura Pacheco was not disabled.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 222:** Admit that at the time of Wes Campbell's termination, Anthony Brock was not disabled.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 223:** Admit that at the time of Wes Campbell's termination, Pete Latimer was not disabled.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 224:** Admit that Defendant employed a person by the name of Ben Buchanan.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 225:**  Admit that on or after March 7, 2019, Defendant terminated Ben Buchanan.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 226:**  Admit that at the time of his termination from Defendant, Ben Buchanan was disabled.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 227:**  Admit that at the time of Ben Buchanan's termination, Desmond Piihl was not disabled.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 228:**  Admit that at the time of Ben Buchanan's termination, Laura Pacheco was not disabled.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 229:**  Admit that at the time of Ben Buchanan's termination, Anthony Brock was not disabled.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 230:**  Admit that at the time of Ben Buchanan's termination, Pete Latimer was not disabled.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 231:**  Admit that there are records relevant to Plaintiff that are in the possession of Defendant.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 232:** Admit that prior to responding to Plaintiff's First Request for Production, Defendant searched all documents in Defendant's possession, custody, or control that may contain information responsive to Plaintiff's First Request for Production.

> **RESPONSE:**

**REQUEST FOR ADMISSION NO. 233:** Admit that prior to responding to Plaintiff's First Request for Production, Defendant's search of emails in Defendant's possession, custody, or control included searching deleted emails.

> **RESPONSE:**

**REQUEST FOR ADMISSION NO. 234:** Admit that prior to responding to Plaintiff's First Request for Production, Defendant's search of emails in Defendant's possession, custody, or control included searching archived emails.

> **RESPONSE:**

**REQUEST FOR ADMISSION NO. 235:** Admit that Defendant or its attorneys consulted with Desmond Piihl with respect to responding to Plaintiff's First Request for Production.

> **RESPONSE:**

**REQUEST FOR ADMISSION NO. 236:** Admit that Defendant or its attorneys consulted with Laura Pacheco with respect to responding to Plaintiff's First Request for Production.

> **RESPONSE:**

**REQUEST FOR ADMISSION NO. 237:** Admit that Defendant or its attorneys consulted with Anthony Brock with respect to responding to Plaintiff's First Request for Production.

> **RESPONSE:**

**REQUEST FOR ADMISSION NO. 238:** Admit that Defendant or its attorneys consulted with Pete Latimer with respect to responding to Plaintiff's First Request for Production.

> **RESPONSE:**

PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS TO DEFENDANT                    PAGE 41

**REQUEST FOR ADMISSION NO. 239:**  Admit that Defendant or its attorneys consulted with Scot West with respect to responding to Plaintiff's First Request for Production.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 240:**  Admit that Defendant or its attorneys consulted with Wes Campbell with respect to responding to Plaintiff's First Request for Production.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 241:**  Admit that Defendant or its attorneys consulted with Ben Buchanan with respect to responding to Plaintiff's First Request for Production.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 242:**  Admit that Defendant or its attorneys consulted with Bernard Lacy with respect to responding to Plaintiff's First Request for Production.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 243:**  Admit that prior to responding to Plaintiff's First Request for Production, Defendant searched the emails of Desmond Piihl that are in Defendant's possession, custody, or control.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 244:**  Admit that prior to responding to Plaintiff's First Request for Production, Defendant searched the emails of Laura Pacheco that are in Defendant's possession, custody, or control.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 245:**  Admit that prior to responding to Plaintiff's First Request for Production, Defendant searched the emails of Anthony Brock that are in Defendant's possession, custody, or control.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 246:**  Admit that prior to responding to Plaintiff's First Request for Production, Defendant searched the emails of Pete Latimer that are in Defendant's possession, custody, or control.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 247:**  Admit that prior to responding to Plaintiff's First Request for Production, Defendant searched the emails of Scot West that are in Defendant's possession, custody, or control.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 248:**  Admit that prior to responding to Plaintiff's First Request for Production, Defendant searched the emails of Wes Campbell that are in Defendant's possession, custody, or control.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 249:**  Admit that prior to responding to Plaintiff's First Request for Production, Defendant searched the emails of Ben Buchanan that are in Defendant's possession, custody, or control.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 250:**  Admit that prior to responding to Plaintiff's First Request for Production, Defendant searched the emails of Bernard Lacy that are in Defendant's possession, custody, or control.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 251:**  Admit that Defendant or its attorneys consulted with Desmond Piihl with respect to responding to these Requests for Admission.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 252:** Admit that Defendant or its attorneys consulted with Laura Pacheco with respect to responding to these Requests for Admission.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 253:** Admit that Defendant or its attorneys consulted with Anthony Brock with respect to responding to these Requests for Admission.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 254:** Admit that Defendant or its attorneys consulted with Pete Latimer with respect to responding to these Requests for Admission.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 255:** Admit that Defendant or its attorneys consulted with Scot West with respect to responding to these Requests for Admission.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 256:** Admit that Defendant or its attorneys consulted with Wes Campbell with respect to responding to these Requests for Admission.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 257:** Admit that Defendant or its attorneys consulted with Ben Buchanan with respect to responding to these Requests for Admission.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 258:** Admit that Defendant or its attorneys consulted with Bernard Lacy with respect to responding to these Requests for Admission.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 259:** Admit that Defendant or its attorneys consulted with Desmond Piihl with respect to responding to Plaintiff's First Set of Interrogatories.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 260:** Admit that Defendant or its attorneys consulted with Laura Pacheco with respect to responding to Plaintiff's First Set of Interrogatories.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 261:** Admit that Defendant or its attorneys consulted with Anthony Brock with respect to responding to Plaintiff's First Set of Interrogatories.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 262:** Admit that Defendant or its attorneys consulted with Pete Latimer with respect to responding to Plaintiff's First Set of Interrogatories.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 263:** Admit that Defendant or its attorneys consulted with Scot West with respect to responding to Plaintiff's First Set of Interrogatories.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 264:** Admit that Defendant or its attorneys consulted with Wes Campbell with respect to responding to Plaintiff's First Set of Interrogatories.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 265:** Admit that Defendant or its attorneys consulted with Ben Buchanan with respect to responding to Plaintiff's First Set of Interrogatories.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 266:** Admit that Defendant or its attorneys consulted with Bernard Lacy with respect to responding to Plaintiff's First Set of Interrogatories.

**RESPONSE:**

**ELLIS COUNTY DISTRICT CLERK**                             **(972)825-5091**

**REQUEST FOR ISSUANCE – E-FILING OR PRO SE**

## CITATIONS, PRECEPTS, NOTICES, WRITS, TRO'S

**PLEASE USE OTHER REQUEST FORMS (FOUND ON OUR WEBSITE) FOR ANY OTHER TYPE OF ISSUANCE**

- This document MUST be filed as a separate LEAD document when e-filing.
- Issuance will NOT be done until this completed form is received.
- Choose the filing code "Request" (if able), then select the type of issuance under "Optional Services".
- If a service document is required, you MUST add the copy fees under "Optional Services" & enter the quantity of pages for each document to be served.

**CAUSE NUMBER:** _____

**TITLE OF DOCUMENT/S TO BE SERVED:** _____

**STYLE OF CASE:** _____

**PLEASE SELECT BELOW THE TYPE AND QUANTITY OF ISSUANCE/S NEEDED:**

| TYPE | COST | QUANTITY | TYPE | COST | QUANTITY |
|---|---|---|---|---|---|
| Citation | $8 | _____ | Writ: Execution | $8 | _____ |
| Precept / Notice | $8 | _____ | Writ: Commitment | $8 | _____ |
| Temp Restraining Order | $8 | _____ | Writ: Garnishment | $8 | _____ |
| Scire Facias | $8 | _____ | Writ: Sequestration | $8 | _____ |
| Writ: Attachment | $8 | _____ | Writ: Turnover | $8 | _____ |
| Writ: Possession | $8 | _____ | Writ: Other | $8 | _____ |

Requestor Name: _____

Requestor Phone No.:_____

E-Mail:_____

**(This e-mail address should be listed by you under "Service Contacts" in e-filing.)**

## All Issuance will be e-filed back to the e-mail address listed on page 1 unless otherwise indicated by choosing one of the following:

I am Pro Se and will pick up my issuance. **This option is ONLY available if Pro-Se.**

Service by Certified Mail – Please pay for service copy under "Optional Services".

I would like restricted certified mail:  Y        N

Service by Sheriff or Constable – Please pay for service copy under "Optional Services".

Sheriff        Const., Pct 1        Const., Pct 2        Const., Pct 3        Const., Pct 4

Posting – A Motion & Order are required. Please pay for a service copy under "Optional Services".

Publication – A Motion & Order are required. Which publication: _____

## Service Information:

**NAME OF PARTY TO BE SERVED**: _____ Type of Issuance: _____

Address for service (include registered agent of applicable):

_____

_____

_____

**NAME OF PARTY TO BE SERVED**: _____ Type of Issuance: _____

Address for service (include registered agent if applicable):

_____

_____

_____

**NAME OF PARTY TO BE SERVED**: _____ Type of Issuance: _____

Address for service (include registered agent if applicable):

_____

_____

_____

IF THERE ARE MORE PARTIES TO BE SERVED, PLEASE USE THE 2ND PAGE OF AN ADD'L REQUEST FORM. THANK YOU

### THE STATE OF TEXAS
### COUNTY OF ELLIS
<u>CAUSE NO: 103662</u>
## CITATION

**TO:**  **BIG LOTS STORES, INC.**
  **C/O CORPORATION SERVICE COMPANY D/B/A**
  **CSC-LAWYERS INCORPORATING SERVICE COMPANY, REGISTERED AGENT**
  **211 E. 7TH ST, STE 620**
  **AUSTIN, TX 78701**

DEFENDANT, in the hereinafter styled and numbered cause: 103662

You are hereby commanded to appear before 40TH JUDICIAL DISTRICT COURT of ELLIS COUNTY, TEXAS to be held at the courthouse of said county in the City of Waxahachie, County of Ellis County, Texas, by filing a written answer to the petition of Plaintiff at or before 10:00 A.M. of the Monday next after the expiration of 20 days after the date of service hereof, a copy of which accompanies this citation, in cause number **103662** styled

### MALONE, JONATHAN
### -VS-
### BIG LOTS STORES, INC.

Filed in said court on the 06/29/2020

The name and address of the attorney for plaintiff, or the address of the plaintiff is: JENNIFER J SPENCER , THREE FOREST PLAZA, 12221 MERIT DR, STE 160, DALLAS, TX 75251.

**NOTICE TO DEFENDANT**: "You have been sued. You may employ an attorney. If you or your attorneys do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of 20 days after you were served this citation and petition, a Default Judgment may be taken against you."

WITNESS: Melanie Reed, District Clerk of the District Court of Ellis County, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL OF SAID COURT AT COUNTY OF ELLIS, TEXAS, ON THIS THE 1st day of July, 2020.

**Melanie Reed, District Clerk**
**109 S. Jackson Street Rm. 209**
**Waxahachie, TX 75165**

**SEAL**

By _____
Mary Hinds, Deputy



## OFFICER'S RETURN - CAUSE # 103662

MALONE, JONATHAN               **IN THE 40TH JUDICIAL DISTRICT COURT**
-VS-                                             **OF**
**BIG LOTS STORES, INC.**                      **ELLIS COUNTY, TEXAS**

**NAME AND ADDRESS FOR SERVICE:**
BIG LOTS STORES, INC.
C/O CORPORATION SERVICE COMPANY D/B/A
CSC-LAWYERS INCORPORATING SERVICE COMPANY, REGISTERED AGENT
211 E. 7TH ST, STE 620
AUSTIN, TX 78701

Came to hand on the _____ day of _____, 20____, at _____, o'clock ____.m., and executed in _____ County, Texas by delivering to each of the within named defendants, in person, a true copy of this Citation with the date of delivery endorsed thereon, together with the accompanying copy of the PLAINTIFF'S ORIGINAL PETITION AND DISCOVERY REQUESTS, at the following times and places, to-wit:

| **Name** | **Date/Time** | **Place, Course and Distance from Courthouse** |
|---|---|---|
| | | |

And not executed as to the defendant(s), _____

The diligence used in finding said defendant(s) being: _____

and the cause or failure to execute this process is: _____

and the information received as to the whereabouts of said defendant(s) being: _____

**FEES:**
Serving Petition and Copy $_____          _____, Officer
Total               $_____          _____, County, Texas
                                  By:_____, Deputy

_____
Affiant

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**
In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The return must either be verified or be signed under penalty of perjury. A return signed under penalty of perjury must contain the statement below in substantially the following form:

"My name is _____, my date of birth is _____, and my address is
        (First, Middle, Last)
_____.
(Street, City, Zip)
I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.
Executed in _____County, State of _____, on the _____day of _____.

_____
Declarant/Authorized Process Server

_____
(Id # & expiration of certification)

**RETURN TO:**
Melanie Reed Ellis County District Clerk
109 S. Jackson Street Rm. 209
Waxahachie, TX 75165

                   STATE OF TEXAS    §
                   COUNTY OF ELLIS   §
                   SIGNED under oath before me on this _____day of
                   _____,20___.

                                        _____

**Cause No. 103662**

| | | |
|---|---|---|
| JONATHAN MALONE, | § | IN THE DISTRICT COURT |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | 40th JUDICIAL DISTRICT |
| | § | |
| BIG LOTS STORES, INC., and | § | |
| DESMOND PIIHL, individually, | § | |
| | § | |
| **Defendants.** | § | ELLIS COUNTY, TEXAS |

**PLAINTIFF'S AMENDED PETITION
AND DISCOVERY REQUESTS**

Plaintiff Jonathan Malone files this Amended Petition and Discovery Requests against Big Lots Stores, Inc. and Desmond Piihl, individually.  Plaintiff requests damages, interest, attorneys' fees, and costs for Defendants' unlawful acts.

**I.      DISCOVERY CONTROL PLAN**

1.      Plaintiff intends that discovery be conducted under Level 2 of Texas Rule of Civil Procedure 190.3.

2.      Pursuant to Texas Rule of Civil Procedure 47, Plaintiff seeks monetary relief over $200,000 but not more than $1,000,000.

**II.     PARTIES AND SERVICE**

3.      Plaintiff Jonathan Malone is a resident of Ellis County, Texas. At all times relevant, he was a resident of Ellis County, Texas.

4.      Defendant Big Lots Stores, Inc. ("Big Lots") is an Ohio corporation doing business nationwide, including owning and operating over 100 retail stores in Texas. Process may be served on Big Lots via its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, TX 78701-3218, or wherever it may be found.

**PLAINTIFF'S AMENDED PETITION AND DISCOVERY REQUESTS**                    **PAGE 1**

5.      Defendant Desmond Piihl ("Piihl") is an individual residing in Johnson County, Texas.   Process may be served on Piihl at 2720 Pinnacle Drive, Burleson, Texas 76028, or wherever he may be found.

## III.   VENUE & JURISDICTION

6.      Venue in Ellis County is proper under Tex. Civ. Prac. & Rem. Code §§ 15.002(a)(1) & 15.005 because all or a substantial part of the events or omissions that gave rise to this action occurred in Ellis County.

7.      Plaintiff filed a "Charge of Discrimination" on May 7, 2019, alleging disability discrimination and retaliation with the Texas Workforce Commission ("TWC"), which was dual-filed with the U.S. Equal Employment Opportunity Commission ("EEOC").   On May 22, 2020, the TWC issued its Notice of Dismissal and Right to File Civil Action (the "Right to Sue Letter") to Plaintiff.   This lawsuit is being filed within sixty (60) days of Plaintiff's receipt of the Right to Sue Letter.   Thus, all administrative prerequisites have been met or have expired.

8.      This controversy is within the jurisdictional limits of this Court.

## IV.   FACTUAL SUMMARY

9.      Big Lots employed Plaintiff at its place of business at 507 North Highway 77, Suite 300, Waxahachie, Texas, 75165, beginning in August 2015.

10.     Plaintiff lives with the disability of multiple sclerosis ("MS"), which substantially limits Plaintiff's major life activities, including walking, standing, and performing some manual tasks such as lifting. Despite his disability, Plaintiff functioned well in his job and never called in sick due to complications from MS, until he needed to have surgery in June 2018.

11.     Plaintiff's District Managers were aware of his disability upon his hiring, and early in his tenure, Plaintiff provided Big Lots with a note from his doctor stating that Plaintiff could not work more than 45 hours, five days per week because of his disability.

12.     In 2017, Big Lots hired Laura Pacheco as Loss Prevention Manager, and in March 2018, Desmond Piihl took over as Plaintiff's District Manager. When Plaintiff informed Pacheco and Piihl about his disability and doctor's restrictions, Pacheco and Piihl began questioning Malone on almost a daily basis about his MS and how it affected his walking and overall performance.

13.     Piihl frequently criticized Plaintiff's walking after noticing Plaintiff walked with a limp, and Piihl solicited feedback on Plaintiff's disability from Plaintiff's store associates.

14.     On June 22, 2018, Plaintiff took leave to have surgery on his back due to complications with his MS after Plaintiff's doctor, Dr. Darin Okuda, noticed an issue on Plaintiff's MRIs, which Dr. Okuda traced back to Plaintiff's frequent heavy lifting above his head while at work. Plaintiff told Dr. Okuda that Big Lots had no electric equipment available to lift heavy items off pallets or off trucks at his store.

15.     Dr. Okuda sent an accommodation request to Big Lots on Plaintiff's behalf, stating that Plaintiff was not to lift items above his head. Plaintiff subsequently underwent back surgery and was out on FMLA leave until August 19, 2018.

16.     When Plaintiff returned from FMLA leave, Piihl presented Plaintiff with a write-up for three failed LP audits. One of the failed audits occurred during Plaintiff's FMLA leave. When Plaintiff reminded Piihl that he had been out on FMLA during the audit, Piihl stated he "meant to write up" Plaintiff before Plaintiff's leave. Piihl also agreed with Plaintiff that several of the point deductions were incorrect, but Piihl refused to change the audit scores.

17.     When Plaintiff returned from back surgery, Big Lots made no accommodation to help Plaintiff lift heavy items, including those requiring two people to lift, despite Plaintiff's reasonable accommodation request and despite Big Lots' policy that all items marked with a team lift sticker required two people to handle the items.

18.     Plaintiff asked Pacheco what he was supposed to do with team lift items if there was no one available to help him. Pacheco stated to Plaintiff that a "ladder counts as the second person."

19.     On or about September 8, 2018, Plaintiff submitted a complaint to Big Lots' HR department because Piihl had issued a write-up to Plaintiff while Plaintiff was on medical leave.

20.     In mid-September 2018, the air conditioning failed in Plaintiff's store, causing the temperature to remain around 79 degrees, even after the issue had been fixed. The heat exacerbated Plaintiff's symptoms of his MS-related disabilities.

21.     On or about September 21, 2018, Plaintiff submitted a request to Piihl to fix the air conditioner. After Big Lots made no attempts to honor Plaintiff's request, Plaintiff submitted an official request to have the air conditioning fixed from Dr. Okuda to Piihl and Big Lots' corporate office on or about September 28, 2018.

22.     On or about September 30, 2018, Piihl visited Plaintiff's store and stated there was nothing he could do about the store feeling hot. Piihl stated to Plaintiff that Plaintiff should not expect the air conditioning to be fixed. Piihl then stated that the heat must not be affecting Plaintiff based on Plaintiff's gait. Big Lots made no attempts to honor Plaintiff's accommodation request, and the air conditioning was never fixed.

**PLAINTIFF'S AMENDED PETITION AND DISCOVERY REQUESTS**                    **PAGE 4**

23.     In October 2018, Piihl requested Plaintiff terminate two of his store associates because Piihl believed their own disabilities – diabetes and autism – would not allow them to perform their jobs.  Plaintiff refused to do so because the associates excelled at their jobs.

24.     Later in October 2018, Piihl and Pacheco issued a failed audit on Plaintiff store after specifically conspiring on how to falsely deduct points to make sure the audit failed.

25.     Plaintiff subsequently sent a complaint to HR detailing the misleading scoring on the audit and demonstrating how Pacheco had given incorrect deductions.

26.     Piihl subsequently presented Plaintiff with a write-up for another failed audit. When Plaintiff refused to sign the audit and stated that the grading was incorrect, Piihl told Plaintiff not to worry, because Piihl himself had "hundreds" of write-ups in his file, then commanded Plaintiff to sign the write-up.

27.     In December 2018, Plaintiff participated in a conference call with Pacheco, Piihl, and HR Manager Anthony Brock. Plaintiff complained about Pacheco's discriminatory scoring and provided detailed rebuttals to the discriminatory grading of the audits, then explained he had been away on medical leave during one of the audits. Brock dismissed Plaintiff's complaints and stated that the write-up would stand despite Plaintiff's complaints.

28.     In February 2019, Piihl informed Plaintiff that Big Lots released plans to begin remodeling all locations in March 2019. Piihl stated to Plaintiff that Big Lots would expect store managers to work 60 – 70 hours per week with a minimum of five-day work weeks. No discussion occurred regarding how Plaintiff's accommodation of working no more than 45 hours per week would continue to be honored.

29.     On March 7, 2019, Piihl and District Manager Pete Latimer terminated Plaintiff. Plaintiff's termination letter included a reference to a failed LP Audit from June 30, 2019 during Plaintiff's FMLA leave.

30.     The reasons stated to Plaintiff as the cause for his termination were false and mere pretext for terminating him for illegal reasons.

31.     Plaintiff was able to complete all of the essential functions of his job with or without accommodations.

32.     Moving heavy objects marked with two-person lift stickers was not an essential function of his job, but could have been performed with the reasonable accommodation of allowing another employee to assist Plaintiff when these tasks were needed. Big Lots would not have suffered an undue hardship to provide accommodations to Plaintiff on the rare occasions that he was needed to move an item with a two-person lift sticker.

33.     Big Lots failed to accommodate Plaintiff's reasonable accommodations of having a team member assist Plaintiff with heavy items and working in an environment with a temperature below 79 degrees.

34.     Big Lots terminated Plaintiff due to his disability, in retaliation for complaining about being discriminated against on the basis of disability, and in retaliation for exercising his rights under the FMLA.

35.     All conditions precedent have been met or have expired.

## V.     CAUSES OF ACTION

**COUNT ONE:       DISCRIMINATORY DISCHARGE IN VIOLATION OF THE THCRA AND THE ADA**

36.     Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

37.     Plaintiff has satisfied all jurisdictional prerequisites in connection with his claim under the Texas Commission on Human Rights Act, Tex. Lab. Code §§ 21.001 *et seq.* ("TCHRA") and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA").

38.     At all times relevant, Big Lots was an "employer" as defined by the TCHRA and the ADA.

39.     When Plaintiff worked for Big Lots, he was an "employee" as defined by the TCHRA and the ADA.

40.     Plaintiff was able to perform his essential duties with reasonable accommodations, but the reasonable accommodations were denied by Big Lots.

41.     Plaintiff's termination was on the basis of his disability in violation of the TCHRA and the ADA.

42.     Plaintiff's discharge was motivated by his disability in violation of the TCHRA, including by failing to reasonably accommodate Plaintiff's disability, having a record of disability, and/or being regarded as disabled such that Big Lots claimed Plaintiff was unable to perform the essential functions of his job with or without a reasonable accommodation.

43.     Plaintiff's termination was malicious or made with reckless indifference to his state-protected rights.

44.     As a direct and proximate consequence of Big Lots' violation, Plaintiff has suffered damages.

45.     Plaintiff's damages include lost wages, past and future mental anguish, inconvenience, and loss of enjoyment of life.

46.     Plaintiff seeks equitable relief, compensatory and exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs.

**COUNT TWO:       RETALIATORY DISCHARGE IN VIOLATION OF THE TCHRA AND THE ADA**

47.     Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

48.     Plaintiff has satisfied all jurisdictional prerequisites in connection with this claim under the TCHRA and ADA.

49.     Plaintiff complained to Big Lots that he was being discriminated against on the basis of his disabilities due to write-ups based on loss prevention audits that were purposefully lowered in order to issue a failing grade due to his disabilities and need for accommodations.

50.     Plaintiff was terminated because of his complaints of disability discrimination.

51.     Plaintiff's termination was malicious or made with reckless indifference to his state-protected rights.

52.     As a direct and proximate consequence of Big Lots' violation, Plaintiff has suffered damages.

53.     Plaintiff's damages include lost wages, past and future mental anguish, inconvenience, and loss of enjoyment of life.

54.     Plaintiff seeks equitable relief, compensatory and exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs.

**COUNT THREE:    FAILURE TO ACCOMMODATE IN VIOLATION OF THE TCHRA AND THE ADA**

55.     Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

56.     Plaintiff had a disability, within the meaning of the ADA and the TCHRA, at the time that Big Lots denied Plaintiff's reasonable accommodations of having another person help lift heavy objects and work in an air-conditioned environment cooler than 79 degrees.

57.     Plaintiff had a disability, within the meaning of the ADA and the TCHRA, at the time that Big Lots terminated Plaintiff in order to avoid fulfilling Plaintiff's reasonable accommodation request to work less than 45 hours per week.

58.     Plaintiff was able to perform the essential duties of his position within the reasonable accommodation of working 45 hours per week, having a team member help lift heavy objects, and work in an environment less than 79 degrees.

59.     Big Lots denied Plaintiff's requests for reasonable accommodations without engaging in an interactive process with him.

60.     Big Lots' actions as described above were malicious or made with reckless indifference to Plaintiff's protected rights.

61.     As a direct and proximate consequence of Big Lots' violation, Plaintiff has suffered damages.

62.     Plaintiff's damages include past and future lost wages, past and future lost medical healthcare benefits, past and future mental anguish, inconvenience, and loss of enjoyment of life.

63.     Plaintiff seeks damages, exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs.

**COUNT FOUR:       VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**

64.     Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

65.     At all times relevant, Big Lots was an "employer" of Plaintiff as defined by the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* (the "FMLA").

66.     When Plaintiff worked for Big Lots, he was an "eligible employee" as defined by the FMLA because Plaintiff was employed by Big Lots for over twelve months, he worked at least 1,250 hours over the twelve month period preceding his termination, and Big Lots

employed fifty or more employees at or within seventy-five miles of its location in Waxahachie, Texas, where Plaintiff worked and from which Plaintiff's work was assigned and to which he reported.

67.     At all times relevant, Piihl had the authority to fire Plaintiff, and he supervised and controlled the conditions of Plaintiff's employment with Big Lots, including with respect to his ability to take leave protected by the FMLA.  Piihl therefore acted directly and indirectly in the interest of Big Lots with respect to Plaintiff's employment, and thus Piihl, individually, was an "employer" with respect to Plaintiff pursuant to 29 U.S.C. § 2611(4)(A)(ii)(I).

68.     In June 2018, Plaintiff requested up to ten (10) weeks of leave protected by the FMLA following Plaintiff's surgery to alleviate the symptoms of his Multiple Sclerosis.

69.     After Plaintiff returned from leave in August 2018, Piihl, while acting on behalf of Big Lots, presented discriminatory write-ups to Plaintiff for failed audits, one of which took place during Plaintiff's medical leave. Big Lots and Piihl used these failed audits as pretextual reasons for Plaintiff's termination.

70.     Defendants' actions were in order to interfere with, restrain, deny, or retaliate against the exercise or the attempt to exercise Plaintiff's rights under the FMLA, and/or to discharge or discriminate against Plaintiff for opposing Defendants' retaliatory write-ups.

71.     As a direct and proximate consequence of Defendants' violation, Plaintiff has suffered damages.

72.     Plaintiff's damages include lost wages, salary, employment benefits, and other compensation.

73.     Plaintiff seeks damages, liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), pre- and post-judgment interest, such equitable relief as may be appropriate, attorneys' fees, expert witness fees, if any, and costs of court.

## VI.    DISCOVERY

74.     Pursuant to Tex. R. Civ. P. 194, Defendants Big Lots and Piihl are requested to disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

75.     Attached as Exhibit A is Plaintiff's First Request for Production of Documents to Big Lots.

76.     Attached as Exhibit B is Plaintiff's First Set of Interrogatories to Big Lots.

77.     Attached as Exhibit C is Plaintiff's First Request for Admissions to Big Lots.

## VII.   JURY DEMAND

78.     Plaintiff demands a jury trial and has tendered the appropriate fee.

## VIII.  PRAYER

WHEREFORE, Plaintiff respectfully requests that the Court:

A.      Issue citation for Defendants to appear and answer;

B.      Award to Plaintiff a judgment against Defendants for:

1.      Lost wages and benefits (both past and future), the sum to be determined at time of trial;

2.      Equitable relief as may be necessary and appropriate;

3.      Compensatory, liquidated, and exemplary damages in the maximum amount allowed by law;

4.      Pre- and post-judgment interest;

     5.       Attorneys' fees; and

     6.       Costs.

Plaintiff also requests that the Court award all other relief to which Plaintiff is entitled in equity and at law.

Respectfully Submitted,

*/s/ Jennifer J. Spencer*
Jennifer J. Spencer
Texas Bar No. 10474900
jspencer@jacksonspencerlaw.com
James E. Hunnicutt
Texas Bar No. 24054252
jhunnicutt@jacksonspencerlaw.com
Dimple A. Baca
Texas Bar No. 24060049
dbaca@jacksonspencerlaw.com
JACKSON SPENCER LAW PLLC
Three Forest Plaza
12221 Merit Drive, Suite 160
Dallas, Texas 75251
(972) 458-5301 (Telephone)
(972) 770-2156 (Fax)

**ATTORNEYS FOR PLAINTIFF**
**JONATHAN MALONE**

# EXHIBIT A

**Cause No. 103662**

| | | |
|---|---|---|
| **JONATHAN MALONE,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **40th JUDICIAL DISTRICT** |
| | § | |
| **BIG LOTS STORES, INC., and** | § | |
| **DESMOND PIIHL, individually,** | § | |
| | § | |
| **Defendants.** | § | **ELLIS COUNTY, TEXAS** |

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION**
**TO DEFENDANT BIG LOTS STORES, INC.**

TO:   Defendant Big Lots Stores, Inc. by and through its Registered Agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, TX 78701-3218.

Pursuant to the Texas Rules of Civil Procedure, Plaintiff Jonathan Malone propounds his First Request for Production to Defendant Big Lots Stores, Inc.. Your responses to the Requests are to be made in writing and are to be served, along with all responsive documents, upon counsel for Plaintiff within fifty (50) days of their service. Please refer to the Texas Rules of Civil Procedure for your duty to supplement your answers and the sanctions available should you fail to comply.

# EXHIBIT A

Respectfully Submitted,

_/s/ Jennifer J. Spencer_
Jennifer J. Spencer
Texas Bar No. 10474900
jspencer@jacksonspencerlaw.com
James E. Hunnicutt
Texas Bar No. 24054252
jhunnicutt@jacksonspencerlaw.com
Dimple A. Baca
Texas Bar No. 24060049
dbaca@jacksonspencerlaw.com
JACKSON SPENCER LAW PLLC
Three Forest Plaza
12221 Merit Drive, Suite 160
Dallas, Texas 75251
(972) 458-5301 (Telephone)
(972) 770-2156 (Fax)

**ATTORNEYS FOR PLAINTIFF
JONATHAN MALONE**

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing document was served by process server along with Plaintiff's Original Petition and Citation on the date identified by the process server in the return of service.

_/s/ Jennifer J. Spencer_
Jennifer J. Spencer

**DEFINITIONS**

1.      The word "Plaintiff" or "Malone" shall refer to Plaintiff Jonathan Malone.

2.      The words "Big Lots," "you," and "your" shall refer to Defendant Big Lots Stores, Inc. and its agents, employees, representatives, members, managers, officers, directors, partners, subsidiaries, affiliates, predecessors, and any other persons acting or purporting to act on their behalf, including any attorney or other representative, whether authorized or not.

3.      The words "Desmond Piihl" or "Piihl" shall refer to Defendant Desmond Piihl.

4.      "Document," "documents," and "documentation" as used herein, shall mean all writings - including ESI (as defined below) - of every kind, source, and authorship, both originals and all non-identical copies thereof, in your possession, custody or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity (inclusive of an entity's shareholders, owners, members, officers, agents, employees or representatives, or anyone acting for it or on its behalf), including without limitation any government agency, department, administrative, or private entity or person. The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information, storage, or retrieval systems, together with the codes and/or programming, instructions and other materials necessary to understand and use such systems. For purposes of illustration and not limitation, the terms shall include: affidavits; agendas; agreements; analyses; announcements; bill; statements; and other records of obligations and expenditures; books, brochures; bulletins; calendars; canceled checks, vouchers, receipts and other records of payments; charts, drawings; circulars; collateral files and contents; agreements;

correspondence; diaries; drafts; files; instructions; invoices; ledgers; journals; balance sheets; profit and loss statements; and other sources of financial data; letters, logs, notes, or memoranda of telephonic or face-to-face conversations; manuals; memoranda of all kinds, to and from any persons, agencies, or entities; minutes; minute books; notes; notices; parts lists; papers; press releases; printed matter (including published books, articles, speeches, and newspaper clippings); purchase orders; records; records of administrative, technical, and financial actions taken or recommended; reports, safety deposit boxes and contents and records of entry; schedules; security agreements; specifications; statements of bank accounts; statements, interviews; technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results, and conclusions; summaries, notes, and other records and recordings of any conference, meetings, visits, statements, interviews or telephone conversations; telegrams; teletypes and other communications sent or received; transcripts of testimony; Deed instruments; work papers; and all other writings, the contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested. Any written, printed, typed, recorded, or other graphic matter of any kind or nature, and all mechanical and electrical sound recordings and any transcripts, or formatted collection of data for business transaction purposes in the possession, custody, and/or control of your officers, directors, employees, servants, and agents, and counsel, or known by you to exist. All copies of documents by whatever means made, whether or not prepared by you, as well as all copies of documents by whatever means made, whether or not prepared by you.

     5.     As used herein, the term Electronically Stored Information ("ESI") means potentially relevant information electronically, magnetically, or optically stored as:

- Digital communication (e.g., email, voicemail, text (including SMS, MMS, and iMessage), instant messaging, and social media posts and direct messaging, including drafts of digital communications and deleted digital communications);

- Word processed documents (e.g., Word or WordPerfect documents and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application data (e.g., QuickBooks, Juris, Money data files);

- Image and Facsimile files (e.g., pdf, .tiff, .jpg, .gif images);

- Sound recordings (e.g., wav and .mp3 files);

- Video and animation (e.g., avi and .mov files);

- Databases (e.g., Access, Oracle SQL Server, SAP);

- Contact and relationship management data (e.g. Outlook, ACT!);

- Calendar and diary application data (e.g. Outlook PST, Yahoo, blog tools);

- Online access data (e.g., temporary internet files, history, cookies);

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network access and server activity logs;

- Project management application data;

- Computer aided design/drawing files; and

- Back-up and archival files (e.g., Zip, .gho)

- USB Flash drives

- Laptops

- Smart Phones

- Voicemails

- Web Based Emails (e.g., Yahoo, MSN, Mac, Gmail)

6.      The word "communication" shall include all forms of written documents, including emails, texts, deleted emails, and deleted texts, and shall also mean communication by any oral means, including by meeting, conversation, discussion, message or other occurrence transmitted between two or more persons orally.

7.      The word "identify" or "identity," when used with respect to an individual, means information sufficient to identify and locate the individual, including the full name, title, present residence and business address (if the present home and/or business address is not available, the last known home and/or business address should be provided), all business and/or personal email addresses personal utilized in the last two years, the name of the individual's present employer, and the individual's last known home, cell, and/or business telephone numbers, including the phone company providers.

8.      The word "identify" or "identity," when used with respect to a legal entity, means its name, type of organization (for example, corporation, partnership, joint venture, municipality or other entity), laws under which organized, address, telephone number of principal place of business, principal line of business, and website address.

9.      The word "identify" or "identity," when used with respect to a document, means to give, to the extent known, (i) the type of document, including whether it is an email or a text message, (ii) the general subject matter of the document, (iii) the date of the document, and (iv) the name and last known addresses and telephone numbers of the author(s), addressee(s), recipient(s), and last known custodian thereof. In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Tex. R. Civ. P. 196.

10.     The word "identify" or "identity," when used with respect to a communication, statement of material fact, representation or misrepresentation (hereinafter collectively referred to as "communications") means (a) with respect to oral communications, to state (1) the date of the communication, (2) the substance of the communication, (3) the person making the communication, (4) all persons present or who heard the communication, and (5) to identify all documents that relate to the communication; and (b) with respect to written communications, (1) to identify the communication in accordance with the Definition above for identifying documents, and (2) to identify all documents that relate to the communication.

11.     As used herein, the term "describe," when used in reference to an action, event or deed, means to state the date the event took place, the place the event occurred, the nature of the event, and to identify all persons involved in or witnessing the event.

12.     The term "person" is defined as any individual or legal entity, including, without limitation, any natural person, governmental entity, corporation, sole proprietorship, partnership, joint venture, firm, association, agency, board, authority, commission, trust, or other such entity.

13.     "Regarding" or "relating to" shall mean constituting in whole or in part, concerning, discussing, communicating about, pertaining to, connected with, containing or contained within, referring to, mentioning, supporting, evidencing, embodying, proving, indicating, or probative of the existence or nature thereof.

14.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

15.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

16.     The use of the singular form of any word includes the plural and vice versa.

## GENERAL INSTRUCTIONS

1.      The Requests for Production are intended to cover all documents or things that are in your possession, custody, or control. In accordance with Tex. R. Civ. P. 192.7, a document or thing is deemed to be in your possession, custody, or control if:

     a.   it is in your physical control; or

     b.   it is in the physical control of any other person or entity, and you, individually or otherwise:

          i.   own the document or thing in whole or in part;

          ii.  have a right by contract, statute, or otherwise, to use, inspect, examine, or copy that document or thing on any terms; or

          iii. have, as a practical matter, been able to use, inspect, examine, or copy that document or thing when you have sought to do so.

2.      Without limiting your obligations to search, identify, or produce documents or information responsive to the below requests, you are hereby instructed to include in your search for responsive documents and information, all documents for all persons employed or engaged or formerly employed or engaged by you who may likely have knowledge of relevant facts, including without limitation, the following custodians: Desmond Piihl, Laura Pacheco, Anthony Brock, Pete Latimer, and any other person who participated in any decision made to terminate Plaintiff.

3.      In accordance with Tex. R. Civ. P. 196.3, you are requested to produce documents as they are kept and organized in the usual course of business, or organize and label them to

correspond with the categories in the Request. You are further requested to identify the Bates numbers of documents that are responsive to the individual Requests.

4.      To the extent that you believe any of the following requests to be objectionable, enter so much of each and each part thereof that is not, in your view, objectionable.

5.      To the extent that you believe any of the following requests call for information or documents subject to a claim of privilege, enter so much of each request and each part thereof that did not request, in your view, allegedly privileged information that you refuse to give.

6.      If any documents or information sought herein is withheld on the basis of privilege or work product, or otherwise, you are requested to submit in lieu of any such information a written statement pursuant to Rule 193.3(b) of the Texas Rules of Civil Procedure no later than the day that these documents are produced that: (a) describes the documents or information withheld that, without revealing the privileged information itself or otherwise waiving the privilege, enables other parties to assess the applicability of the privilege; and (b) asserts a specific privilege for each item or group of items withheld.

7.      If any document or information is withheld on the basis of any claimed confidentiality or privacy right, you are requested to provide (1) a copy of any written agreement containing such confidentiality right, if applicable; (2) in your response to the Request, citation to the statutory or other legal authority under which the confidentiality or privacy right is asserted, if applicable; and (3) pursuant to Tex. R. Civ. P. 192.6, a proposed agreed protective order to govern the confidentiality of the documents or information withheld.

8.      These requests are continuing. If you learn that your response to a request was incomplete or incorrect when made or that, although it was complete and correct when made, it is no longer complete and correct, you must amend or supplement the response (1) to the extent

that the request seeks the identification of persons with knowledge of relevant facts, trial witnesses, or expert witnesses, and (2) to the extent that the request seeks other information, unless the additional or corrective information has been made known to the other parties in writing, on the record at a deposition, or through other discovery responses. If, after producing documents and ESI, you obtain or become aware of any further documents and ESI responsive to these requests, you are required to produce such additional documents and ESI.

9.    You must make amended or supplemental responses reasonably promptly after you discover the necessity for such an amendment or supplementation.

10.    The relevant time period is from January 1, 2017, to the present.

### PRODUCTION OF ELECTRONICALLY STORED INFORMATION

1.    Plaintiff hereby specifically requests production of ESI responsive to these requests according to the following protocol.

2.    ESI items shall be processed in a manner that preserves their existing time, date, and time-zone metadata (e.g., the email of a Document Custodian located in Texas will be processed as Central Time, while a custodian located in California will be processed as Pacific Time). If GMT time zone is used instead, you will provide the original time zone in which the custodian of the document received or authored the document, or if not available, the usual time zone of the custodian.

3.    ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, to the extent reasonably available, not the date of collection or processing.

4.    For all ESI produced, the following metadata fields shall be provided, to the extent such metadata exists:

| Field Name | Data Example | Field Description |
|---|---|---|
| BEGDOC | XYZ 00000178 | Bates number of first page. |
| ENDDOC | XYZ 00000178 | Bates number of last page. |
| BEGATT | XYZ 00000177 | Bates number of first page of attachment range. Blank if no attachments. |
| ENDATT | XYZ 00000179 | Bates number of last page of attachment range. Blank if no attachments. |
| ATTACHMENT | XYZ 00000178; XYZ 00000179 | Semicolon separated list of Bates number of first page of each attachment. |
| PARENTID | XYZ 00000177 | It refers to the main email body that the attachments belong to. Bates number of first page of parent. Only populated for attachments. |
| RECORDTYPE | Email | Possible values include Email (Email body), Attachment (Email Attachment), eDoc (Native file). |
| DATESENT | 04/15/2012 | Date email was sent in the format MM/DD/YYYY using local time zone provided. If no local time is provided, Universal Time (formerly GMT) is used. |
| TIMESENT | 02:45:22 PM | Time email was sent in the format HH:MM:SS XM using local time zone provided. If no local time is provided, Universal Time (formerly GMT) is used. |
| DATERECEIVED | 04/15/2012 | Date email was received in the format MM/DD/YYYY using local time zone provided. If no local time is provided, Universal Time (formerly GMT) is used. |
| TIMERECEIVED | 02:45:22 PM | Time email was received in the format HH:MM:SS XM using local time zone provided. If no local time is provided, Universal Time (formerly GMT) is used. |
| DATECREATED | 04/15/2012 | It will show the date that the native file is stored in the properties of the file, when it was first created. |
| TIMECREATED | 02:45:22 PM | Time native file was created in the format HH:MM:SS XM using local time zone provided. If no local time is provided, Universal Time (formerly GMT) is used. |
| DATEMODIFIED | 04/15/2012 | Date Last Modified for native files in the format MM/DD/YYYY using local time zone provided. If no local time is provided, Universal Time (formerly GMT) is used. |

| Field Name | Data Example | Field Description |
|---|---|---|
| TIMEMODIFIED | 02:45:22 PM | Time native file was modified in the format HH:MM:SS XM using local time zone provided. If no local time is provided, Universal Time (formerly GMT) is used. |
| LASTMODIFIEDBY | Alex Murphy | The name of the author who was the last person to make changes to the native file(s). |
| AUTHOR | Jacob Brown | Author for Native files. |
| FROM | Adam Brooks | Author for Native files. Sender for Emails. |
| TO | John Doe (jdoe@domain.com) | Semicolon separated list of Recipients for Email. The exact value depends on multiple factors including the email client address book. This includes name, email address, and/or Moniker. |
| CC | John Junior (jjunior@domain.com) | Semicolon separated list of Carbon Copy Recipients for Email. The exact value depends on multiple factors including the email client address book. This includes name, email address, and/or Moniker. |
| BCC | Sarah Smith (ssmith@domain.com) | Semicolon separated list of Blank Carbon Copy Recipients for Email. The exact value depends on multiple factors including the email client address book. This includes name, email address, and/or Moniker. |
| SUBJECT | Meeting time changed | Subject of the email. |
| FILENAME | Proposed Retainer - clean copy | Filename without extension of the native file. |
| FILEEXTENSION | .doc | File extension of native file. |
| VOLUME | PROD_IMG001 | Fixed. |
| ORIGINALSPATH | \ORIGINALS\001\XYZ 00000177.xlsx | Relative file path of Native files. |
| PAGES | 20 | Number of pages if file was converted to PDF or TIFF. |
| SOURCEFILEPATH | ORIGINALS\001\XYZ 00000177.xlsx | Relative file path of Native files. It refers to the Folder Path within Microsoft Outlook and keeping folders and subfolders information. |
| TEXTPATH | \TEXT\001\XYZ 00000177.TXT | Relative file path of Extracted / OCR text. |
| PDFPATH | \PDF\0001\TEST 0000001.pdf | Relative file path of PDF files. |

| Field Name | Data Example | Field Description |
|---|---|---|
| CUSTODIAN | Malta | Custodian associated with Original (native) file. |
| MD5 | C8054025235FBRA26E4BC242AEF543B6 | Incoming MD5 of Original (native) file. |

5.     You are only required to produce a single copy of a responsive document per custodian. You may de-duplicate stand-alone documents or entire document families using hash value matching (such as MD5 or SHA-1 values). ESI that is not an exact duplicate may not be removed. Partial email families may not be removed. Paper documents shall not be eliminated as duplicates of responsive ESI. If you elect to de-duplicate horizontally, all custodians who were in possession of a de-duplicated document must be identified in a metadata field as part of the loadfile or a subsequent overlay file.

6.     All documents to be produced will be converted to a paginated version as a PDF and/or TIFF images, as provided in this section:

a.   Produced PDFs will be in the form of one PDF file per document, multi-page as applicable. A PDF produced will not be encrypted or otherwise include settings to impair searchability, copying or print. Embedded images will not be reduced or below 300 dpi.

b.   TIFF images produced will be in the form of single-page Tagged Image File Format images and shall be saved and produced in the Group 4 compression single-page TIFF format. Each of the produced TIFF files will be accompanied with a corresponding text file containing extracted or OCR text.

c.   All produced PDFs and TIFFs generated from hard copy documents shall be scanned as 300 dpi resolution.

d.  All produced PDFs and TIFFs shall reflect to the extent practicable, without visual degradation, the full and complete information contained on the original document.

e.  A PDF or TIFF placeholder will be generated for any file that cannot be converted into a PDF or TIFF. In each case, a corresponding native document will be produced.

f.  Documents that contain color in a manner material to the meaning or understanding of the document, shall be produced in color. If a party is producing PDFs, then the produced PDF conversion settings will include settings that preserve color to the extent practicable. If a party is producing TIFFs, then the producing party shall also produce color PDFs for such TIFFs, or substitute color PNG or JPG images for TIFF images.

7.  Parent-child relationships (e.g., the association between emails and attachments) will be preserved. Email attachments will be consecutively produced with the parent email, and families associated using attachment range metadata as specified in section 3 above. If a scanned document is more than one page, the unitization of the document and any attachments shall be maintained as it existed in the original. For documents that contain affixed notes, the pages will be scanned both with and without the notes, and those pages will be treated as part of the same document. The relationship of documents in a document collection (e.g., cover letter and enclosures, email and attachments, binder containing multiple documents or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process. If more than one level of parent-child relationship exists, documents will be kept in order, but all will be treated as children of the initial parent document.

8.      All produced documents will include a legible, unique page identifier ("Bates Number") electronically embossed onto each page at a location that is reasonably intended to not obliterate, conceal or interfere with any information from the document. No other legend or stamp will be placed on the document other than a confidentiality legend (where applicable), redactions (consistent with any other protective orders or applicable law), any applicable protective orders and, if desired by a party, a document control number separate from the Bates Number. With respect to the identification of files produced in their native format, the parties shall identify each file produced using the Bates Number as the name, and link in the applicable loadfile. Bates Numbers must be unique across the entire document production, maintain a constant length (0-padded) across the entire production, contain no special characters or embedded spaces, and (4) be sequential within a given document. A Bates Number must not obscure any part of an underlying document. If the placement in the lower right-hand corner will result in obscuring the underlying document, the Bates Number should be placed as near to that position as possible while preserving the underlying document.

9.      Each produced PDF file will be named with the beginning Bates Number. Each produced TIFF image and corresponding text file shall be named with the unique Bates Number of the page of document. In the event the Bates Number contains a symbol and/or character that cannot be included in a file name, the symbol and/or character will be omitted from the file name.

10.     Your production of documents shall include load files that are compatible with commercially acceptable standards, including a 'Concordance DAT/OPT' load file and a 'Summation DII' load file, to accompany the produced documents. Each load file shall include

metadata and other information about the documents through a document management or litigation support database system, including the fields in section 3 above.

17.     Your production of documents shall include corresponding extracted text (for native files and/or optical character recognition ("OCR") text for TIFF or other images) files for all hard-copy documents and any electronic documents produced. For produced TIFFs, the OCR and extracted text files shall be produced in ASCII text format, and shall be included with the load files. These text files will be named with the unique Bates Number of the first page of the corresponding document followed by the extension ".txt." For produced PDFs, extracted or OCRed text shall be embedded in the PDF file in an accessible text layer. The OCR and extracted text files shall be produced in a manner suitable for importing the information into commercially available document management or litigation support software.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**    All documents supporting or concerning statements or allegations made in Big Lots' disclosures pursuant to Rule 194.2.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:**    All organizational charts for Big Lots from January 1, 2017, to the present showing the district in which Plaintiff worked for Big Lots and/or showing any of Laura Pacheco, Desmond Piihl, or Plaintiff.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:**    The complete personnel file and, regardless of whether such documents are located elsewhere than an official personnel file, the job application, offer letter, resume or CV, performance evaluations, write-ups, warnings, complaints, reprimands, and loss prevention audits of the following persons:

> a.  Plaintiff
> b.  Desmond Piihl
> c.  Laura Pacheco
> d.  Anthony Brock
> e.  Pete Latimer
> f.  Wes Campbell
> g.  Ben Buchanan
> h.  All store managers reporting to Desmond Piihl
> i.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:**    All job applications submitted to Big Lots by the following persons:

> a.  Plaintiff
> b.  Desmond Piihl
> c.  Laura Pacheco
> d.  Anthony Brock
> e.  Pete Latimer
> f.  Wes Campbell
> g.  Ben Buchanan
> h.  All store managers reporting to Desmond Piihl
> i.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5:**      All job descriptions for the following persons while employed by Big Lots:

     a.  Plaintiff
     b.  Desmond Piihl
     c.  Laura Pacheco
     d.  Anthony Brock
     e.  Pete Latimer
     f.  Wes Campbell
     g.  Ben Buchanan
     h.  All store managers reporting to Desmond Piihl
     i.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6:**      All performance reviews for the following persons:

     a.  Plaintiff
     b.  Desmond Piihl
     c.  Laura Pacheco
     d.  Anthony Brock
     e.  Pete Latimer
     f.  Wes Campbell
     g.  Ben Buchanan
     h.  All store managers reporting to Desmond Piihl
     i.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7:**      All write-ups, warnings, complaints, reprimands, and loss prevention audits provided to the following persons during employment with Big Lots:

     a.  Plaintiff
     b.  Desmond Piihl
     c.  Laura Pacheco
     d.  Anthony Brock
     e.  Pete Latimer
     f.  Wes Campbell

    g.  Ben Buchanan
    h.  All store managers reporting to Desmond Piihl
    i.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 8:**     All documents evidencing the following persons' compensation and benefits as an employee of Big Lots:
    a.  Plaintiff
    b.  Desmond Piihl
    c.  Laura Pacheco
    d.  Anthony Brock
    e.  Pete Latimer
    f.  Wes Campbell
    g.  Ben Buchanan
    h.  All store managers reporting to Desmond Piihl
    i.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 9:**     All documents evidencing the 401k, medical, dental, vision, pension, and retirement benefits of Plaintiff.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 10:**     All documents evidencing internal and external communications discussing or referring to job duties or compensation of each the following persons:
    a.  Plaintiff
    b.  Desmond Piihl
    c.  Laura Pacheco
    d.  Anthony Brock
    e.  Pete Latimer
    f.  Wes Campbell
    g.  Ben Buchanan
    h.  All store managers reporting to Desmond Piihl
    i.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 11:**      All documents from January 1, 2017, to December 31, 2019, evidencing any training (either internal or external) taken by, offered to, or certifications, licenses, or degrees held by, Plaintiff, in each case relevant to Plaintiff's job responsibilities.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 12:**      All documents concerning any complaints, formal or informal, made to Big Lots, including any made by any employee or agent of Big Lots, about Plaintiff, including any investigation notes or decision and the party to whom the complaint was made.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 13:**      Documents sufficient to identify the names and contact information of all persons with personal knowledge of any complaints, formal or informal, made to Big Lots, including any made by any employee or agent of Big Lots, about Plaintiff.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 14:**      All documents concerning any complaints, formal or informal, made by Plaintiff, both before and after his termination, to Big Lots, including any investigation notes or decision and the party to whom the complaint was made.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 15:**      Documents sufficient to identify the names and contact information of all persons with personal knowledge of any complaints, formal or informal, made by Plaintiff, both before and after his termination, to Big Lots.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 16:**      All documents referring to, reflecting, or mentioning complaints, formal or informal, including but not limited to disability discrimination, failure to accommodate an employee's disability, or FMLA retaliation made to Big Lots by any

employee or agent of Big Lots concerning the following persons, including any investigation notes or decision and the party to whom the complaint was made:

     a. Desmond Piihl
     b. Laura Pacheco
     c. Anthony Brock
     d. Pete Latimer
     e. Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17:**  Documents sufficient to identify names and contact information of all persons with personal knowledge of the complaints, formal or informal, including but not limited to disability discrimination, failure to accommodate an employee's disability, or FMLA retaliation made to Big Lots by any employee or agent of Big Lots concerning the following persons:

     a. Desmond Piihl
     b. Laura Pacheco
     c. Anthony Brock
     d. Pete Latimer
     e. Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 18:**  All documents referring to, reflecting, or mentioning the decision to write-up or otherwise discipline Plaintiff.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19:**  All documents referring to, reflecting, or mentioning the decision to terminate Plaintiff.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 20:**  All documents referring to, reflecting, or mentioning the decision to not fix Plaintiff's store's air conditioning in September or October 2018.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 21:**    Big Lots' employment policies and procedures that applied to Plaintiff's employment with Big Lots, including without limitation, employment manuals and progressive discipline.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 22:**    Big Lots' employment policies and procedures that applied to Plaintiff's employment with Big Lots including without limitation those mentioning:

       a.  disability discrimination
       b.  accommodating an employee's disability
       c.  FMLA retaliation.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 23:**    All documents evidencing communications between any of the following persons discussing, evidencing, or mentioning Plaintiff from January 1, 2017, to the present:

       a.  Desmond Piihl
       b.  Laura Pacheco
       c.  Anthony Brock
       d.  Pete Latimer
       e.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 24:**    All documents evidencing communications between any of the following persons and any other employee or agent of Big Lots discussing, evidencing, or mentioning Plaintiff from January 1, 2017, to the present:

       a.  Desmond Piihl
       b.  Laura Pacheco
       c.  Anthony Brock
       d.  Pete Latimer
       e.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 25:**   All documents evidencing communications between any of the following persons and any third party discussing, evidencing, or mentioning Plaintiff from January 1, 2017, to the present:

     a. Desmond Piihl
     b. Laura Pacheco
     c. Anthony Brock
     d. Pete Latimer
     e. Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

     **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 26:**   All documents evidencing communications between any of the following persons and Plaintiff from January 1, 2017, to the present:

     a. Desmond Piihl
     b. Laura Pacheco
     c. Anthony Brock
     d. Pete Latimer
     e. Wes Campbell
     f. Ben Buchanan
     g. Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

     **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 27:**   All documents evidencing communications between any of the following persons and any person, including any person listed below, discussing, evidencing, or mentioning Plaintiff from the time of Plaintiff's termination to the present.

     a. Desmond Piihl
     b. Laura Pacheco
     c. Anthony Brock
     d. Pete Latimer
     e. Wes Campbell
     f. Ben Buchanan
     g. Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

     **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 28:**   Documents evidencing communications, both internal and external, discussing, evidencing, or mentioning employment with Big Lots of the following persons, including each person's job duties and changes to those job duties:

    a.  Plaintiff
    b.  Desmond Piihl
    c.  Laura Pacheco
    d.  Anthony Brock
    e.  Pete Latimer
    f.  Wes Campbell
    g.  Ben Buchanan
    h.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 29:**     All documents discussing, evidencing, or mentioning the following persons' terminations, resignations, and end(s) of employment with Big Lots:

    a.  Desmond Piihl
    b.  Laura Pacheco
    c.  Anthony Brock
    d.  Pete Latimer
    e.  Wes Campbell
    f.  Ben Buchanan
    g.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 30:**     All documents discussing, evidencing, or mentioning the following persons, their workloads, their ability to work, and remodeling of the Store at which Plaintiff worked:

    a.  Plaintiff
    b.  Wes Campbell
    c.  Ben Buchanan.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 31:**     All documents concerning any complaints, formal or informal, made by the following persons against Big Lots, both during and after their employment with Big Lots, including any investigation notes or decision and the party to whom the complaint was made:

    a.  Wes Campbell
    b.  Ben Buchanan.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 32:**    Documents sufficient to identify the names and contact information of all persons with personal knowledge any complaints, formal or informal, made by the following persons against Big Lots, both during and after their employment with Big Lots, including any investigation notes or decision and the party to whom the complaint was made:

      a.  Wes Campbell
      b.  Ben Buchanan.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 33:**    For any person hired to perform the job responsibilities that formerly belonged to Plaintiff, produce:

      a.  any job description that applied to that person immediately before Plaintiff's termination
      b.  any new job description that applied to that person after Plaintiff's termination
      c.  any information discussing, evidencing, or mentioning compensation of that person
      d.  any information or documents referring to, reflecting, or mentioning compensation of that person after Plaintiff's termination
      e.  the qualifications of that person to perform the job responsibilities that formerly belonged to Plaintiff.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 34:**    For any person to whom the job responsibilities that formerly belonged to Plaintiff were transferred or given, produce:

      a.  any job description that applied to that person immediately before Plaintiff's termination
      b.  any new job description that applied to that person after Plaintiff's termination
      c.  any information discussing, evidencing, or mentioning compensation of that person
      d.  any information or documents referring to, reflecting, or mentioning compensation of that person after Plaintiff's termination
      e.  the qualifications of that person to perform the job responsibilities that formerly belonged to Plaintiff.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 35:**     All   diaries,   journals,   notes,   calendars, appointment books, compilations, summaries, or chronologies of events kept by any of the following persons referring to, reflecting, or mentioning Plaintiff:

     a. Desmond Piihl
     b. Laura Pacheco
     c. Anthony Brock
     d. Pete Latimer
     e. Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 36:**     Documents sufficient to identify all persons hired by the persons listed below from January 1, 2017 through the present, including documents sufficient to determine (a) their date of hire, (b) their disability status, (c) their job title, (d) their job duties, (e) the last date of their employment, and (f) any and all stated reasons for their termination:

     a. Desmond Piihl
     b. Laura Pacheco
     c. Anthony Brock
     d. Pete Latimer
     e. Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 37:**     Documents sufficient to identify all persons terminated by the persons listed below from January 1, 2017 through the present, including documents sufficient to determine (a) their date of hire, (b) their disability status, (c) their job title, (d) their job duties, (e) the last date of their employment, and (f) any and all stated reasons for their termination:

     a. Desmond Piihl
     b. Laura Pacheco
     c. Anthony Brock
     d. Pete Latimer
     e. Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5

     **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 38:**     Documents sufficient to identify all persons supervised by the persons listed below from January 1, 2017 to the present, including documents sufficient to determine (a) their date of hire, (b) their disability status, (c) their job title, (d) their

job duties, (e) the last date of their employment, and (f) any and all stated reasons for their termination:

     a.  Desmond Piihl

     b.  Laura Pacheco

     c.  Anthony Brock

     d.  Pete Latimer

     e.  Any other person identified in response to Plaintiff's Interrogatory Nos. 1, 4, or 5.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 39:**   All documents from January 1, 2017, to December 31, 2019, discussing, evidencing, or mentioning the disability status of Plaintiff, Plaintiff's accommodation requests, Plaintiff's medical leave, Plaintiff's Multiple Sclerosis, Plaintiff's doctor, and/or Plaintiff's medical condition.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 40:**   All documents supporting, refuting, or concerning the allegations that Plaintiff failed three loss prevention audits in Paragraph 15 of Plaintiff's Original Petition.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 41:**   Documents sufficient to identify the names and contact information of all persons with personal knowledge of the allegations that Plaintiff failed three loss prevention audits in Paragraph 15 of Plaintiff's Original Petition.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 42:**   All documents mentioning, evidencing, or concerning all loss prevention audits conducted at Plaintiff's store from January 1, 2017, through the present, including drafts of every audit and any changes made to said audits.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 43:**   Documents sufficient to identify the names and contact information of all persons with personal knowledge of the loss prevention audits conducted at Plaintiff's store from January 1, 2017, to through the present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 44:**    All documents concerning any communication identified or referenced in your answers to any and all interrogatories propounded by Plaintiff to Big Lots.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 45:**    All documents referring to, reflecting, or mentioning any communication identified in response to Plaintiff's Interrogatory Nos. 1, 2, 3, 4, 5, 6, and 7.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 46:**    All correspondence to and/or from the Department of Labor concerning Plaintiff.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 47:**    All policies and procedures that applied to Plaintiff's employment with Big Lots discussing, evidencing, or mentioning employee leave for a medical reason or related to a disability or medical condition.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 48:**    All documents discussing, evidencing, or mentioning Plaintiff's leave bank, including deductions made from Plaintiff's leave bank, the authorizing party who made the deductions, and any communications and/or documents sent to or received from Plaintiff discussing, evidencing, or mentioning Plaintiff's leave bank.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 49:**    Documents evidencing a complete record of changes made to Plaintiff's hours worked, including a record of the person that made the change and any communications and/or documents sent to or received from Plaintiff mentioning, discussing, or evidencing the changes in Plaintiff's hours worked.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 50:**     Documents evidencing a complete record of changes made to Plaintiff's scheduled hours, including a record of the person that made the change and any communications and/or documents sent to or received from Plaintiff mentioning, discussing, or evidencing the changes in Plaintiff's scheduled hours.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 51:**     All documents sent to or received from Plaintiff or his doctors discussing, evidencing, or mentioning Plaintiff's Multiple Sclerosis, disabilities, medical condition, medical treatment, ability to return to work, and/or restrictions on Plaintiff's return to work.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 52:**     All documents sent to or received from Plaintiff or his doctors discussing, evidencing, or mentioning any request by Plaintiff for leave for any reason.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 53:**     All documents sent to or received from Plaintiff or his doctors discussing, evidencing, or mentioning any request by Plaintiff for leave for a medical reason or related to a disability, medical condition, or medical treatment.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 54:**     All documents evidencing communications between or among any officers, employees, agents, or representatives of Big Lots discussing, evidencing, or mentioning Plaintiff's Multiple Sclerosis, disabilities, medical condition, medical treatment, ability to return to work, or restrictions on his return to work.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 55:**     All documents evidencing communications between or among any officers, employees, agents, or representatives of Big Lots discussing, evidencing, or mentioning any request by Plaintiff for leave for a medical reason or related to Plaintiff's Multiple Sclerosis, disability, medical condition, or medical treatment.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 56:**     All documents evidencing communications between or among any officers, employees, agents, or representatives of Big Lots and any third parties discussing, evidencing, or mentioning Plaintiff's Multiple Sclerosis, disabilities, medical condition, medical treatment, ability to return to work, or restrictions on Plaintiff's return to work.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 57:**     All documents evidencing communications between any officers, employees, agents, or representatives of Big Lots and any third parties referring to, reflecting, or mentioning any request by Plaintiff for leave for his Multiple Sclerosis, disabilities, medical condition, and/or medical treatment.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 58:**     All documents discussing, evidencing, or mentioning Plaintiff's schedule, time off, workload, and/or FMLA time.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 59:**     All contracts between Big Lots and any third party that has a role in disability- or medical-related leave requests and administration for Big Lots with respect to Plaintiff's employment with Big Lots.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 60:**     All policies and procedures that applied to Plaintiff's employment with Big Lots discussing, evidencing, or mentioning leave for employees for a medical reason or related to a disability or medical condition.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 61:**    All documents evidencing, discussing, or mentioning releases or notices received from Plaintiff's doctor, surgeon, or other healthcare professional.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 62:**    All documents referring to, reflecting, or mentioning any requests for reasonable accommodations, formal or informal, made by Plaintiff from January 1, 2017, to the present, including any related notes or decisions by Big Lots.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 63:**    All documents referring to, reflecting, or mentioning any requests for accommodations, formal or informal, made by Plaintiff from January 1, 2017 to the present, including any related notes or decisions by Big Lots.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 64:**    Documents sufficient to identify the names and contact information of all persons with personal knowledge of any requests for reasonable accommodations, formal or informal, made by Plaintiff from January 1, 2017, to the present.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 65:**    Documents sufficient to identify the names and contact information of all persons with personal knowledge of any requests for accommodations, formal or informal, made by Plaintiff from January 1, 2017, to the present.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 66:**    All documents discussing, evidencing, or mentioning Plaintiff's reasonable accommodation requests.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 67:**     All documents discussing, evidencing, or mentioning Plaintiff's accommodation requests.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 68:**     All documents discussing, evidencing, or mentioning Plaintiff and team lift items.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 69:**     All documents discussing, evidencing, or mentioning Plaintiff and air conditioning.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 70:**     All documents evidencing communications sent to or received from Plaintiff discussing, evidencing, or mentioning Plaintiff, his disability, Multiple Sclerosis, medical condition, medical leave, FMLA leave, disability leave, ability to return to work, fitness for duty, and restrictions on his return to work.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 71:**     All policies and procedures discussing, evidencing, or mentioning accommodations for Multiple Sclerosis, disability, injury/injuries, or any other medical condition(s) that applied to Plaintiff's employment.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 72:**     All policies and procedures discussing, evidencing, or mentioning accommodations discussed with or made available to Plaintiff with respect to Plaintiff's Multiple Sclerosis, disability, injury/injuries, or medical condition(s).

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 73:**     All policies and procedures discussing, evidencing, or mentioning accommodations available to employees with a disability, injury, or medical condition.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 74:**    All    policies    and    procedures    discussing, evidencing, or mentioning employees and medical leave.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 75:**    All notices provided to Plaintiff from Big Lots as required by the Family and Medical Leave Act with respect to medical leave taken by Plaintiff in 2018.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 76:**    All    documents    discussing,    referring    to,    or evidencing any application for leave under the Family and Medical Leave Act submitted by Plaintiff, the approval or denial of the same, and the reasons for any denial of the same.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 77:**    All    documents    utilized    to    provide    answers    to any and all interrogatories propounded by Plaintiff to Big Lots.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 78:**    All documents obtained from any third-parties, either informally, by subpoena and/or via depositions, upon written questions and related to this lawsuit.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 79:**    All    documents    that    you    believe    constitute evidence of any admission or statement against interest of Plaintiff.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 80:**     All documents supporting, refuting, discussing, or evidencing any after-acquired evidence of wrongdoing by Plaintiff that would have resulted in the termination of Plaintiff's employment.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 81:**     All documents supporting, refuting, discussing, or evidencing Plaintiff having failed to mitigate Plaintiff's damages.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 82:**     All documents supporting, refuting, discussing, or evidencing Plaintiff having failed to exhaust applicable administrative remedies.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 83:**     All documents and materials prepared by or for an expert used for consultation when that person's opinions or impressions have been reviewed, either in whole or in part, by an expert who may be called to testify in this case.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 84:**     The current resume and bibliography of any expert used for consultation when that person's opinions or impressions have been reviewed, either in whole or in part, by an expert who may be called to testify in this case.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 85:**     All bills, invoices, statements, or other requests for payment, together with all attachments and supporting documentation, reflecting charges for the time or service of any expert who you expect to call to testify at any trial of this matter.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 86:**     All contracts or other written agreements entered into by and between you and any expert who you expect to call to testify at any trial of this matter.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 87:**     All documents that Big Lots expects to use at trial or at any hearing in this matter.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 88:**     All documents Big Lots obtained from third parties by subpoena or informal request in connection with Plaintiff's claims in this lawsuit.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 89:**     All communications between Big Lots and any governmental entity, including without limitation, the Texas Workforce Commission and the Equal Employment Opportunity Commission discussing or mentioning Plaintiff.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 90:**     Big Lots' document preservation and ESI retention policies, if any.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 91:**     Documents sufficient to show Big Lots' net worth.

**RESPONSE:**

# EXHIBIT B

Cause No. 103662

| | | |
|---|---|---|
| **JONATHAN MALONE,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **40ᵗʰ JUDICIAL DISTRICT** |
| | § | |
| **BIG LOTS STORES, INC., and** | § | |
| **DESMOND PIIHL, individually,** | § | |
| | § | |
| **Defendants.** | § | **ELLIS COUNTY, TEXAS** |

<u>**PLAINTIFF'S FIRST SET OF INTERROGATORIES**
**TO DEFENDANT BIG LOTS STORES, INC.**</u>

TO:   Defendant Big Lots Stores, Inc., by and through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 East 7ᵗʰ Street, Suite 620, Austin, TX 78701-3218.

Pursuant to the Texas Rules of Civil Procedure, Plaintiff Jonathan Malone propounds his First Request for Production to Defendant Big Lots Stores, Inc. Your responses to the Requests are to be made in writing and are to be served, along with all responsive documents, upon counsel for Plaintiff within fifty (50) days of their service.  Please refer to the Texas Rules of Civil Procedure for your duty to supplement your answers and the sanctions available should you fail to comply.

# EXHIBIT B

Respectfully Submitted,

*/s/ Jennifer J. Spencer*

Jennifer J. Spencer
Texas Bar No. 10474900
jspencer@jacksonspencerlaw.com
James E. Hunnicutt
Texas Bar No. 24054252
jhunnicutt@jacksonspencerlaw.com
Dimple A. Baca
Texas Bar No. 24060049
dbaca@jacksonspencerlaw.com
JACKSON SPENCER LAW PLLC
Three Forest Plaza
12221 Merit Dr., Suite 160
Dallas, Texas 75251
(972) 458-5301 (Telephone)
(972) 770-2156 (Fax)

**ATTORNEYS FOR PLAINTIFF
JONATHAN MALONE**

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was served by process server along with Plaintiff's Original Petition and Citation on the date identified by the process server in the return of service.

*/s/  Jennifer J. Spencer*

Jennifer J. Spencer

## DEFINITIONS AND INSTRUCTIONS

1.      The word "Plaintiff" or "Malone" shall refer to Plaintiff Jonathan Malone.

2.      The words "Big Lots," "you," and "your" shall refer to Defendant Big Lots Stores, Inc., and its agents, employees, representatives, members, managers, officers, directors, partners, subsidiaries, affiliates, predecessors, and any other persons acting or purporting to act on their behalf, including any attorney or other representative, whether authorized or not.

3.      The words "Desmond Piihl" or "Piihl" shall refer to Defendant Desmond Piihl.

4.      "Document," "documents," and "documentation" as used herein, shall mean all writings - including ESI (as defined below) - of every kind, source, and authorship, both originals and all non-identical copies thereof, in your possession, custody or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity (inclusive of an entity's shareholders, owners, members, officers, agents, employees or representatives, or anyone acting for it or on its behalf), including without limitation any government agency, department, administrative, or private entity or person. The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information, storage, or retrieval systems, together with the codes and/or programming, instructions and other materials necessary to understand and use such systems. For purposes of illustration and not limitation, the terms shall include: affidavits; agendas; agreements; analyses; announcements; bill; statements; and other records of obligations and expenditures; books, brochures; bulletins; calendars; canceled checks, vouchers, receipts and other records of payments; charts, drawings; circulars; collateral files and contents; agreements; correspondence; diaries; drafts; files; instructions; invoices; ledgers; journals; balance sheets;

profit and loss statements; and other sources of financial data; letters, logs, notes, or memoranda of telephonic or face-to-face conversations; manuals; memoranda of all kinds, to and from any persons, agencies, or entities; minutes; minute books; notes; notices; parts lists; papers; press releases; printed matter (including published books, articles, speeches, and newspaper clippings); purchase orders; records; records of administrative, technical, and financial actions taken or recommended; reports, safety deposit boxes and contents and records of entry; schedules; security agreements; specifications; statements of bank accounts; statements, interviews; technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results, and conclusions; summaries, notes, and other records and recordings of any conference, meetings, visits, statements, interviews or telephone conversations; telegrams; teletypes and other communications sent or received; transcripts of testimony; Deed instruments; work papers; and all other writings, the contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested. Any written, printed, typed, recorded, or other graphic matter of any kind or nature, and all mechanical and electrical sound recordings and any transcripts, or formatted collection of data for business transaction purposes in the possession, custody, and/or control of your officers, directors, employees, servants, and agents, and counsel, or known by you to exist. All copies of documents by whatever means made, whether or not prepared by you, as well as all copies of documents by whatever means made, whether or not prepared by you.

     5.     As used herein, the term Electronically stored information ("ESI") means potentially relevant information electronically, magnetically, or optically stored as:

- Digital communication (e.g., email, voicemail, text (including SMS, MMS, and iMessage), instant messaging, and social media posts and direct messaging, including drafts of digital communications and deleted digital communications);

- Word processed documents (e.g., Word or WordPerfect documents and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application data (e.g., QuickBooks, Juris, Money data files);

- Image and Facsimile files (e.g., pdf, .tiff, .jpg, .gif images);

- Sound recordings (e.g., wav and .mp3 files);

- Video and animation (e.g., avi and .mov files);

- Databases (e.g., Access, Oracle SQL Server, SAP);

- Contact and relationship management data (e.g. Outlook, ACT!);

- Calendar and diary application data (e.g. Outlook PST, Yahoo, blog tools);

- Online access data (e.g., temporary internet files, history, cookies);

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network access and server activity logs;

- Project management application data;

- Computer aided design/drawing files; and

- Back-up and archival files (e.g., Zip, .gho)

- USB Flash drives

- Laptops

- Smart Phones

- Voicemails

- Web Based Emails (e.g., Yahoo, MSN, Mac, Gmail)

6.     The word "communication" shall include all forms of written documents, including emails, texts, deleted emails, and deleted texts, and shall also mean communication by any oral means, including by meeting, conversation, discussion, message or other occurrence transmitted between two or more persons orally.

7.     The word "identify" or "identity," when used with respect to an individual, means information sufficient to identify and locate the individual, including the full name, title, present residence and business address (if the present home and/or business address is not available, the last known home and/or business address should be provided), all business and/or personal email addresses personal utilized in the last two years, the name of the individual's present employer, and the individual's last known home, cell, and/or business telephone numbers, including the phone company providers.

8.     The word "identify" or "identity," when used with respect to a legal entity, means its name, type of organization (for example, corporation, partnership, joint venture, municipality or other entity), laws under which organized, address, telephone number of principal place of business, principal line of business, and website address.

9.     The word "identify" or "identity," when used with respect to a document, means to give, to the extent known, (i) the type of document, including whether it is an email or a text message, (ii) the general subject matter of the document, (iii) the date of the document, and (iv) the name and last known addresses and telephone numbers of the author(s), addressee(s), recipient(s), and last known custodian thereof.  In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Tex. R. Civ. P. 196.

10.     The word "identify" or "identity," when used with respect to a communication, statement of material fact, representation or misrepresentation (hereinafter collectively referred to as "communications") means to state whether the communication was oral or written and (a) with respect to oral communications, (1) to provide the date of the communication, (2) to state the substance of the communication, (3) to state whether the communication was made by telephone, other audiovisual means of transmission (e.g., Face Time or Skype), or in person, (3) to identify the person making the communication, (4) to identify each person party to or who heard the communication, and (5) to identify all documents that relate to the communication; and (b) with respect to written communications, (1) to identify the communication in accordance with the Definition above for identifying documents, and (2) to identify all documents that relate to the communication.

11.     As used herein, the term "describe," when used in reference to an action, event or deed, means to state the date the event took place, the place the event occurred, the nature of the event, and to identify all persons involved in or witnessing the event.

12.     The term "person" is defined as any individual or legal entity, including, without limitation, any natural person, governmental entity, corporation, sole proprietorship, partnership, joint venture, firm, association, agency, board, authority, commission, trust, or other such entity.

13.     "Regarding" or "relating to" shall mean constituting in whole or in part, concerning, discussing, communicating about, pertaining to, connected with, containing or contained within, referring to, mentioning, supporting, evidencing, embodying, proving, indicating, or probative of the existence or nature thereof.

14.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

15.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

16.     The use of the singular form of any word includes the plural and vice versa.

## GENERAL INSTRUCTIONS

1.     Where an Interrogatory requests that you identify documents, the request is intended to cover all documents or things that are in your possession, custody, or control.  In accordance with Tex. R. Civ. P. 192.7, a document or thing is deemed to be in your possession, custody, or control if:

  a. it is in your physical control; or

  b. it is in the physical control of any other person or entity, and you, individually or otherwise:

    i.  own the document or thing in whole or in part;

    ii. have a right by contract, statute, or otherwise, to use, inspect, examine, or copy that document or thing on any terms; or

    iii. have, as a practical matter, been able to use, inspect, examine, or copy that document or thing when you have sought to do so.

2.     Without limiting your obligations to search, identify, or produce documents or information responsive to the below requests, you are hereby instructed to include in your search for responsive documents and information, all documents for all persons employed or formerly employed by you who may likely have knowledge of relevant facts, including without limitation,

the following custodians: Desmond Piihl, Laura Pacheco, Anthony Brock, Pete Latimer, and any other person who participated in any decision made to terminate Plaintiff.

3.      If you opt to answer an Interrogatory by referring to documents or ESI pursuant to Tex. R. Civ. P. 197.2(c), then you are requested to produce the documents or ESI in accordance with Tex. R. Civ. P. 196.3, by producing them as they are kept and organized in the usual course of business, or organize and label them to correspond with the categories in the Interrogatory. You are further requested to identify the Bates numbers of documents that are responsive to the individual Interrogatories.   You are further requested to produce the documents and ESI according to the protocol described in the "Production of Documents and Electronically Stored Information" contained in Plaintiff's First Request for Production to Defendant.

4.      To the extent that you believe any of the following requests to be objectionable, enter so much of each and each part thereof that is not, in your view, objectionable.

5.      To the extent that you believe any of the following requests call for information or documents subject to a claim of privilege, enter so much of each request and each part thereof that did not request, in your view, allegedly privileged information that you refuse to give.

6.      If any documents or information sought herein is withheld on the basis of privilege or work product, or otherwise, you are requested to submit in lieu of any such information a written statement pursuant to Rule 193.3(b) of the Texas Rules of Civil Procedure no later than the day that these documents are produced that:  (a) describes the documents or information withheld that, without revealing the privileged information itself or otherwise waiving the privilege, enables other parties to assess the applicability of the privilege; and (b) asserts a specific privilege for each item or group of items withheld.

7.      If any document or information is withheld on the basis of any claimed confidentiality or privacy right, you are requested to provide (1) a copy of any written agreement containing such confidentiality right, if applicable; (2) in your response to the Request, citation to the statutory or other legal authority under which the confidentiality or privacy right is asserted, if applicable; and (3) pursuant to Tex. R. Civ. P. 192.6, a proposed agreed protective order to govern the confidentiality of the documents or information withheld.

8.      These requests are continuing.  If you learn that your answer to an Interrogatory was incomplete or incorrect when made or that, although it was complete and correct when made, it is no longer complete and correct, you must amend or supplement the answer (1) to the extent that the Interrogatory seeks the identification of persons with knowledge of relevant facts, trial witnesses, or expert witnesses, and (2) to the extent that the Interrogatory seeks other information, unless the additional or corrective information has been made known to the other parties in writing, on the record at a deposition, or through other discovery responses.  If, after answering any Interrogatory, you obtain or become aware of any further information, documents, or ESI responsive to these requests, you are required to amend or supplement your answer and produce such additional documents and ESI.

9.      You must make amended or supplemental answers reasonably promptly after you discover the necessity for such an amendment or supplementation.

10.      The relevant time period is from January 1, 2017, to the present.

## FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1:**        Identify each person who participated in any way in Big Lots' decision to terminate Plaintiff and describe the person's involvement therein, the person's titles and job responsibilities during their employment with Big Lots and the dates the person held each job title.

        **ANSWER:**


**INTERROGATORY NO. 2:**        Describe the process and procedures Big Lots undertook to determine whether Plaintiff should be terminated and state the dates on which each activity occurred.

        **ANSWER:**


**INTERROGATORY NO. 3:**        State with specificity all reasons communicated to Plaintiff that Plaintiff's employment was terminated, including by identifying, for each reason communicated to Plaintiff, (a) the date the reason was provided to Plaintiff, (b) the person who communicated the reason to Plaintiff, and (c) all persons who witnessed or who were party to or copied on the communication.

        **ANSWER:**


**INTERROGATORY NO. 4:**        Identify each person who participated in any way in any investigation into complaints of disability discrimination, failure to accommodate an employee's disability, or FMLA retaliation made by Plaintiff to any employee of Big Lots and describe the person's involvement therein, including by stating the person's titles during their employment with Big Lots and whether or not the person is a current employee of Big Lots.

        **ANSWER:**


**INTERROGATORY NO. 5:**        Identify each person who participated in any way in Big Lots' decision to not provide accommodations to Plaintiff and describe the person's involvement therein, the person's disability status, and the person's titles and job responsibilities during their employment with Big Lots and the dates the person held each job title.

        **ANSWER:**


**INTERROGATORY NO. 6:**        Describe the process and procedures Big Lots undertook to determine whether to provide accommodations to Plaintiff and state the dates on which each activity occurred.

**ANSWER:**

**INTERROGATORY NO. 7:**        State with specificity all reasons communicated to Plaintiff that Plaintiff's accommodations were not provided, including by identifying, for each reason communicated to Plaintiff, (a) the date the reason was provided to Plaintiff, (b) the person who communicated the reason to Plaintiff, and (c) all persons who witnessed or who were party to or copied on the communication.

**ANSWER:**

**INTERROGATORY NO. 8:**        Identify all employees hired, placed, or reassigned by Big Lots, since Plaintiff's termination, in the position last held by Plaintiff or who is doing any of the job-related activities previously performed by Plaintiff, including by stating the person's disability status, and the person's titles and job responsibilities during their employment with Big Lots, the dates during which the person held each job title or job responsibility and whether the person is a current employee of Big Lots.

**ANSWER:**

**INTERROGATORY NO. 9:**        Identify all employees of Big Lots, from January 1, 2017, to the present, at the same level as Plaintiff who reported to the same District Managers as Plaintiff, and above the position last held by Plaintiff in the chain of command within Big Lots, up to Big Lots' chief executive(s), including by stating the person's disability status, and the person's titles during their employment with Big Lots and the dates the person had each job title.

**ANSWER:**

**INTERROGATORY NO. 10:**        Identify all employees of Big Lots, from January 1, 2017, to the present, at the same level as Plaintiff who reported to the same District Managers as Plaintiff who are disabled, including by stating the person's disability status, and the person's titles during their employment with Big Lots, the dates during which the person held each job title and whether each such person is currently employed by Big Lots.

**ANSWER:**

**INTERROGATORY NO. 11:**        Identify all lawsuits and administrative proceedings, including by stating the case or cause number and stating the jurisdiction or tribunal in which it was filed, that have been filed against Big Lots from 2013 to the present in which an allegation was made of disability discrimination, failure to accommodate an employee's disability, or

FMLA retaliation against Desmond Piihl, Laura Pacheco, Anthony Brock, Pete Latimer, or any person identified in response to Interrogatory No. 1 and Interrogatory No. 5.

      **ANSWER:**

**INTERROGATORY NO. 12:**    Identify all complaints, accusations, or allegations of disability discrimination, failure to accommodate an employee's disability, or FMLA retaliation against Desmond Piihl, Laura Pacheco, Anthony Brock, Pete Latimer, or any person identified in response to Interrogatory No. 1 and Interrogatory No. 5 from 2013 to the present, including by identifying all persons involved in each complaint, accusation, or allegation.

      **ANSWER:**

**INTERROGATORY NO. 13:**    State all certifications, licenses, or degrees required by Big Lots for the position held by Plaintiff at the time of his termination, including by stating which such certification, license, or degree You contend Plaintiff did not possess at the time of his termination.

      **ANSWER:**

**INTERROGATORY NO. 14:**  State all shareholders, owners, members, officers, agents, employees, or representatives of Big Lots, or anyone acting for it or on its behalf, who communicated with any of Plaintiff's doctor(s), surgeon(s), or other medical and healthcare professional(s) regarding Plaintiff.

      **ANSWER:**

**INTERROGATORY NO. 15:**    Identify each person with whom you have consulted in this case on expert or specialized matters, and whom you do not expect to be called as a witness at trial (a "consulting expert") if the consulting expert's opinions or impressions have been reviewed by or discussed with any testifying expert. For each such consulting expert identified, state in detail the subject matter of his or her consultation, the mental impressions and opinions held by the consulting expert, and the facts known to the consulting expert (regardless of when the factual information was acquired) which relate to or form the basis of the mental impressions and opinions held by the consulting expert.

      **ANSWER:**

**INTERROGATORY NO. 16:**  Identify each person whom you expect to call as an expert witness at trial and, for each such expert identified, state in detail the subject on which the expert

will testify, the general substance of the expert's mental impressions and opinions, a brief summary of the basis therefor, the expert's qualifications to testify, and the identity of persons whose opinions or impressions have been reviewed by or discussed with the expert.

**ANSWER:**

**INTERROGATORY NO. 17:**     State the last known address, telephone number(s) and personal or forwarding email address for each of the following who is no longer a current employee of Big Lots: Desmond Piihl, Laura Pacheco, Anthony Brock, Pete Latimer, Ben Buchanan, Wes Campbell, Scot West, Bernard Lacy, and any other person identified in Interrogatory Nos. 1 or 5.

**ANSWER:**

**INTERROGATORY NO. 18:**     If any document concerning Plaintiffs' claims and/or your defenses in this lawsuit is no longer in your possession, custody, or control, or has been lost, misplaced, or destroyed, identify each such document and briefly describe why each document is no longer in your possession, custody, or control and/or how, when, and by whom it was lost, misplaced, or destroyed.

**ANSWER:**

# EXHIBIT C

Cause No. 103662

| | | |
|---|---|---|
| **JONATHAN MALONE,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **40th JUDICIAL DISTRICT** |
| | § | |
| **BIG LOTS STORES, INC., and** | § | |
| **DESMOND PIIHL, individually,** | § | |
| | § | |
| **Defendants.** | § | **ELLIS COUNTY, TEXAS** |

<u>**PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS**</u>
<u>**TO DEFENDANT BIG LOTS STORES, INC.**</u>

TO:   Defendant Big Lots Stores, Inc. by and through its Registered Agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, TX 78701-3218.

Pursuant to the Texas Rules of Civil Procedure, Plaintiff Jonathan Malone propounds his First Request for Admissions to Defendant Big Lots Stores, Inc. Your responses to the Requests are to be made in writing and are to be served upon counsel for Plaintiff within fifty (50) days of their service.  Please refer to the Texas Rules of Civil Procedure for your duty to supplement your responses and the sanctions available should you fail to comply.

# EXHIBIT C

Respectfully Submitted,

 /s/ Jennifer J. Spencer
Jennifer J. Spencer
Texas Bar No. 10474900
jspencer@jacksonspencerlaw.com
James E. Hunnicutt
Texas Bar No. 24054252
jhunnicutt@jacksonspencerlaw.com
Dimple A. Baca
Texas Bar No. 24060049
dbaca@jacksonspencerlaw.com
JACKSON SPENCER LAW PLLC
Three Forest Plaza
12221 Merit Drive, Suite 160
Dallas, Texas 75251
(972) 458-5301 (Telephone)
(972) 770-2156 (Fax)

**ATTORNEYS FOR PLAINTIFF
JONATHAN MALONE**

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was served by process server along with Plaintiff's Original Petition and Citation on the date identified by the process server in the return of service.

/s/  Jennifer J. Spencer
Jennifer J. Spencer

## DEFINITIONS

1.       The words "Plaintiff" or "Malone" shall refer to Plaintiff Jonathan Malone.

2.       The words "Big Lots," "you," and "your" shall refer to Defendant Big Lots Stores, Inc. and its agents, employees, representatives, members, managers, officers, directors, partners, subsidiaries, affiliates, predecessors, and any other persons acting or purporting to act on their behalf, including any attorney or other representative, whether authorized or not.

3.       The words "Desmond Piihl" or "Piihl" shall refer to Defendant Desmond Piihl.

4.       The term "person" is defined as any individual or legal entity, including, without limitation, any natural person, governmental entity, corporation, sole proprietorship, partnership, joint venture, firm, association, agency, board, authority, commission, trust, or other such entity.

5.       The terms "all," "any," and "each" shall each be construed as encompassing any and all.

6.       The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

7.       The use of the singular form of any word includes the plural and vice versa.

## GENERAL INSTRUCTIONS

1.       Pursuant to Tex. R. Civ. P. 198.2(b), lack of information or knowledge is not a proper response to a Request for Admission unless you state that a reasonable inquiry was made but that the information known or easily obtainable is insufficient to enable you to admit or deny the Request.

2.      The Requests for Admission are intended to cover all information obtainable from documents or things that are in your possession, custody, or control.  In accordance with Tex. R. Civ. P. 192.7, a document or thing is deemed to be in your possession, custody, or control if:

    a.   it is in your physical control; or

    b.   it is in the physical control of any other person or entity, and you, individually or otherwise:

        i.   own the document or thing in whole or in part;

        ii.   have a right by contract, statute, or otherwise, to use, inspect, examine, or copy that document or thing on any terms; or

        iii.   have, as a practical matter, been able to use, inspect, examine, or copy that document or thing when you have sought to do so.

3.      Without limiting your obligations to reasonably inquire for knowledge or information sufficient to admit or deny each Request, you are hereby instructed to include in your inquiry all persons employed or formerly employed by you who may likely have knowledge of relevant facts, including without limitation, the following persons: Desmond Piihl, Laura Pacheco, Anthony Brock, Pete Latimer, and any other person who participated in any decision made to terminate Plaintiff.

4.      To the extent that you believe any of the following requests to be objectionable, enter so much of each and each part thereof that is not, in your view, objectionable.

5.      To the extent that you believe any of the following requests call for information or documents subject to a claim of privilege, enter so much of each request and each part thereof that did not request, in your view, allegedly privileged information that you refuse to give.

6.      If any documents or information sought herein is withheld on the basis of privilege or work product, or otherwise, you are requested to submit in lieu of any such information a written statement pursuant to Rule 193.3(b) of the Texas Rules of Civil Procedure no later than the day that these documents are produced that: (a) describes the documents or information withheld that, without revealing the privileged information itself or otherwise waiving the privilege, enables other parties to assess the applicability of the privilege; and (b) asserts a specific privilege for each item or group of items withheld.

7.      If any document or information is withheld on the basis of any claimed confidentiality or privacy right, you are requested to provide (1) a copy of any written agreement containing such confidentiality right, if applicable; (2) in your response to the Request, citation to the statutory or other legal authority under which the confidentiality or privacy right is asserted, if applicable; and (3) pursuant to Tex. R. Civ. P. 192.6, a proposed agreed protective order to govern the confidentiality of the documents or information withheld.

8.      These requests are continuing. If you learn that your response to a request was incomplete or incorrect when made or that, although it was complete and correct when made, it is no longer complete and correct, you must amend or supplement the response (1) to the extent that the request seeks the identification of persons with knowledge of relevant facts, trial witnesses, or expert witnesses, and (2) to the extent that the request seeks other information, unless the additional or corrective information has been made known to the other parties in writing, on the record at a deposition, or through other discovery responses.

9.      You must make amended or supplemental responses reasonably promptly after you discover the necessity for such an amendment or supplementation.

10.     The relevant time period is from January 1, 2017, to the present.

## REQUESTS FOR ADMISSIONS

**REQUEST FOR ADMISSION NO. 1:**     Admit that Big Lots had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in 2017.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 2:**     Admit that Big Lots had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in 2018.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 3:**     Admit that Big Lots had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in 2019.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 4:**     Admit that Big Lots had twenty (20) or more employees for each working day in each of twenty (20) or more calendar weeks in 2017.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 5:**     Admit that Big Lots had twenty (20) or more employees for each working day in each of twenty (20) or more calendar weeks in 2018.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 6:**     Admit that Big Lots had twenty (20) or more employees for each working day in each of twenty (20) or more calendar weeks in 2019.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 7:**     Admit that Big Lots had more than 100 employees for each working day in each of twenty (20) or more calendar weeks in 2017.

    **RESPONSE:**

\

**REQUEST FOR ADMISSION NO. 8:**     Admit that Big Lots had more than 100 employees for each working day in each of twenty (20) or more calendar weeks in 2018.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 9:**     Admit that Big Lots had more than 100 employees for each working day in each of twenty (20) or more calendar weeks in 2019.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 10:**     Admit that Big Lots had more than 200 employees for each working day in each of twenty (20) or more calendar weeks in 2017.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 11:**     Admit that Big Lots had more than 200 employees for each working day in each of twenty (20) or more calendar weeks in 2018.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 12:**     Admit that Big Lots had more than 200 employees for each working day in each of twenty (20) or more calendar weeks in 2019.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 13:**     Admit that Big Lots had more than 500 employees for each working day in each of twenty (20) or more calendar weeks in 2017.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 14:**     Admit that Big Lots had more than 500 employees for each working day in each of twenty (20) or more calendar weeks in 2018.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 15:**   Admit that Big Lots had more than 500 employees for each working day in each of twenty (20) or more calendar weeks in 2019.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 16:**   Admit that Big Lots had fifty (50) or more employees for each working day in each of twenty (20) or more calendar weeks in 2017.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 17:**   Admit that Big Lots had fifty (50) or more employees for each working day in each of twenty (20) or more calendar weeks in 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 18:**   Admit that Big Lots had fifty (50) or more employees for each working day in each of twenty (20) or more calendar weeks in 2019.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 19:**   Admit that Big Lots had fifty (50) or more employees within seventy-five (75) miles of Plaintiff's worksite for each working day in each of twenty (20) or more calendar weeks in 2017.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 20:**   Admit that Big Lots had fifty (50) or more employees within seventy-five (75) miles of Plaintiff's worksite for each working day in each of twenty (20) or more calendar weeks in 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 21:**   Admit that Big Lots had fifty (50) or more employees within seventy-five (75) miles of Plaintiff's worksite for each working day in each of twenty (20) or more calendar weeks in 2019.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 22:**   Admit that, at the time of Plaintiff's termination from Big Lots, Plaintiff was an "employee" of Big Lots, as that term is used in the Texas Commission on Human Rights Act, Texas Labor Code § 21.002(7).

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 23:**   Admit that, at the time of Plaintiff's termination from Big Lots, Big Lots was an "employer," as that term is used in the Texas Commission on Human Rights Act, Texas Labor Code § 21.002(8).

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 24:**   Admit that, at the time of Plaintiff's termination from Big Lots, Big Lots was an "employer," as that term is used in the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA").

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 25:**   Admit that, at the time of Plaintiff's termination from Big Lots, Plaintiff was an "employee" of Big Lots, as that term is used in the ADA.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 26:**   Admit that, at the time of Plaintiff's termination from Big Lots, Plaintiff was a "qualified individual," as that term is used in the ADA.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 27:**   Admit that Big Lots was an "employer" with respect to Plaintiff as that term is used in the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA").

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 28:**   Admit that, during Plaintiff's employment with Big Lots, Plaintiff was an "eligible employee" of Big Lots, as that term is used in the FMLA.

**PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS
TO DEFENDANT BIG LOTS STORES, INC.**                                   **PAGE 9**

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 29:**    Admit that Big Lots granted Plaintiff leave protected by the Family and Medical Leave Act ("FMLA") in 2018.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 30:**    Admit that Plaintiff was employed by Big Lots.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 31:**    Admit that Plaintiff began working for Big Lots in August 2015.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 32:**    Admit that Plaintiff was employed by Big Lots as Store Team Leader at the time of Plaintiff's termination.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 33:**    Admit that Plaintiff submitted a complaint to Big Lots alleging discriminatory behavior by Desmond Piihl on or about September 28, 2018.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 34:**    Admit that Plaintiff reported Desmond Piihl's failure to accommodate Plaintiff's disability on or about September 28, 2018.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 35:**    Admit that Plaintiff reported Desmond Piihl's failure to accommodate Plaintiff's disability to at least one officer of Big Lots on or about September 28, 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 36:**   Admit that Big Lots received a complaint from Plaintiff on or about September 8, 2018.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 37:**   Admit that Big Lots received a complaint from Plaintiff on or about September 8, 2018, mentioning Piihl.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 38:**   Admit that Big Lots received a complaint from Plaintiff on or about September 8, 2018, mentioning Pacheco.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 39:**   Admit that Big Lots received a complaint from Plaintiff on or about September 8, 2018, mentioning a write-up.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 40:**   Admit that Big Lots received a complaint from Plaintiff on or about September 8, 2018, mentioning an audit.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 41:**   Admit that Big Lots received a complaint from Plaintiff on or about September 8, 2018, mentioning an audit conducted while Plaintiff was on medical leave.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 42:**   Admit that Big Lots received a complaint from Plaintiff on or about September 8, 2018, mentioning medical leave.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 43:**    Admit that Plaintiff reported Laura Pacheco's discriminatory behavior in September 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 44:**    Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring in September 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 45:**    Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to Anthony Brock in September 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 46:**    Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to Desmond Piihl in September 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 47:**    Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to at least one officer of Big Lots in September 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 48:**    Admit that Plaintiff reported Laura Pacheco's discriminatory behavior in October 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 49:**    Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring in October 2018.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 50:**     Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to Anthony Brock in October 2018.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 51:**     Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to Desmond Piihl in October 2018.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 52:**     Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to at least one officer of Big Lots in October 2018.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 53:**     Admit that Plaintiff reported Laura Pacheco's discriminatory behavior in December 2018.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 54:**     Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring in December 2018.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 55:**     Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to Anthony Brock in December 2018.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 56:**     Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to Desmond Piihl in December 2018.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 57:**     Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to at least one officer of Big Lots in December 2018.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 58:**     Admit that Plaintiff reported Laura Pacheco's discriminatory behavior in February 2019.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 59:**     Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring in February 2019.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 60:**     Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to Anthony Brock in February 2019.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 61:**     Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to Desmond Piihl in February 2019.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 62:**     Admit that Plaintiff reported Laura Pacheco's discriminatory audit scoring to at least one officer of Big Lots in February 2019.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 63:**     Admit that Big Lots terminated Plaintiff.

     **RESPONSE:**

**REQUEST FOR ADMISSION NO. 64:**    Admit that Big Lots informed Plaintiff of his termination on March 7, 2019.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 65:**    Admit that, at the time Big Lots terminated Plaintiff, he possessed all certifications, degrees, and licenses required for his position.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 66:**    Admit that Desmond Piihl made the decision to terminate Plaintiff's employment with Big Lots.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 67:**    Admit that Desmond Piihl was involved in making the decision to terminate Plaintiff's employment with Big Lots.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 68:**    Admit that on March 7, 2019, Desmond Piihl informed Plaintiff of his termination in person.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 69:**    Admit that Desmond Piihl told Plaintiff he was being terminated because Plaintiff had unsatisfactory job performance.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 70:**    Admit that Desmond Piihl told Plaintiff no reason for his termination other than Plaintiff had unsatisfactory job performance.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 71:**   Admit that Laura Pacheco made the decision to terminate Plaintiff's employment with Big Lots.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 72:**   Admit that Laura Pacheco was involved in making the decision to terminate Plaintiff's employment with Big Lots.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 73:**   Admit that Anthony Brock made the decision to terminate Plaintiff's employment with Big Lots.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 74:**   Admit that Anthony Brock was involved in making the decision to terminate Plaintiff's employment with Big Lots.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 75:**   Admit that Pete Latimer made the decision to terminate Plaintiff's employment with Big Lots.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 76:**   Admit that Pete Latimer was involved in making the decision to terminate Plaintiff's employment with Big Lots.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 77:**   Admit that on March 7, 2019, Pete Latimer informed Plaintiff of his termination in person.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 78:**    Admit that Pete Latimer told Plaintiff he was being terminated because Plaintiff had unsatisfactory job performance.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 79:**    Admit that Pete Latimer told Plaintiff no reason for his termination other than Plaintiff had unsatisfactory job performance.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 80:**    Admit that no other employee or agent of Big Lots told Plaintiff any reason for his termination other than Plaintiff had unsatisfactory job performance.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 81:**    Admit that, at the time of Plaintiff's termination from Big Lots, Big Lots had a policy that prohibited terminating an employee because of the employee's disability.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 82:**    Admit that, at the time of Plaintiff's termination from Big Lots, Big Lots had a policy that prohibited retaliating against an employee for making a complaint of discrimination.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 83:**    Admit that Big Lots has a policy that states that reports of discrimination will be kept confidential.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 84:**    Admit that Big Lots has at least one policy regarding discrimination.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 85:**     Admit that Big Lots has at least one policy regarding retaliation.

      **RESPONSE:**


**REQUEST FOR ADMISSION NO. 86:**     Admit that, at the time of Plaintiff's termination from Big Lots, Big Lots had at least one policy or procedure concerning medical leave.

      **RESPONSE:**


**REQUEST FOR ADMISSION NO. 87:**     Admit that, at the time of Plaintiff's termination from Big Lots, Big Lots had at least one policy or procedure prohibiting interfering with an employee's medical leave.

      **RESPONSE:**


**REQUEST FOR ADMISSION NO. 88:**     Admit that, at the time of Plaintiff's termination from Big Lots, Desmond Piihl was aware of a policy or procedure of Big Lots prohibiting interfering with an employee's medical leave.

      **RESPONSE:**


**REQUEST FOR ADMISSION NO. 89:**     Admit that, at the time of Plaintiff's termination from Big Lots, Laura Pacheco was aware of a policy or procedure of Big Lots prohibiting interfering with an employee's medical leave.

      **RESPONSE:**


**REQUEST FOR ADMISSION NO. 90:**     Admit that, at the time of Plaintiff's termination from Big Lots, Anthony Brock was aware of a policy or procedure of Big Lots prohibiting interfering with an employee's medical leave.

      **RESPONSE:**


**REQUEST FOR ADMISSION NO. 91:**     Admit that, at the time of Plaintiff's termination from Big Lots, Pete Latimer was aware of a policy or procedure of Big Lots prohibiting interfering with an employee's medical leave.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 92:**   Admit that, at the time of Plaintiff's termination from Big Lots, Big Lots had at least one policy or procedure prohibiting retaliating against an employee exercising the right to medical leave.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 93:**   Admit that, at the time of Plaintiff's termination from Big Lots, Desmond Piihl was aware of a policy or procedure of Big Lots prohibiting retaliating against an employee exercising the right to medical leave.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 94:**   Admit that, at the time of Plaintiff's termination from Big Lots, Laura Pacheco was aware of a policy or procedure of Big Lots prohibiting retaliating against an employee exercising the right to medical leave.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 95:**   Admit that, at the time of Plaintiff's termination from Big Lots, Anthony Brock was aware of a policy or procedure of Big Lots prohibiting retaliating against an employee exercising the right to medical leave.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 96:**   Admit that, at the time of Plaintiff's termination from Big Lots, Pete Latimer was aware of a policy or procedure of Big Lots prohibiting retaliating against an employee exercising the right to medical leave.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 97:**   Admit that, at the time of Plaintiff's termination from Big Lots, Desmond Piihl knew that interfering with an employee's medical leave is a violation of federal law.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 98:**   Admit that, at the time of Plaintiff's termination from Big Lots, Desmond Piihl knew that retaliating against an employee for exercising his or her right to medical leave is a violation of federal law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 99:**   Admit that, at the time of Plaintiff's termination from Big Lots, Laura Pacheco knew that interfering with an employee's medical leave is a violation of federal law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 100:**   Admit that, at the time of Plaintiff's termination from Big Lots, Laura Pacheco knew that retaliating against an employee for exercising his or her right to medical leave is a violation of federal law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 101:**   Admit that, at the time of Plaintiff's termination from Big Lots, Anthony Brock knew that interfering with an employee's medical leave is a violation of federal law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 102:**   Admit that, at the time of Plaintiff's termination from Big Lots, Anthony Brock knew that retaliating against an employee for exercising his or her right to medical leave is a violation of federal law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 103:**   Admit that, at the time of Plaintiff's termination from Big Lots, Pete Latimer knew that interfering with an employee's medical leave is a violation of federal law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 104:**   Admit that, at the time of Plaintiff's termination from Big Lots, Pete Latimer knew that retaliating against an employee for exercising his or her right to medical leave is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 105:**   Admit that, at the time of Plaintiff's termination from Big Lots, at least one person involved in the decision to terminate Plaintiff knew that interfering with an employee's medical leave is a violation of federal law.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 106:**   Admit that, at the time of Plaintiff's termination from Big Lots, at least one person involved in the decision to terminate Plaintiff knew that retaliating against an employee for exercising his or her right to medical leave is a violation of federal law.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 107:**   Admit that, at the time of Plaintiff's termination from Big Lots, Desmond Piihl was aware of a policy of Big Lots that prohibited terminating an employee because of the employee's disability.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 108:**   Admit that, at the time of Plaintiff's termination from Big Lots, Desmond Piihl knew that terminating an employee because of the employee's disability is a violation of Texas law.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 109:**   Admit that, at the time of Plaintiff's termination from Big Lots, Desmond Piihl knew that terminating an employee because of the employee's disability is a violation of federal law.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 110:**   Admit that, at the time of Plaintiff's termination from Big Lots, Laura Pacheco was aware of a policy of Big Lots that prohibited terminating an employee because of the employee's disability.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 111:**  Admit that, at the time of Plaintiff's termination from Big Lots, Laura Pacheco knew that terminating an employee because of the employee's disability is a violation of Texas law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 112:**  Admit that, at the time of Plaintiff's termination from Big Lots, Laura Pacheco knew that terminating an employee because of the employee's disability is a violation of federal law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 113:**  Admit that, at the time of Plaintiff's termination from Big Lots, Anthony Brock was aware of a policy of Big Lots that prohibited terminating an employee because of the employee's disability.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 114:**  Admit that, at the time of Plaintiff's termination from Big Lots, Anthony Brock knew that terminating an employee because of the employee's disability is a violation of Texas law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 115:**  Admit that, at the time of Plaintiff's termination from Big Lots, Anthony Brock knew that terminating an employee because of the employee's disability is a violation of federal law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 116:**  Admit that, at the time of Plaintiff's termination from Big Lots, Pete Latimer was aware of a policy of Big Lots that prohibited terminating an employee because of the employee's disability.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 117:**  Admit that, at the time of Plaintiff's termination from Big Lots, Pete Latimer knew that terminating an employee because of the employee's disability is a violation of Texas law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 118:**  Admit that, at the time of Plaintiff's termination from Big Lots, Pete Latimer knew that terminating an employee because of the employee's disability is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 119:**  Admit that, at the time of Plaintiff's termination from Big Lots, at least one person involved in the decision to terminate Plaintiff was aware of a policy of Big Lots that prohibited terminating an employee because of the employee's disability.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 120:**  Admit that, at the time of Plaintiff's termination from Big Lots, at least one person involved in the decision to terminate Plaintiff knew that terminating an employee because of the employee's disability is a violation of Texas law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 121:**  Admit that, at the time of Plaintiff's termination from Big Lots, at least one person involved in the decision to terminate Plaintiff knew that terminating an employee because of the employee's disability is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 122:**  Admit that the Charge of Discrimination filed by Plaintiff is not the only complaint, inquiry, or charge filed with the Texas Workforce Commission alleging Desmond Piihl discriminated against an individual on the basis of disability while Piihl has been employed by Big Lots.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 123:**  Admit that the Charge of Discrimination filed by Plaintiff is not the only complaint, inquiry, or charge filed with the U.S. Equal Employment Opportunity Commission alleging Desmond Piihl discriminated against an individual on the basis of disability while Piihl has been employed by Big Lots.

   **RESPONSE:**


**REQUEST FOR ADMISSION NO. 124:**  Admit that Desmond Piihl is aware of at least one complaint, inquiry, or charge filed with the Texas Workforce Commission prior to Piihl's employment with Big Lots alleging Piihl discriminated against an individual on the basis of disability.

   **RESPONSE:**


**REQUEST FOR ADMISSION NO. 125:**  Admit that Desmond Piihl is aware of at least one complaint, inquiry, or charge filed with the U.S. Equal Employment Opportunity Commission prior to Piihl's employment with Big Lots alleging Piihl discriminated against an individual on the basis of disability.

   **RESPONSE:**


**REQUEST FOR ADMISSION NO. 126:**  Admit that the Charge of Discrimination filed by Plaintiff is not the only complaint, inquiry, or charge filed with the Texas Workforce Commission alleging Laura Pacheco discriminated against an individual on the basis of disability while Pacheco has been employed by Big Lots.

   **RESPONSE:**


**REQUEST FOR ADMISSION NO. 127:**  Admit that the Charge of Discrimination filed by Plaintiff is not the only complaint, inquiry, or charge filed with the U.S. Equal Employment Opportunity Commission alleging Laura Pacheco discriminated against an individual on the basis of disability while Pacheco has been employed by Big Lots.

   **RESPONSE:**


**REQUEST FOR ADMISSION NO. 128:**  Admit that Laura Pacheco is aware of at least one complaint, inquiry, or charge filed with the Texas Workforce Commission prior to Pacheco's

employment with Big Lots alleging Pacheco discriminated against an individual on the basis of disability.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 129:**  Admit that Laura Pacheco is aware of at least one complaint, inquiry, or charge filed with the U.S. Equal Employment Opportunity Commission prior to Pacheco's employment with Big Lots alleging Pacheco discriminated against an individual on the basis of disability.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 130:**  Admit that, at the time of Plaintiff's termination from Big Lots, Desmond Piihl was aware of a policy of Big Lots that prohibited terminating an employee in retaliation for filing a complaint of discrimination.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 131:**  Admit that, at the time of Plaintiff's termination from Big Lots, Big Lots had at least one policy or procedure referring to reasonably accommodating an employee's disability.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 132:**  Admit that, at the time of Plaintiff's termination from Big Lots, Big Lots had at least one policy or procedure requiring Big Lots to reasonably accommodate an employee's disability.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 133:**  Admit that, at the time of Plaintiff's termination from Big Lots, Desmond Piihl was aware of a policy of Big Lots requiring Big Lots to reasonably accommodate an employee's disability.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 134:**  Admit that, at the time of Plaintiff's termination from Big Lots, Laura Pacheco was aware of a policy of Big Lots requiring Big Lots to reasonably accommodate an employee's disability.

      **RESPONSE:**

**REQUEST FOR ADMISSION NO. 135:**  Admit that, at the time of Plaintiff's termination from Big Lots, Anthony Brock was aware of a policy of Big Lots requiring Big Lots to reasonably accommodate an employee's disability.

      **RESPONSE:**

**REQUEST FOR ADMISSION NO. 136:**  Admit that, at the time of Plaintiff's termination from Big Lots, Pete Latimer was aware of a policy of Big Lots requiring Big Lots to reasonably accommodate an employee's disability.

      **RESPONSE:**

**REQUEST FOR ADMISSION NO. 137:**  Admit that, at the time of Plaintiff's termination from Big Lots, at least one person involved in the decision to terminate Plaintiff was aware of a policy of Big Lots requiring Big Lots to reasonably accommodate an employee's disability.

      **RESPONSE:**

**REQUEST FOR ADMISSION NO. 138:**  Admit that, at the time of Plaintiff's termination from Big Lots, Desmond Piihl knew that failing to reasonably accommodate an employee's disability is a violation of Texas law.

      **RESPONSE:**

**REQUEST FOR ADMISSION NO. 139:**  Admit that, at the time of Plaintiff's termination from Big Lots, Laura Pacheco knew that failing to reasonably accommodate an employee's disability is a violation of Texas law.

      **RESPONSE:**

**REQUEST FOR ADMISSION NO. 140:**  Admit that, at the time of Plaintiff's termination from Big Lots, Anthony Brock knew that failing to reasonably accommodate an employee's disability is a violation of Texas law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 141:**  Admit that, at the time of Plaintiff's termination from Big Lots, Pete Latimer knew that failing to reasonably accommodate an employee's disability is a violation of Texas law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 142:**  Admit that, at the time of Plaintiff's termination from Big Lots, at least one person involved in the decision to terminate Plaintiff knew that failing to reasonably accommodate an employee's disability is a violation of Texas law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 143:**  Admit that, at the time of Plaintiff's termination from Big Lots, Desmond Piihl knew that failing to reasonably accommodate an employee's disability is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 144:**  Admit that, at the time of Plaintiff's termination from Big Lots, Laura Pacheco knew that failing to reasonably accommodate an employee's disability is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 145:**  Admit that, at the time of Plaintiff's termination from Big Lots, Anthony Brock knew that failing to reasonably accommodate an employee's disability is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 146:**  Admit that, at the time of Plaintiff's termination from Big Lots, Pete Latimer knew that failing to reasonably accommodate an employee's disability is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 147:**  Admit that, at the time of Plaintiff's termination from Big Lots, at least one person involved in the decision to terminate Plaintiff knew that failing to reasonably accommodate an employee's disability is a violation of federal law.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 148:**  Admit that Big Lots would not have suffered an undue burden by fixing the air conditioning in Plaintiff's store.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 149:**  Admit that Big Lots refused Plaintiff's reasonable accommodation.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 150:**  Admit that Big Lots refused Plaintiff's reasonable accommodation by failing to fix the air conditioning in Plaintiff's store.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 151:**  Admit that the Charge of Discrimination filed by Plaintiff is not the only complaint, inquiry, or charge filed with the Texas Workforce Commission alleging Desmond Piihl failed to accommodate an employee's disability while Piihl has been employed by Big Lots.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 152:**  Admit that the Charge of Discrimination filed by Plaintiff is not the only complaint, inquiry, or charge filed with the U.S. Equal Employment Opportunity Commission alleging Desmond Piihl failed to accommodate an employee's disability while Piihl has been employed by Big Lots.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 153:**  Admit that Desmond Piihl is aware of at least one complaint, inquiry, or charge filed with the Texas Workforce Commission prior to Piihl's employment with Big Lots alleging Piihl failed to accommodate an employee's disability.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 154:**  Admit that Desmond Piihl is aware of at least one complaint, inquiry, or charge filed with the U.S. Equal Employment Opportunity Commission prior to Piihl's employment with Big Lots alleging Piihl failed to accommodate an employee's disability.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 155:**  Admit that, at the time of Plaintiff's termination from Big Lots, Desmond Piihl knew that terminating an employee in retaliation for filing a complaint of discrimination is a violation of Texas law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 156:**  Admit that, at the time of Plaintiff's termination from Big Lots, Desmond Piihl knew that terminating an employee in retaliation for filing a complaint of discrimination is a violation of federal law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 157:**  Admit that, at the time of Plaintiff's termination from Big Lots, Laura Pacheco was aware of a policy of Big Lots that prohibited terminating an employee in retaliation for filing a complaint of discrimination.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 158:**  Admit that, at the time of Plaintiff's termination from Big Lots, Laura Pacheco knew that terminating an employee in retaliation for filing a complaint of discrimination is a violation of Texas law.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 159:**  Admit that, at the time of Plaintiff's termination from Big Lots, Laura Pacheco knew that terminating an employee in retaliation for filing a complaint of discrimination is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 160:**  Admit that, at the time of Plaintiff's termination from Big Lots, Anthony Brock was aware of a policy of Big Lots that prohibited terminating an employee in retaliation for filing a complaint of discrimination.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 161:**  Admit that, at the time of Plaintiff's termination from Big Lots, Anthony Brock knew that terminating an employee in retaliation for filing a complaint of discrimination is a violation of Texas law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 162:**  Admit that, at the time of Plaintiff's termination from Big Lots, Anthony Brock knew that terminating an employee in retaliation for filing a complaint of discrimination is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 163:**  Admit that, at the time of Plaintiff's termination from Big Lots, Pete Latimer was aware of a policy of Big Lots that prohibited terminating an employee in retaliation for filing a complaint of discrimination.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 164:**  Admit that, at the time of Plaintiff's termination from Big Lots, Pete Latimer knew that terminating an employee in retaliation for filing a complaint of discrimination is a violation of Texas law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 165:**  Admit that, at the time of Plaintiff's termination from Big Lots, Pete Latimer knew that terminating an employee in retaliation for filing a complaint of discrimination is a violation of federal law.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 166:**  Admit that, at the time of Plaintiff's termination from Big Lots, at least one person involved in the decision to terminate Plaintiff was aware of a policy of Big Lots that prohibited terminating an employee in retaliation for filing a complaint of discrimination.

      **RESPONSE:**

**REQUEST FOR ADMISSION NO. 167:**  Admit that, at the time of Plaintiff's termination from Big Lots, at least one person involved in the decision to terminate Plaintiff knew that terminating an employee in retaliation for filing a complaint of discrimination is a violation of Texas law.

      **RESPONSE:**

**REQUEST FOR ADMISSION NO. 168:**  Admit that, at the time of Plaintiff's termination from Big Lots, at least one person involved in the decision to terminate Plaintiff knew that terminating an employee in retaliation for filing a complaint of discrimination is a violation of federal law.

      **RESPONSE:**

**REQUEST FOR ADMISSION NO. 169:**  Admit that the Charge of Discrimination filed by Plaintiff is not the only complaint, inquiry, or charge filed with the Texas Workforce Commission alleging Desmond Piihl retaliated against an individual for making a complaint of discrimination while Piihl has been an employee of Big Lots.

      **RESPONSE:**

**REQUEST FOR ADMISSION NO. 170:**  Admit that the Charge of Discrimination filed by Plaintiff is not the only complaint, inquiry, or charge filed with the U.S. Equal Employment Opportunity Commission alleging Desmond Piihl retaliated against an individual for making a complaint of discrimination while Piihl has been an employee of Big Lots.

      **RESPONSE:**

**REQUEST FOR ADMISSION NO. 171:**  Admit that Desmond Piihl is aware of at least one complaint, inquiry, or charge filed with the Texas Workforce Commission prior to Piihl's employment with Big Lots alleging Piihl retaliated against an individual for making a complaint of discrimination.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 172:**  Admit that Desmond Piihl is aware of at least one complaint, inquiry, or charge filed with the U.S. Equal Employment Opportunity Commission prior to Piihl's employment with Big Lots alleging Piihl retaliated against an individual for making a complaint of discrimination.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 173:**  Admit that the Charge of Discrimination filed by Plaintiff is not the only complaint, inquiry, or charge filed with the Texas Workforce Commission alleging Laura Pacheco retaliated against an individual for making a complaint of discrimination while Pacheco has been an employee of Big Lots.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 174:**  Admit that the Charge of Discrimination filed by Plaintiff is not the only complaint, inquiry, or charge filed with the U.S. Equal Employment Opportunity Commission alleging Laura Pacheco retaliated against an individual for making a complaint of discrimination while Pacheco has been an employee of Big Lots.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 175:**  Admit that Laura Pacheco is aware of at least one complaint, inquiry, or charge filed with the Texas Workforce Commission prior to Pacheco's employment with Big Lots alleging Pacheco retaliated against an individual for making a complaint of discrimination.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 176:**  Admit that Laura Pacheco is aware of at least one complaint, inquiry, or charge filed with the U.S. Equal Employment Opportunity Commission

prior to Pacheco's employment with Big Lots alleging Pacheco retaliated against an individual for making a complaint of discrimination.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 177:**  Admit the allegations in Paragraph 12 of Plaintiff's Original Petition that Piihl criticized Plaintiff's walking.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 178:**  Admit the allegations in Paragraph 12 of Plaintiff's Original Petition that Piihl criticized Plaintiff's walking at least once.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 179:**  Admit the allegations in Paragraph 12 of Plaintiff's Original Petition that Piihl solicited feedback on Plaintiff's disability from Plaintiff's store associates.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 180:**  Admit the allegations in Paragraph 12 of Plaintiff's Original Petition that Piihl solicited feedback on Plaintiff's disability from Plaintiff's store associates at least once.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 181:**  Admit the allegations in Paragraph 15 of Plaintiff's Original Petition that Piihl agreed that point deductions on Plaintiff's failed audits were incorrect.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 182:**  Admit the allegations in Paragraph 16 of Plaintiff's Original Petition that Big Lots expected Plaintiff to lift items marked with a team lift sticker on his own.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 183:**   Admit the allegations in Paragraph 17 of Plaintiff's Original Petition that Plaintiff asked Pacheco what he was supposed to do with team lift items if there was no one available to help him.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 184:**   Admit the allegations in Paragraph 17 of Plaintiff's Original Petition that Pacheco told Plaintiff that a ladder counts as a second person.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 185:**   Admit the allegations in Paragraph 20 of Plaintiff's Original Petition that Plaintiff submitted a request to Piihl to fix the store's air conditioner.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 186:**   Admit the allegations in Paragraph 20 of Plaintiff's Original Petition that Plaintiff and Dr. Okuda submitted a request to Big Lots' corporate office to fix the store's air conditioner.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 187:**   Admit the allegations in Paragraph 23 of Plaintiff's Original Petition that Piihl suggested Plaintiff terminate Wes Campbell.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 188:**   Admit the allegations in Paragraph 23 of Plaintiff's Original Petition that Piihl suggested Plaintiff terminate Ben Buchanan.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 189:**   Admit that Plaintiff was disabled at the time of his termination.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 190:** Admit that Big Lots terminated Plaintiff's employment because of his disability.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 191:** Admit that Plaintiff's disability was a motivating factor for Big Lots' termination of Plaintiff's employment.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 192:** Admit that Big Lots terminated Plaintiff's employment because he complained about discrimination.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 193:** Admit that Plaintiff's complaint about discrimination was a motivating factor for Big Lots' termination of Plaintiff's employment.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 194:** Admit that Big Lots terminated Plaintiff's employment because Plaintiff took medical leave.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 195:** Admit that Plaintiff's taking medical leave was a motivating factor for Big Lots' termination of Plaintiff's employment.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 196:** Admit that a failed audit conducted on or about June 30, 2018 was a motivating factor for Big Lots' termination of Plaintiff's employment.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 197:** Admit that on June 30, 2018, Plaintiff was not present at his worksite.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 198:** Admit that on June 30, 2018, Plaintiff was on medical leave.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 199:** Admit that Plaintiff notified Big Lots of his medical condition upon his hiring.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 200:** Admit that Plaintiff notified Big Lots of his disability upon his hiring.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 201:** Admit that Plaintiff notified Big Lots upon his hiring that Plaintiff has Multiple Sclerosis.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 202:** Admit that Plaintiff notified Big Lots upon his hiring that Plaintiff could not work more than 45 hours per week.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 203:** Admit that Big Lots has in its possession correspondence from Dr. Darin Okuda.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 204:**  Admit that Big Lots has in its possession correspondence from Dr. Darin Okuda mentioning Plaintiff.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 205:**  Admit that Big Lots has in its possession correspondence from Dr. Darin Okuda mentioning Plaintiff's accommodation requests.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 206:**  Admit that in the first week of June 2018, Plaintiff notified Big Lots of the need for leave.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 207:**  Admit that in the first week of June 2018, Plaintiff notified Big Lots of the need for leave due to a medical condition.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 208:**  Admit that in the first week of June 2018, Plaintiff notified Big Lots of the need for leave to have surgery to treat symptoms of his disability.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 209:**  Admit that in the first week of June 2018, Plaintiff requested leave due to a medical condition.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 210:**  Admit that in the first week of June 2018, Plaintiff requested leave to have surgery to treat symptoms of his disability.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 211:**  Admit that in June 2018, Big Lots approved Plaintiff's request for intermittent medical leave from June 22, 2018 through August 19, 2018.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 212:**  Admit that Plaintiff was on leave due to a medical condition starting on June 22, 2018.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 213:**  Admit that at the time of Plaintiff's termination, Desmond Piihl was not disabled.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 214:**  Admit that at the time of Plaintiff's termination, Laura Pacheco was not disabled.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 215:**  Admit that at the time of Plaintiff's termination, Anthony Brock was not disabled.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 216:**  Admit that at the time of Plaintiff's termination, Pete Latimer was not disabled.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 217:**  Admit that Big Lots employed a person by the name of Wes Campbell.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 218:**  Admit that on or after March 7, 2019, Big Lots terminated Wes Campbell.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 219:**  Admit that at the time of his termination from Big Lots, Wes Campbell was disabled.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 220:**  Admit that at the time of Wes Campbell's termination, Desmond Piihl was not disabled.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 221:**  Admit that at the time of Wes Campbell's termination, Laura Pacheco was not disabled.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 222:**  Admit that at the time of Wes Campbell's termination, Anthony Brock was not disabled.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 223:**  Admit that at the time of Wes Campbell's termination, Pete Latimer was not disabled.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 224:**  Admit that Big Lots employed a person by the name of Ben Buchanan.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 225:** Admit that on or after March 7, 2019, Big Lots terminated Ben Buchanan.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 226:** Admit that at the time of his termination from Big Lots, Ben Buchanan was disabled.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 227:** Admit that at the time of Ben Buchanan's termination, Desmond Piihl was not disabled.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 228:** Admit that at the time of Ben Buchanan's termination, Laura Pacheco was not disabled.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 229:** Admit that at the time of Ben Buchanan's termination, Anthony Brock was not disabled.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 230:** Admit that at the time of Ben Buchanan's termination, Pete Latimer was not disabled.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 231:** Admit that there are records relevant to Plaintiff that are in the possession of Big Lots.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 232:**  Admit that prior to responding to Plaintiff's First Request for Production, Big Lots searched all documents in Big Lots' possession, custody, or control that may contain information responsive to Plaintiff's First Request for Production.

   **RESPONSE:**


**REQUEST FOR ADMISSION NO. 233:**  Admit that prior to responding to Plaintiff's First Request for Production, Big Lots' search of emails in Big Lots' possession, custody, or control included searching deleted emails.

   **RESPONSE:**


**REQUEST FOR ADMISSION NO. 234:**  Admit that prior to responding to Plaintiff's First Request for Production, Big Lots' search of emails in Big Lots' possession, custody, or control included searching archived emails.

   **RESPONSE:**


**REQUEST FOR ADMISSION NO. 235:**  Admit that Big Lots or its attorneys consulted with Desmond Piihl with respect to responding to Plaintiff's First Request for Production.

   **RESPONSE:**


**REQUEST FOR ADMISSION NO. 236:**  Admit that Big Lots or its attorneys consulted with Laura Pacheco with respect to responding to Plaintiff's First Request for Production.

   **RESPONSE:**


**REQUEST FOR ADMISSION NO. 237:**  Admit that Big Lots or its attorneys consulted with Anthony Brock with respect to responding to Plaintiff's First Request for Production.

   **RESPONSE:**


**REQUEST FOR ADMISSION NO. 238:**  Admit that Big Lots or its attorneys consulted with Pete Latimer with respect to responding to Plaintiff's First Request for Production.

   **RESPONSE:**

**REQUEST FOR ADMISSION NO. 239:**  Admit that Big Lots or its attorneys consulted with Scot West with respect to responding to Plaintiff's First Request for Production.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 240:**  Admit that Big Lots or its attorneys consulted with Wes Campbell with respect to responding to Plaintiff's First Request for Production.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 241:**  Admit that Big Lots or its attorneys consulted with Ben Buchanan with respect to responding to Plaintiff's First Request for Production.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 242:**  Admit that Big Lots or its attorneys consulted with Bernard Lacy with respect to responding to Plaintiff's First Request for Production.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 243:**  Admit that prior to responding to Plaintiff's First Request for Production, Big Lots searched the emails of Desmond Piihl that are in Big Lots' possession, custody, or control.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 244:**  Admit that prior to responding to Plaintiff's First Request for Production, Big Lots searched the emails of Laura Pacheco that are in Big Lots' possession, custody, or control.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 245:**  Admit that prior to responding to Plaintiff's First Request for Production, Big Lots searched the emails of Anthony Brock that are in Big Lots' possession, custody, or control.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 246:**  Admit that prior to responding to Plaintiff's First Request for Production, Big Lots searched the emails of Pete Latimer that are in Big Lots' possession, custody, or control.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 247:**  Admit that prior to responding to Plaintiff's First Request for Production, Big Lots searched the emails of Scot West that are in Big Lots' possession, custody, or control.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 248:**  Admit that prior to responding to Plaintiff's First Request for Production, Big Lots searched the emails of Wes Campbell that are in Big Lots' possession, custody, or control.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 249:**  Admit that prior to responding to Plaintiff's First Request for Production, Big Lots searched the emails of Ben Buchanan that are in Big Lots' possession, custody, or control.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 250:**  Admit that prior to responding to Plaintiff's First Request for Production, Big Lots searched the emails of Bernard Lacy that are in Big Lots' possession, custody, or control.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 251:**  Admit that Big Lots or its attorneys consulted with Desmond Piihl with respect to responding to these Requests for Admission.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 252:**  Admit that Big Lots or its attorneys consulted with Laura Pacheco with respect to responding to these Requests for Admission.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 253:**  Admit that Big Lots or its attorneys consulted with Anthony Brock with respect to responding to these Requests for Admission.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 254:**  Admit that Big Lots or its attorneys consulted with Pete Latimer with respect to responding to these Requests for Admission.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 255:**  Admit that Big Lots or its attorneys consulted with Scot West with respect to responding to these Requests for Admission.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 256:**  Admit that Big Lots or its attorneys consulted with Wes Campbell with respect to responding to these Requests for Admission.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 257:**  Admit that Big Lots or its attorneys consulted with Ben Buchanan with respect to responding to these Requests for Admission.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 258:**  Admit that Big Lots or its attorneys consulted with Bernard Lacy with respect to responding to these Requests for Admission.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 259:**   Admit that Big Lots or its attorneys consulted with Desmond Piihl with respect to responding to Plaintiff's First Set of Interrogatories.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 260:**   Admit that Big Lots or its attorneys consulted with Laura Pacheco with respect to responding to Plaintiff's First Set of Interrogatories.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 261:**   Admit that Big Lots or its attorneys consulted with Anthony Brock with respect to responding to Plaintiff's First Set of Interrogatories.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 262:**   Admit that Big Lots or its attorneys consulted with Pete Latimer with respect to responding to Plaintiff's First Set of Interrogatories.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 263:**   Admit that Big Lots or its attorneys consulted with Scot West with respect to responding to Plaintiff's First Set of Interrogatories.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 264:**   Admit that Big Lots or its attorneys consulted with Wes Campbell with respect to responding to Plaintiff's First Set of Interrogatories.

    **RESPONSE:**


**REQUEST FOR ADMISSION NO. 265:**   Admit that Big Lots or its attorneys consulted with Ben Buchanan with respect to responding to Plaintiff's First Set of Interrogatories.

    **RESPONSE:**

**REQUEST FOR ADMISSION NO. 266:**  Admit that Big Lots or its attorneys consulted with Bernard Lacy with respect to responding to Plaintiff's First Set of Interrogatories.

      **RESPONSE:**

Filed 7/2/2020 1:13 PM
Melanie Reed
District Clerk
Ellis County, Texas

**ELLIS COUNTY DISTRICT CLERK**                                                    **(972)825-5091**

**REQUEST FOR ISSUANCE – E-FILING OR PRO SE**

## CITATIONS, PRECEPTS, NOTICES, WRITS, TRO'S

**PLEASE USE OTHER REQUEST FORMS (FOUND ON OUR WEBSITE) FOR ANY OTHER TYPE OF ISSUANCE**

- This document MUST be filed as a separate LEAD document when e-filing.
- Issuance will NOT be done until this completed form is received.
- Choose the filing code "Request" (if able), then select the type of issuance under "Optional Services".
- If a service document is required, you MUST add the copy fees under "Optional Services" & enter the quantity of pages for each document to be served.

**CAUSE NUMBER:** _____

**TITLE OF DOCUMENT/S TO BE SERVED:** _____

**STYLE OF CASE:** _____

### PLEASE SELECT BELOW THE TYPE AND QUANTITY OF ISSUANCE/S NEEDED:

| TYPE | COST | QUANTITY | TYPE | COST | QUANTITY |
|------|------|----------|------|------|----------|
| Citation | $8 | _____ | Writ: Execution | $8 | _____ |
| Precept / Notice | $8 | _____ | Writ: Commitment | $8 | _____ |
| Temp Restraining Order | $8 | _____ | Writ: Garnishment | $8 | _____ |
| Scire Facias | $8 | _____ | Writ: Sequestration | $8 | _____ |
| Writ: Attachment | $8 | _____ | Writ: Turnover | $8 | _____ |
| Writ: Possession | $8 | _____ | Writ: Other | $8 | _____ |

Requestor Name: _____

Requestor Phone No.:_____

E-Mail:_____

**(This e-mail address should be listed __by you__ under "Service Contacts" in e-filing.)**

## All Issuance will be e-filed back to the e-mail address listed on page 1 unless otherwise indicated by choosing one of the following:

I am Pro Se and will pick up my issuance. **This option is ONLY available if Pro-Se.**

Service by Certified Mail – Please pay for service copy under "Optional Services".

I would like restricted certified mail:  Y          N

Service by Sheriff or Constable – Please pay for service copy under "Optional Services".

Sheriff          Const., Pct 1          Const., Pct 2          Const., Pct 3          Const., Pct 4

Posting – A Motion & Order are required. Please pay for a service copy under "Optional Services".

Publication – A Motion & Order are required. Which publication: _____

## Service Information:

**NAME OF PARTY TO BE SERVED**: _____ Type of Issuance: _____

Address for service (include registered agent of applicable):

_____

_____

_____

**NAME OF PARTY TO BE SERVED**: _____ Type of Issuance: _____

Address for service (include registered agent if applicable):

_____

_____

_____

**NAME OF PARTY TO BE SERVED**: _____ Type of Issuance: _____

Address for service (include registered agent if applicable):

_____

_____

_____

IF THERE ARE MORE PARTIES TO BE SERVED, PLEASE USE THE 2ND PAGE OF AN ADD'L REQUEST FORM. THANK YOU

# THE STATE OF TEXAS
# COUNTY OF ELLIS
## CAUSE NO: 103662
## CITATION

**TO:**  **BIG LOTS STORES, INC.**
**C/O CORPORATION SERVICE COMPANY**
**DBA CSC-LAWYERS INCORPORATING SERVICE CO**
**211 E. 7TH ST, STE 620**
**AUSTIN, TX 78701**

DEFENDANT, in the hereinafter styled and numbered cause: 103662

You are hereby commanded to appear before 40TH JUDICIAL DISTRICT COURT of ELLIS COUNTY, TEXAS to be held at the courthouse of said county in the City of Waxahachie, County of Ellis County, Texas, by filing a written answer to the PLAINTIFF'S AMENDED PETITION AND DISCOVERY REQUESTS at or before 10:00 A.M. of the Monday next after the expiration of 20 days after the date of service hereof, a copy of which accompanies this citation, in cause number **103662** styled

**MALONE, JONATHAN**
**-VS-**
**BIG LOTS STORES, INC.**
**PIIHL, DESMOND**

Filed in said court on the 07/02/2020

The name and address of the attorney for plaintiff, or the address of the plaintiff is: JENNIFER J SPENCER , THREE FOREST PLAZA, 12221 MERIT DR, STE 160, DALLAS, TX 75251.

**NOTICE TO DEFENDANT**: "You have been sued. You may employ an attorney. If you or your attorneys do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of 20 days after you were served this citation and petition, a Default Judgment may be taken against you."

WITNESS:  Melanie Reed, District Clerk of the District Court of Ellis County, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL OF SAID COURT AT COUNTY OF ELLIS, TEXAS, ON THIS THE 6th day of July, 2020.

**Melanie Reed, District Clerk**
**109 S. Jackson Street Rm. 209**
**Waxahachie, TX 75165**

**SEAL**

By _____

Mary Hinds, Deputy



## OFFICER'S RETURN - CAUSE # 103662

**MALONE, JONATHAN**
**-VS-**
**BIG LOTS STORES, INC.**
**PIIHL, DESMOND**

**IN THE 40TH JUDICIAL DISTRICT COURT**
**OF**
**ELLIS COUNTY, TEXAS**

**NAME AND ADDRESS FOR SERVICE:**
BIG LOTS STORES, INC.
C/O CORPORATION SERVICE COMPANY, DBA CSC-LAWYERS INCORPORATING SERVICE CO
211 E. 7TH ST, STE 620
AUSTIN, TX 78701

Came to hand on the _____ day of _____, 20____, at _____, o'clock ____.m., and executed in _____ County, Texas by delivering to each of the within named defendants, in person, a true copy of this Citation with the date of delivery endorsed thereon, together with the accompanying copy of the PLAINTIFF'S AMENDED PETITION AND DISCOVERY REQUESTS , at the following times and places, to-wit:

| Name | Date/Time | Place, Course and Distance from Courthouse |
|------|-----------|--------------------------------------------|
| | | |

And not executed as to the defendant(s), _____

The diligence used in finding said defendant(s) being: _____

and the cause or failure to execute this process is: _____

and the information received as to the whereabouts of said defendant(s) being:
_____

**FEES:**
Serving Petition and Copy $_____
Total                    $_____

_____, Officer
_____, County, Texas
By:_____, Deputy

_____
Affiant

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**
In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The return must either be verified or be signed under penalty of perjury. A return signed under penalty of perjury must contain the statement below in substantially the following form:

"My name is _____, my date of birth is _____, and my address is
                     (First, Middle, Last)
_____.
(Street, City, Zip)
I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.
Executed in _____County, State of _____, on the _____day of _____.

_____
Declarant/Authorized Process Server

_____
(Id # & expiration of certification)

**RETURN TO:**
Melanie Reed Ellis County District Clerk
109 S. Jackson Street Rm. 209
Waxahachie, TX 75165

STATE OF TEXAS        §
COUNTY OF ELLIS       §
SIGNED under oath before me on this _____day of
_____,20___.

_____

# THE STATE OF TEXAS
## COUNTY OF ELLIS
CAUSE NO: 103662
## CITATION

**TO:  PIIHL, DESMOND**
        **2720 PINNACLE DR**
        **BURLESON, TX 76028**

DEFENDANT, in the hereinafter styled and numbered cause: 103662

You are hereby commanded to appear before 40TH JUDICIAL DISTRICT COURT of ELLIS COUNTY, TEXAS to be held at the courthouse of said county in the City of Waxahachie, County of Ellis County, Texas, by filing a written answer to the PLAINTIFF'S AMENDED PETITION AND DISCOVERY REQUESTS at or before 10:00 A.M. of the Monday next after the expiration of 20 days after the date of service hereof, a copy of which accompanies this citation, in cause number **103662** styled

**MALONE, JONATHAN**
**-VS-**
**BIG LOTS STORES, INC.**
**PIIHL, DESMOND**

Filed in said court on the 07/02/2020

The name and address of the attorney for plaintiff, or the address of the plaintiff is: JENNIFER J SPENCER , THREE FOREST PLAZA, 12221 MERIT DR, STE 160, DALLAS, TX 75251.

**NOTICE TO DEFENDANT**: "You have been sued. You may employ an attorney. If you or your attorneys do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of 20 days after you were served this citation and petition, a Default Judgment may be taken against you."

WITNESS:  Melanie Reed, District Clerk of the District Court of Ellis County, Texas.

 ISSUED AND GIVEN UNDER MY HAND AND SEAL OF SAID COURT AT COUNTY OF ELLIS, TEXAS, ON THIS THE 6th day of July, 2020.

                                                              **Melanie Reed, District Clerk**
                                                              **109 S. Jackson Street Rm. 209**
                                                              **Waxahachie, TX 75165**

                         SEAL                          By _____

                                                                 Mary Hinds, Deputy



### OFFICER'S RETURN - CAUSE # 103662

**MALONE, JONATHAN**
**-VS-**
**BIG LOTS STORES, INC.**
**PIIHL, DESMOND**

**IN THE 40TH JUDICIAL DISTRICT COURT**
**OF**
**ELLIS COUNTY, TEXAS**

**NAME AND ADDRESS FOR SERVICE:**
PIIHL, DESMOND
2720 PINNACLE DR
BURLESON, TX 76028

Came to hand on the _____ day of _____, 20___, at _____, o'clock ____.m., and executed in _____ County, Texas by delivering to each of the within named defendants, in person, a true copy of this Citation with the date of delivery endorsed thereon, together with the accompanying copy of the PLAINTIFF'S AMENDED PETITION AND DISCOVERY REQUESTS , at the following times and places, to-wit:

| Name | Date/Time | Place, Course and Distance from Courthouse |
|------|-----------|--------------------------------------------|
| _____ | _____ | _____ |

And not executed as to the defendant(s), _____

The diligence used in finding said defendant(s) being:
_____

and the cause or failure to execute this process is:
_____

and the information received as to the whereabouts of said defendant(s) being:
_____

**FEES:**
Serving Petition and Copy $_____
Total                            $_____

_____, Officer
_____, County, Texas
By:_____, Deputy

_____
Affiant

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**
In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return.  The return must either be verified or be signed under penalty of perjury. A return signed under penalty of perjury must contain the statement below in substantially the following form:

"My name is _____, my date of birth is _____, and my address is
  (First, Middle, Last)
_____.
(Street, City, Zip)
I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.
Executed in _____County, State of _____, on the _____day of _____.

_____
Declarant/Authorized Process Server

_____
(Id # & expiration of certification)

**RETURN TO:**
Melanie Reed Ellis County District Clerk
109 S. Jackson Street Rm. 209
Waxahachie, TX 75165

STATE OF TEXAS     §
COUNTY OF ELLIS    §
SIGNED under oath before me on this _____day of
_____,20___.

_____
Notary Public, State of Texas

## THE STATE OF TEXAS
## COUNTY OF ELLIS
### CAUSE NO: 103662
# CITATION

**TO: BIG LOTS STORES, INC.**
**C/O CORPORATION SERVICE COMPANY**
**DBA CSC-LAWYERS INCORPORATING SERVICE CO**
**211 E. 7TH ST, STE 620**
**AUSTIN, TX 78701**

DEFENDANT, in the hereinafter styled and numbered cause: 103662

You are hereby commanded to appear before 40TH JUDICIAL DISTRICT COURT of ELLIS COUNTY, TEXAS to be held at the courthouse of said county in the City of Waxahachie, County of Ellis County, Texas, by filing a written answer to the PLAINTIFF'S AMENDED PETITION AND DISCOVERY REQUESTS at or before 10:00 A.M. of the Monday next after the expiration of 20 days after the date of service hereof, a copy of which accompanies this citation, in cause number **103662** styled

**MALONE, JONATHAN**
**-VS-**
**BIG LOTS STORES, INC.**
**PIIHL, DESMOND**

Filed in said court on the 07/02/2020

The name and address of the attorney for plaintiff, or the address of the plaintiff is: JENNIFER J SPENCER , THREE FOREST PLAZA, 12221 MERIT DR, STE 160, DALLAS, TX 75251.

**NOTICE TO DEFENDANT**: "You have been sued. You may employ an attorney. If you or your attorneys do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of 20 days after you were served this citation and petition, a Default Judgment may be taken against you."

WITNESS:  Melanie Reed, District Clerk of the District Court of Ellis County, Texas.

 ISSUED AND GIVEN UNDER MY HAND AND SEAL OF SAID COURT AT COUNTY OF ELLIS, TEXAS, ON THIS THE 6th day of July, 2020.

**Melanie Reed, District Clerk**
**109 S. Jackson Street Rm. 209**
**Waxahachie, TX 75165**

SEAL

By _____
Mary Hinds, Deputy



## OFFICER'S RETURN - CAUSE # 103662

**MALONE, JONATHAN**
**-VS-**
**BIG LOTS STORES, INC.**
**PIIHL, DESMOND**

**IN THE 40TH JUDICIAL DISTRICT COURT**
**OF**
**ELLIS COUNTY, TEXAS**

**NAME AND ADDRESS FOR SERVICE:**
BIG LOTS STORES, INC.
C/O CORPORATION SERVICE COMPANY, DBA CSC-LAWYERS INCORPORATING SERVICE CO
211 E. 7TH ST, STE 620
AUSTIN, TX 78701

Came to hand on the _____ day of _____, 20____, at _____, o'clock ____.m., and executed in _____ County, Texas by delivering to each of the within named defendants, in person, a true copy of this Citation with the date of delivery endorsed thereon, together with the accompanying copy of the PLAINTIFF'S AMENDED PETITION AND DISCOVERY REQUESTS , at the following times and places, to-wit:

| Name | Date/Time | Place, Course and Distance from Courthouse |
|---|---|---|
| | | |

And not executed as to the defendant(s), _____

The diligence used in finding said defendant(s) being:

and the cause or failure to execute this process is:

and the information received as to the whereabouts of said defendant(s) being:

**FEES:**
Serving Petition and Copy $_____
Total                           $_____

_____, Officer
_____, County, Texas
By:_____, Deputy

_____
Affiant

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**
In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The return must either be verified or be signed under penalty of perjury. A return signed under penalty of perjury must contain the statement below in substantially the following form:

"My name is _____, my date of birth is _____, and my address is
          (First, Middle, Last)
_____.
(Street, City, Zip)
I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.
Executed in _____County, State of _____, on the _____day of _____.

_____
Declarant/Authorized Process Server
_____
(Id # & expiration of certification)

**RETURN TO:**
Melanie Reed Ellis County District Clerk
109 S. Jackson Street Rm. 209
Waxahachie, TX 75165

STATE OF TEXAS    §
COUNTY OF ELLIS   §
SIGNED under oath before me on this _____day of
_____,20___.

_____

## AFFIDAVIT OF SERVICE

**State of Texas**                        **County of Ellis**                        **40th Judicial District Court**

Case Number: 103662

Plaintiff:
**Jonathan Malone**

vs.

Defendant:
**Big Lots Stores, Inc.**

For:
Jackson Spencer Law PLLC
12221 Merit Drive
Three Forest Plaza, Suite160
Dallas, TX 75251

Received by Austin Process LLC on the 9th day of July, 2020 at 9:27 am to be served on **Big Lots Stores, Inc. c/o Corporation Service Company d/b/a CSC-Lawyers incorporating Service Co., 211 E. 7th Street, Suite 620, Austin, Travis County, TX 78701**.

I, Lucas McGill, being duly sworn, depose and say that on the **9th day of July, 2020** at **1:53 pm, I:**

delivered to **REGISTERED AGENT** by delivering a true copy of the **Citation and Plaintiff's Original Petition and Discovery Requests with Exhibits A-C** with the date of service endorsed thereon by me, to: **Samantha Guerra, Corporation Service Company d/b/a CSC-Lawyers incorporating Service Co.** as **Authorized Agent** at the address of: **211 E. 7th Street, Suite 620, Austin, Travis County, TX 78701** on behalf of **Big Lots Stores, Inc.**, and informed said person of the contents therein, in compliance with state statutes.

I certify that I am over the age of 18, of sound mind, have no interest in the above action. The facts stated in this affidavit are within my personal knowledge and are true and correct.

Subscribed and Sworn to before me on the 9th day
of July, 2020 by the affiant who is personally known
to me.

_____
NOTARY PUBLIC

SUZI DICKERSON
Notary Public, State of Texas
Comm. Expires 04-04-2023
Notary ID 131960911

**Lucas McGill**
PSC-16408, Exp. 2/28/2021

**Austin Process LLC**
**809 Nueces**
**Austin, TX 78701**
**(512) 480-8071**

Our Job Serial Number: MST-2020004270
Ref: 2071.001

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1m